**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

CALVERT M. WILSON       :
              :
     **Plaintiff,**     :
              :
**v.**              :   **Case No.: 1:06-CV-00069(JDB)**
              :
**HOME-SAVERS, LLC**   **et al.**  :
              :
     **Defendants.**    :
              :

---

**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S AMENDED MOTION FOR TEMPORARY RETRAINING ORDER; AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION**

Defendants, Home Savers, LLC, 1905 2nd Street, N.E., LLC, Barrett Ware and Luther Hector, by and through counsel, Richard D. Mirsky, Esq. and Offit Kurman Attorneys At Law, submits the following opposition and respectfully state as follows:

**Background**

1. Upon information and belief, defendant, Luther Hector of Home Savers, LLC (hereinafter "Home Savers") first contacted plaintiff in September of 2004. Luther Hector contacted plaintiff upon finding that a foreclosure sale of the 1905 2nd St., N.E. property (hereinafter "subject property") was scheduled.

2. This initial communication was by telephone. During the initial telephone communication, plaintiff gave Luther Hector general information about the subject property, e.g., that it was a building consisting of four (4) residential apartments, however, plaintiff indicated that he did not reside at the building. The subject property

1

was occupied by three (3) tenants whom were all Section 8 tenants. Plaintiff, as landlord, had Housing Assistance Payment Contracts with the Public Housing Agency, U.S. Department of Urban Development. Plaintiff indicated that the fourth apartment was not occupied. Plaintiff indicated that he had lived at the apartment building in the past, but had not lived there for quite some time.

3.    Plaintiff explained that he currently resided with his wife at 1118 47th Pl., N.E., Washington, DC 20019.

4.    During this initial communication plaintiff also gave general information about his situation. Plaintiff indicated that his lender believed he was in arrears and had started foreclosure proceedings. Plaintiff indicated that he had previously filed Bankruptcy, but the case had been "completed." Plaintiff indicated that his attorney had filed an emergency motion seeking to stop the foreclosure and a hearing was scheduled on the motion, however, plaintiff did not articulate which Court the emergency motion had been filed with.

5.    Plaintiff further indicated that he wanted to have a "back up plan" in case the Court did not grant the relief he and his attorney were requesting.

6.    _____

7.    Plaintiff indicated to Luther Hector that his attorney had filed a law suit against the lenders, and had also appealed the Judge's decision. But nonetheless, he did not want to lose the building at a foreclosure sale. At this point, he wanted to move forward and meet with representatives of Home Savers.

8.     Upon information and belief, the initial face-to-face meeting was scheduled and thereafter took place in late October 2004.[1]

9.     This meeting took place at plaintiff's residence located at 1118 47th Pl., N.E., Washington, DC 20019.  Present at the meeting were the following individuals: Calvert Wilson (plaintiff), Zeretra Wilson (plaintiff's wife),[2] Rawle Andrews, Esq. (plaintiff's counsel), Luther Hector (Sales Associate with Home Savers) and Dan Felton (Sales Associate with Home Savers).

10.    At this meeting, Luther Hector explained what Home Savers could do and was proposing. Luther Hector indicated that he "spelled everything out" to both plaintiff and his attorney.

11.    Luther Hector explained that Home Savers was willing to purchase the subject property, and thereafter, Home Savers or it's assignee would not record the deed for sixty (60) days. During this time, plaintiff would have an opportunity to seek a refinance loan for his existing mortgage loan which was in default.  It was explained that plaintiff could utilize the proceeds of the refinance to repurchase the subject property from Home Savers.

12.    At this meeting the terms and conditions were set forth and discussed in detail.  As indicated, plaintiff was present with his counsel.  It was explained to plaintiff and his counsel, that to effectuate the agreement Home Savers would initially advance the funds necessary to reinstate the mortgage loan that was in default.   This amount was estimated

[1]Luther Hector indicated that the meeting could have been in early November 2004, but his best recollection is that it was the end of October 2004.

[2]Luther Hector believes that plaintiff's wife was present, but does not recall having much interaction with her.

to be approximately $30,000.00. Thereafter, plaintiff would have two (2) months to attempt to refinance plaintiff's existing mortgage loan. If successful, plaintiff could repurchase the subject property for a predetermined price, to wit, $122,656.07. If not successful, it was anticipated that Home Savers, or its assignee, would thereafter record the deed and take the subject property subject to the existing loan.

13.    Defendant's were aware that the existing secured loan had a balance of approximately $130,000.00. Accordingly, defendants would be purchasing the subject property for $160,000.00. The monies advanced to stop the foreclosure, e.g., $30,000.00 would serve as the down payment.

14.    Plaintiff and his counsel were shown and/or given copies of all of the documents that would be necessary for plaintiff to execute to complete this transaction.

15.    At this juncture, plaintiff and his counsel indicated that they understood the transaction, but plaintiff still did not want to commit to the transaction until he had an opportunity to meet with prospective lenders about getting a refinance loan.

16.    Luther Hector gave plaintiff and his counsel the name of a prospective mortgage lender, Jeff Powell.[3] No promises or inducements had been made. Luther Hector believed, however, that plaintiff would be able to qualify for a refinance loan and indicated that Home Savers had dealt with Jeff Powell before.

17.    It should be noted, that at this meeting plaintiff and his counsel indicated to Luther Hector that the Bankruptcy case was "completed." At no time did plaintiff or his counsel suggest

---

[3]Luther Hector believes that Jeff Powell is with an entity called Prosperity Mortgage or Pinnacle Mortgage.

4

that this transaction needed Bankruptcy Court approval. To the contrary, plaintiff and his counsel caused Home Savers to believe that it was unnecessary.

18.    Subsequent to this meeting, plaintiff contacted Jeff Powell the mortgage lender representative that Home Savers had recommended. Upon information and belief, Jeff Powell was willing to give a refinance loan to plaintiff and gave him a good faith estimate.

19.    Thereafter, plaintiff contacted Luther Hector by telephone. Plaintiff informed Luther Hector that the interest rate for the loan was going to be high, to wit, approximately 18%. For this reason, plaintiff wanted to shop around to determine whether a different refinance loan could be had at a more favorable interest rate.

20.    Luther Hector gave plaintiff the name of another prospective mortgage lender, to wit, Harris Rosenberg.

21.    Plaintiff contacted Luther Hector after he had communicated with Harris Rosenberg. Plaintiff indicated to Luther Hector that this particular mortgage lender was unwilling to refinance the loan within the time frame necessary for this particular transaction.[4]

22.    As the foreclosure date approached, plaintiff again contacted Luther Hector at Home Savers. During this next telephone communication, plaintiff indicated that he wanted to go forward with the transaction with Home Savers, i.e., the sale with an option to repurchase, which had been previously discussed with him and his attorney, Rawle Andrews Jr., Esq.

---

[4]The foreclosure apparently was scheduled for November 17, 2004 after the Bankruptcy Court denied plaintiff's request for emergency relief.

23.    A meeting was scheduled again at plaintiff's residence located at 1118 47th Pl., N.E., Washington, DC 20019. The purpose of the meeting was to finalize the transaction. The meeting was scheduled for November 14, 2004.

24.    The meeting did take place on November 14, 2004 at plaintiff's residence located at 1118 47th Pl., N.E., Washington, DC 20019. In attendance at the meeting were the following individuals: Calvert Wilson and Zeretra Wilson; Barrett Ware and Luther Hector of Home Savers; and a Notary Public.

25.    Barrett Ware indicates that at this meeting he reviewed with plaintiff all of the documents that plaintiff was going to execute. Moreover, Barrett Ware indicated that he explained the significance of each one to plaintiff and his wife to be sure that plaintiff was aware of his obligations and completely understood the transaction.[5]

26.    Barrett Ware also inquired about plaintiff's Bankruptcy case during this meeting. Plaintiff expressly stated that he had been discharged. Barrett Ware asked for a copy of the discharge notice and was told by plaintiff that he did not have it with him, but would fax it to Barrett Ware the following day.

27.    At the meeting on November 14, 2004, plaintiff signed, before a notary, the various documents that were necessary for the transaction. Among these documents was a document entitled "Equity-Share Plus" (hereinafter "Agreement") which set forth the

---

[5]Barrett Ware was aware that plaintiff's counsel had been present at the prior meeting when Luther Hector presented the transaction, but nonetheless, he wanted to be sure that plaintiff understood the transaction before executing documents.

various terms and conditions of the parties agreements,[6] as well as a deed transferring the
subject property to 1905 2nd Street, N.E., LLC. (_See_, Defendant's Memorandum of Points
and Authorities in Opposition Exhibits 1 and 2, attached hereto and made apart hereof).

28.    Under the terms and conditions of the Agreement, plaintiff had the option to refinance his
existing mortgage loan and repurchase the property from Home Savers for $122,656.07.
Accordingly, for sixty (60) days, the deed was not going to be recorded anticipating that
plaintiff would exercise this option and it would be easier for plaintiff to get a refinance
loan as opposed to a repurchase loan.

29.    On November 17, 2004 Home Savers did advance the funds necessary to reinstate
plaintiff's loan and stop the foreclosure in furtherance of the Agreement. The funds
advanced totaled approximately $30,500.00.

30.    Thereafter, upon information and belief, plaintiff did seek to refinance his loan, but never
paid Home Savers any monies.

31.    The defendants did not record the deed after the sixty (60) days because they believed, in
good faith, that plaintiff was still seeking to refinance his existing mortgage loan and
needed additional time to secure the loan.

32.    Defendants, in good faith, anticipated that after securing a refinance loan, plaintiff would
honor the Agreement and pay $122,656.07 as agreed.

33.    From time-to-time defendants were contacted by plaintiff's prospective lenders. At these
times, defendants would inform what would be required as a "payoff," i.e., $122,656.07

---

[6]The Agreement sets forth, among other things, that the amount paid by Home Savers to
stop the foreclosure shall serve as the deposit for the purchase..

pursuant to the Agreement executed by the parties.

34.   At some point, however, defendant's became concerned that plaintiff was no longer returning phone calls, had not paid as agreed, and apparently was negotiating with prospective lenders with no intention of complying with the Agreement. Accordingly, on November 9, 2005, nearly a year after the Agreement had been executed, defendant recorded the deed conveying the subject property to 1905 2nd St NE, LLC.

**Plaintiff's Request for Temporary and Preliminary Injunctive Relief**

35.   Plaintiff's request for injunctive relief is grounded, in large part, upon plaintiff's own self serving statements and general arguments set forth in his Complaint. These self serving statements and general arguments do not constitute a proper legal basis for granting temporary or preliminary injunctive relief.

36.   Plaintiff has alleged few credible facts that support the need for temporary or preliminary injunctive relief.

37.   Plaintiff has indicated that defendant provided notices to the tenants at the subject property on or about January 7, 2006. (*See*, Plaintiff's Memorandum in Support of Application for Expedited Hearing, page 2, footnote 1). This notice is attached to plaintiff's Complaint as "Exhibit 9."

38.   Defendants do not dispute that the notices was delivered to the tenants. Defendants do, however, dispute that the representations contained within the notice are anything but accurate.

39.   Plaintiff also alleges that defendants have exercised "unlawful dominion and control" over the subject property. (*See*, Plaintiff's Application for Expedited Hearing, page 1).

Defendant's acts are neither unlawful or abusive. Defendant's are the title owners of the subject property, and as such, are entitled to exercise control of their property.

40.     Plaintiff argues that as a result of these acts, the "tenants are under a great deal of stress." (_See_, Plaintiff's Memorandum in Support of Application for Expedited Hearing, page 4, para. 6). Moreover, plaintiff argues that the "... instability and uncertainty ... is creating turmoil and personal safety hazards that could become even more pronounced ..." (_See_, Plaintiff's Memorandum in Support of Application for Expedited Hearing, page 1-2).

41.     There is no factual predicate for these self-serving statements and the actual facts have been dramatically exaggerated.

42.     In support of plaintiff's request for temporary and preliminary relief, an affidavit was submitted on behalf of just one tenant, namely, Tjuana Phillips.

43.     It would appear that plaintiff's counsel prepared this affidavit, and thereafter, Ms. Phillips signed same. The hearsay nature of this affidavit, along with the attendant problems that routinely surround any extra-judicial statement offered for the truth of the matter asserted, significantly diminishes its probative value.

44.     This witness, as well as the other two (2) tenants, should be required to come before this Court and present their concerns, if any truly exist.

45.     Fundamental fairness requires that all parties have an opportunity to cross examine these witnesses, and also have a "first hand" opportunity to assess their credibility.

46.     This particular affidavit, when reviewed carefully, does nothing more than express Ms. Phillips' surprise that plaintiff is no longer the owner of the subject property.

47.     The words "confusion" and "stress" were conveniently included in this affidavit, but only

in the context of Ms. Phillips declaring that as a result of her "confusion" and "stress," she directed Luther Hector to contact the plaintiff, and that she does not wanted to be contacted by Mr. Hector again.

48.    Perhaps, for example, if this witness were to appear before this Court and be informed that 1905 2nd St N.E., LLC is, in fact, the title owner of the subject property, and that she can now look to these defendants as her landlord, her apparent "confusion" and so-called "stress" would cease to exist.

## Legal Analysis

49.    When considering the propriety of injunctive relief, the Courts in this judicial Circuit, much like other judicial Circuits, evaluate four key factors. The factors are as follows: (1) likelihood of success on the merits; (2) irreparable harm; (3) whether injunctive relief will substantially harm the defendant; and (4) whether injunctive relief is in the public interest.

50.    Plaintiff has failed to meet his burden under these four key factors, and accordingly, temporary or preliminary injunctive relief should not be granted.

### Plaintiff Has Failed to Show a Likelihood That He Will Succeed on the Merits

51.    Plaintiff argues in this case that defendants have violated the Home Ownership Equity Protection Act. Plaintiff further suggests that his need for injunctive relief arises directly from these violations and other consumer protection violations.

52.    These arguments are not likely to succeed on the merits. The subject property was not, and is not, the plaintiff's "home" and had not been his home at anytime pertinent to this transaction.

10

53.    This was not a "consumer" transaction. The subject property was, and is, an investment property.

54.    At the time plaintiff entered into his transaction with the defendants, he resided at 1118 47th Pl., N.E., Washington, DC 20019. Upon information and belief, plaintiff still resides with his wife at this address.

55.    Meetings took place at or about the time of the transaction with defendants at plaintiff's residence located at 1118 47th Pl., N.E., Washington, DC 20019.

56.    Plaintiff listed 1118 47th Pl., N.E., Washington, DC 20019 as his address on the Agreement (*See*, Defendant's Memorandum of Points and Authorities in Opposition Exhibit 1). Plaintiff also executed a sworn Affidavit attesting to this fact. (*See*, Defendant's Memorandum of Points and Authorities in Opposition Exhibit 3, attached hereto and made apart hereof).

57.    It is interesting to note that as recently as January 27, 2005 at a scheduled contempt hearing in related Civil Case 1:06-CV-00108 (JDB), this Court made inquiry with plaintiff's counsel about the subject property. [7] Plaintiff's counsel represented to this Court that plaintiff lives at the subject property "part-time."

58.    This recent representation, in and of itself, is a significant distinction from the allegations set forth in plaintiff's Verified Complaint and plaintiff's Affidavit that were initially filed.

59.    Plaintiff's amended motion states: "Plaintiff maintains a unit in the house, and rents out

_____

[7]This inquiry was in the context of a impromptu scheduling conference for this instant case. The Court was seeking information as related to the nature of the alleged irreparable harm. The Court was cognizant that counsel for both parties were present, and it wanted to determine how exigent the circumstances were before scheduling dates for responsive pleadings and motions, and setting the matter in for a hearing.

the other three units to Section 8 residents ..." (_See_, Plaintiff's Amended Memorandum in Support of Amended Motion for Temporary Restraining Order, page 7).

60.  In fact, reliable evidence will show that plaintiff does not live at the subject property at all, that the additional unit is uninhabitable.  Reliable evidence will establish that plaintiff has not lived at the subject property for several years.  This intentional deception should not be tolerated by this Court.

### Plaintiff Has Failed to Show That He Will Suffer Irreparable Harm

61.  Plaintiff is well aware that on November 14, 2004 he executed a deed and received valuable consideration from the defendant.  Now, more than a year later, after having failed to pay defendants any money and breaching the very agreements he entered into with advice of his counsel, he suggests that he is and will suffer irreparable harm.

62.  In support of this argument, plaintiff cites: "When real property interests are at stake, the legal remedy of damages is inadequate, and injunctive relief is a common remedy to preserve such interests." (citation omitted) (_See_, Plaintiff's Amended Memorandum in Support of Amended Motion for Temporary Restraining Order, page 6).

63.  Plaintiff's arguments are misplaced.  Plaintiff entered into this transaction in November of 2004 in an attempt to save his investment property from an imminent foreclosure sale. Nearly a year later, in November of 2005, after plaintiff failed to comply with the terms of his agreement and failed to pay defendants any money, defendants recorded the deed previously executed by plaintiff and took title to the subject property.

64.  Perhaps plaintiff had forgotten that this was precisely what was expected to happen in the event that he failed to repurchase as agreed.

12

65.    The subject property was not, and is not, plaintiff's " home." The subject property was plaintiff's former real property that was on the verge of being sold in November of 2004. Plaintiff wanted to avoid a foreclosure sale because he did not want to lose the "value" that his real property had accumulated. The legal remedy of "damages" is an adequate remedy to compensate for value.

66.    Plaintiff's complaint also seeks to have this Court "quiet title" to the subject property. A Court with proper jurisdiction can issue declaratory judgments to "quiet title."[8]

67.    The mere fact that this action involves a dispute over real property does not automatically give rise to the need for injunctive relief. Plaintiff has failed to show that irreparable harm will occur absent injunctive relief.

68.    Plaintiff's endeavors to advance as examples of his irreparable harm, self-serving, unsupported and titillating statements, to wit, he was "duped into accepting the Home Saver loan" and that the defendants recorded a "sham land sale document," and the loss will "impair [p]laintiff's ability to care for his family and make timely child support payments." (*See*, Plaintiff's Amended Memorandum in Support of Amended Motion for Temporary Restraining Order, page 7). These are not proper examples of irreparable harm that would give rise to temporary and/or preliminary injunctive relief under the attendant facts and circumstances of this case.

69.    Moreover, these allegations are particularly incredible in light of the fact that plaintiff and his counsel reviewed the documents and the transaction before plaintiff entered into his

---

[8]This, of course, presumes that a claimant would have proper grounds and the Court would also have appropriate jurisdiction.

13

agreements with these defendants.

70. Plaintiff suggests that February rents are due from the Section 8 tenants, and as such, this Court needs to address whether it is proper that these tenants pay the defendants. This situation does not present irreparable harm. Moreover, if this Court deemed this a significant issue, it could order the tenants as well as the Public Housing Agency to pay current rents into the registry of the Court pending the outcome of this litigation.

71. Plaintiff apparently is concerned that defendants may sell, encumber, destroy, transfer, assign, or otherwise dispose of the property or an improvement on the subject property. (*See*, Plaintiff's Amended Memorandum in Support of Amended Motion for Temporary Restraining Order, page 2). This is extremely unlikely. Defendants have no intention, nor realistically an ability, to sell the property during the pendency of this litigation.

### The Requested Injunctive Relief Substantially Harms the Defendants

72. It has been over a year since defendants advanced funds for the benefit of the plaintiff. During that time, no monies have been forthcoming. Additionally, it has now become abundantly clear that plaintiff had no intention repurchasing the subject property as originally anticipated, or otherwise complying with the terms and conditions of the agreement he entered into with the defendants.

73. Plaintiff has chosen, instead, to engage in protracted litigation, raising disingenuous theories of law based upon fabricated and/or twisted facts distorted to serve plaintiff's own agenda.

74. Defendants are the title owners of the subject property. As owners, they should be entitled to receive rents and otherwise exercise all of the rights that would be afforded to

14

the owner of this real property.

75.    Plaintiff has not acted with "clean hands" and should not be granted equitable relief.
Plaintiff is intentionally attempting to deceive this Court into believing that the subject
property was his "home" when it was not. Plaintiff is intentionally attempting to deceive
this Court into believing that he was engaging in a consumer transaction for a home loan,
and the facts will evidence that he was engaging in a transaction to save equity or value in
his investment real property.

76.    Plaintiff raises issues surrounding his Bankruptcy, to wit, the Bankruptcy Court did not
approve this transaction. Again, it is disingenuous for plaintiff to raise these arguments
given the fact that his counsel was also counsel of record in the Bankruptcy case, and yet,
this very same counsel attended meetings with the defendants and knowingly allowed
plaintiff to enter into this transaction without seeking Bankruptcy approval.

77.    For all of these reasons, it is patently unjust and inequitable to allow plaintiff to benefit
from "unclean hands," while depriving defendants of the benefit of their bargain with the
plaintiff.

### The Injunctive Relief Requested by Plaintiff Is Not in the Public Interest

78.    The underlying transaction which gave rise to this litigation was a private transaction.
The subject property was not plaintiff's "home." The subject property was investment
property. Granting an injunction serves no public interest.

79.    Plaintiff arguments that the pubic has a "standing interest in orderly administration of
justice and curbing predatory lending" (_See_, Plaintiff's Amended Memorandum in
Support of Amended Motion for Temporary Restraining Order, page 9) is misplaced

attendant facts and circumstances of this case.

WHEREFORE, defendants respectfully request the following relief:

    A.    That plaintiff's requests be denied;

    B.    That this Court grant such further and other relief as the nature of this case

    and equity and justice may require.

Respectfully submitted,

Offit Kurman Attorneys At Law

/s/ Richard D. Mirsky

By:       _____

Richard D. Mirsky, Esq. (Fed. Bar. No. 24438)
                (DC Bar. No. 396939)
8171 Maple Lawn Blvd., Suite 200
Maple Lawn, MD 20759
Direct Dial (301) 575-0342
Facsimile (301) 575-0335

Attorney for Defendants

## CERTIFICATE OF SERVICE UNDER LCvR 65.1

I hereby certify that on the 2nd day of February 2006, I caused a copy of the "**Defendant's Memorandum of Points and Authorities in Opposition to Plaintiff's Amended Motion for Temporary Retraining Order; and Order to Show Cause Re: Preliminary Injunction**" that was filed electronically under the ECF guidelines with the Court on this date in the above captioned matter, was also sent via first class mail, postage prepaid, to the following:

Rawle Andrews Jr., Esq.
Andrews & Bowe, PLLP
1717 K street N.W., Suite 600
Washington, DC 20036

/s/ Richard D. Mirsky

_____

Richard D. Mirsky, Esq.

16

Defendant's Memorandum of Points and Authorities in
Opposition "Exhibit 1"

(The Agreement)

# *HOME SAVERS PLUS, LLC*
### *1717 K ST NW, SUITE # 600*
### *WASHINGTON, DC 20036*

## EQUITY-SHARE PLUS ™

**THIS AGREEMENT** is entered into on this 14TH day of November, 2004, by and between CALVERT M WILSON of 1118 47TH PL NE, Washington, DC 20019 ("WILSON") and Home Savers Plus, LLC, 1717 K St. NW, Suite 600, Washington, D.C. 20036 ("Home Savers Plus"), and witnesses:

**WHEREAS**, Home Savers Plus, specializes in stopping foreclosures; and

**WHEREAS**, Home Savers Plus has a program in which the equity in a property is shared between the property owner and itself in exchange for stopping a foreclosure; and

**WHEREAS**, Calvert M. Wilson own a property located at 1905 Second St. NE Washington, DC ,20019 and for the purposes of assessment and taxation is known as 3565-0000-0047, ("the Property") is behind in mortgage payments and is scheduled to go to foreclosure sale on NOVEMBER 17, 2004 @11:24 AM and desires to keep the property; and

**NOW THEREFORE**, in consideration of the above, and the mutual agreement of the parties, the parties hereof agree as follows:

**A.      Home Savers Plus, for its part, agrees to perform the following services:**

1)      Pay the amount needed to stop said foreclosure in the amount of $27,535.14:
2)      The amount paid shall serve as the deposit for the purchase contract executed in conjunction with this agreement and/or applied to the purchase price if purchased.
3)      Give WILSON 60 days in which to refinance said loan now in default. The loan in questioned is designated by loan # 0001019753 .The amount to stop the foreclosure is:

"$27,535.14  plus attorney's fees, foreclosure costs and all accruals…".
4)      Hold all executed documents in escrow until the expiration of this agreement.

RW) CMW

**B.    WILSON for his part, agrees to do the following:**

1.  Provide all needed information and releases such that Home Savers Plus may gather the needed information such as re-instatement amounts and loan pay-off amounts.
2.  Pay the mortgage on time and in full once the loan has been re-instated.
3.  Maintain the proper level of insurance on the property at all times.
4.  Maintain the physical condition and integrity of the property at all times, including regular maintenance.
5.  Pay any and all amounts due to the District of Columbia for taxes, assessments and charges that may be owed on the property.

6.  Re-finance the Property for a minimum of **$230,000**. The proceeds of the refinance shall be used to payoff the original loans and Home Savers Plus first. Any proceeds remaining shall be distributed as to the instructions of the Wilson.

7.  Pay directly from settlement of the re-finance of the Property to Home Savers Plus the sum of **$122,656.07** plus any costs advanced to stop the foreclosure.
8.  Pay directly from settlement any costs advanced for repairs made to the property, including but not limited to , labor, materials, permits, etc.
9.  Execute the needed documents to protect the interests of Home Savers Plus including, deeds, deeds of trusts, and related settlement documents.
10.  In the event that that the refinance does not take place within the specified time-frame, the documents held in escrow shall be released and recorded. This includes the deed that transfers ownership of the property.
11.  In addition to the options available to Home Savers Plus, Home Savers Plus shall also be entitled to liquidated damages in the amount of $100,000 if the terms of this agreement are not followed or complied with in a timely manner.
12.  TIME IS OF THE ABSOLUTE ESSENCE.


**C.    In consideration of the above, the parties further agree as follows:**

1.  This agreement shall not be amended, modified nor terminated, in whole or in part, nor any of the terms, covenants, representations, warranties, or conditions hereof waived, without the express mutual intention of the parties, as such intention shall be shown by a written instrument executed by a duly authorized officer of each party, or, in the case of a waiver or consent, by or on behalf of the party or parties waiving compliance or giving such consent.

2. This agreement and all questions relating to its validity, interpretation, performance and enforcement shall be governed by and construed, interpreted, and enforced in accordance with the laws of the District of Columbia, notwithstanding any District of Columbia or other Choice-of-law rules to the contrary. The parties hereto waive the right to trial by jury as to any issue as to which they would be entitled to a jury trial.

3. The failure of any party at any time or times to require performance of any provision hereof shall in no manner affect its right at a later time to enforce the same. No waiver by any party of any condition, or of any breach of any covenant, agreement, representation, or warranty contained in this Agreement, in any one or more instances, shall be deemed to be or construed as a further or continuing waiver of any such covenant, agreement, representation, or warranty.

4. This Agreement constitutes the entire agreement among the parties pertaining to the subject matter hereof and supersedes all prior and contemporaneous agreements and understandings of the parties in connection therewith. No covenant, representation, or condition not expressed in this Agreement shall be binding upon the parties hereto or shall affect or be effective to interpret, change, or restrict the provisions of this Agreement.

5. If any provision of this Agreement is held to be illegal, invalid, or unenforceable under present or future laws effective during the term hereof, such provision shall be fully severable, this Agreement shall be construed and enforced as if such illegal, invalid, or unenforceable provision had never comprised a part hereof; and the remaining provisions of the Agreement shall remain in full force and effect and shall not be affected by the illegal, invalid, or unenforceable provision or by its severance from this Agreement.

**Barrett Ware**

_____    _____
Barrett Ware, managing member    Date

**Calvert M. Wilson**
_____    _____
Calvert M. Wilson    Date

I, _Levi L. Halliday_ a duly commissioned and qualified Notary Public of the District of Columbia, do hereby certify that on this _14th_ **day of, November 2004**, before me personally appeared <u>Calvert M. Wilson</u> to me known to be the persons described in and who executed the foregoing Agreement and acknowledged to me that he executed the same as his free act and deed.

IN WITNESS WHEREOF, I have hereunto set my hand and official seal,

Notary Public

My Commission expires on _____

Levi L. Holliday
Notary Public, District of Columbia
My Commission Expires 06-14-2009

Defendant's Memorandum of Points and Authorities in
Opposition "Exhibit 2"

(The Deed)


LT1-5-2005162022-1

NO TITLE EXAMINATION

THIS DEED

Made this 14TH day of November, 2004, by and between CALVERT M. WILSON, party of the first part, to 1905 2nd ST NE, LLC, party of the second part,

WITNESSETH, that for and in consideration of the sum of One Hundred and Sixty Thousand Dollars ($160,000.00), the receipt whereof is hereby acknowledged, the said party of the first part does grant unto the party of the second part, in fee simple, the following described land and premises, situate in the District of Columbia and known and distinguished as

LOT NUMBERED 47 IN A SUBDIVISION MADE BY NATIONAL SAVINGS AND TRUST COMPANY OF LOTS IN SQUARE 3565 AS PER PLAT RECORDED IN LIBER 105 AT FOLIO 194 IN THE OFFICE OF THE SURVEYOR FOR THE DISTRICT OF COLUMBIA.
TAX ID # 3565/0047    *Lot 47 in Square 3565*

which has the address of 1905 2ND ST NE.

TOGETHER with all and singular the ways, easements, rights, privileges and appurtenances, to the same belonging, or in anywise - appertaining, and all the estate, right, title, interest, and claim, either at law or in equity, or otherwise however, of the said party of the first part, of, in, to, or out of the said land and premises, except as reserved herein.

AND the said party of the first part covenants that he will warrant specially the property hereby conveyed; and that he will execute such further assurances of said land as may be requisite.

WITNESS his hand and seal on the day and year first hereinbefore written.

_____ [SEAL]

LT2-0-0-1

DISTRICT OF COLUMBIA, SS:

On the 14th day of November, 2004, before me, the undersigned officer, personally appeared Calvert M. Wilson, known to me to be the person whose name is subscribed to the within instrument bearing date of the 14th day of November, 2004 and acknowledged that he has executed the same for the purpose therein contained.

IN WITNESS WHEREOF, I have hereunto set my hand and official seal.

_____        Notary Public
Levi L. Holliday
Notary Public, District of Columbia
My Commission Expires 06-14-2009
My commission expires _____

AFTER RECORDING, PLEASE MAIL TO:

1905 2ND ST NE, LLC
1717 K ST NW, SUITE #600
WASHINGTON, DC 20036

Doc# 2005162022 Fees:$3548.50
11/09/2005   12:30PM Pages 1
Filed & Recorded in Official Records of
WASH DC RECORDER OF DEEDS LARRY TODD

| | | |
|---|---|---|
| RECORDING | $ | 20.00 |
| SURCHARGE | $ | 8.50 |
| RECORDATION TAX FEE | $ | 1,760.00 |
| TRANSFER TAX FEE | $ | 1,760.00 |

```
                Receipt# 598962
------------------------------------------
              LARRY TODD
           RECORDER OF DEEDS
        WASH DC RECORDER OF DEEDS
             515 D STREET NW
               SUITE 202
             WASHINGTON, DC
                20001-
             (202) 727-5374
------------------------------------------
Doc# 2005162022   Pgs: 1
Doc Type: DEED
   RECORDING              $      20.00
   SURCHARGE              $       6.50
   RECORDATION TAX FEE    $   1,760.00
   TRANSFER TAX FEE       $   1,760.00

COLLECTIONS      Pgs: 1
Doc Type: COLLECTION
   COLLECTIONS            $     250.00


Total                    $   3,796.50
Check Amt. Tendered      $   3,796.50
Change Due               $       0.00
Balance                  $       0.00
------------------------------------------
   Check Number                Amount
   3148                  $   3,796.50
------------------------------------------
Total Documents: 2
Total Fees: 5
------------------------------------------
Client Name GENERAL PUBLIC
11/09/2005 12:30:37 PM

  Cashier: CASHIER8
```

Defendant's Memorandum of Points and Authorities in Opposition "Exhibit 3"

(The Affidavit)

Case No. _____

# *AFFIDAVIT*
## (Seller-Owner)

District of Columbia, to wit:

This day appeared personally before the undersigned, a Notary Public in and for the aforementioned jurisdiction, <u>Calvert M. Wilson</u> who being first duly sworn, made oath before me that: I am the seller of that certain real property known as 3565-0047 located at 1905 2ND St. NE, Washington, DC 20019. That there are no District of Columbia, State of Maryland, State of Virginia, or federal tax liens against me. That there are no outstanding judgments or pending lawsuits, or suits in equity against me among the land records of the Office of the Recorder of Deeds for the District of Columbia, or the Court Records of the District of Columbia, the State of Maryland, or the State of Virginia; except as hereinafter set forth:_____N/A_____.

That said property is:
Tenant occupied at present.          ( X )
That said property has been
Occupied by me                            (  )
That said property is Vacant          (  )

That my marital status is:
Single (not married)                    (  )
Divorced and not remarried      (  )
Married/Widowed                        ( X )
(Spouse's Name): ___Zeretia Wilson___

That there have been no improvements made to said property within the past six (6) months, except as hereinafter specified:_____N/A_____.

All labor and materials used in the construction of improvements on the above described property have been paid for and there are now no unpaid labor or material claims against the improvements or the property upon which same are situated, and I hereby declare that all sums of money due for the erection of improvements have been fully paid and satisfied. I certify that the requirements of Title IV of the District of Columbia Law 2-54, Rental Housing Conversion and Sale Act of 1980, have been complied with, and that tenant has not exercised his rights thereunder. The purpose of this affidavit is to induce the settlement company _____ to make and complete settlement on the aforesaid property and to issue its title insurance policy without exception as to judgments, District of Columbia, State of Maryland, and State of Virginia, or Federal tax liens. That protection under applicable Bankruptcy laws has not been applied for by the undersigned or any party in interest in the property. That there are no unpaid or delinquent real estate taxes, assessments, water connection or tap fees and/or rezoning, agricultural or development transfer taxes assessed or applicable to the subject property, except as listed:

That I state that my United States identification number(s) or Social Security number(s) are those as set forth below and that I am not a foreign person with in the meaning of the United States Internal Revenue Code. This statement may be disclosed to the Internal Revenue Service.

<u>CALVERT M. WILSON</u>          Social Security Number: 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

Subscribed, sworn to, and acknowledged before me this ___14th___ day of <u>Novemeber</u> 2004.

_____
Notary Public

My Commission Expires:     Levi L. Holliday
Notary Public, District of Columbia
My Commission Expires 06-14-2009