## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLUMBIA

CALVERT M. WILSON, an individual,          *
                                           *
                Plaintiff,                 *
                                           *
        v.                                 *    Case No.:  1:06-CV-00069 (JDB)
                                           *
                                           *
HOME SAVERS, LLC, a foreign limited        *
liability company; 1905 2nd STREET, NE,    *
LLC, a foreign limited liability company;  *
LUTHER HECTOR, an individual; and          *    **REPLY TO DEFENDANTS' MEMORANDUM**
BARRETT WARE, an individual,               *    **IN OPPOSITION TO PLAINTIFF'S**
                                           *    **AMENDED MOTION FOR INJUNCTIVE**
                Defendants.                *    **RELIEF**
                                           *
                                           *
                                           *
                                           *
                                           *

*********************************** *

### Preliminary Statement

Pursuant to this Court's January 27, 2006 Scheduling Order, Plaintiff Calvert M. Wilson

("Wilson" or "Plaintiff"), by undersigned counsel, respectfully submits this Reply to

Defendants'[1] Memorandum in Opposition to Plaintiff's Amended Motion for Temporary

Restraining Order and Preliminary Injunction and Supporting Memorandum (collectively, the

"TRO Motion") to: (1) preserve residential real property and Plaintiff's interests therein; (2)

safeguard documentary and testimonial evidence from destruction or loss; and (3) prevent the

on-going, tortious interference with Plaintiff's known contract rights with the other residents of

the 2nd Street Property by Defendants who are *not* even qualified to conduct real estate business

---

[1] The above-named Defendants sometimes are referred to collectively herein as the "Home Savers Group".

within the District of Columbia.  *See* D.C. Government Records re:  Home Savers Group attached hereto as Exhibit No. "12".

Despite their cavalier approach to this dispute, the gist of Defendants' Memorandum in Opposition (the "Opposition") seems to be that there is no need for injunctive relief because the $30,535.14 HOEPA loan between the parties to reinstate a residential real estate mortgage with ABN AMRO Mortgage Group, Inc. actually was a $160,000 real property sale that Defendants' recorded in the District on November 9, 2005.  As a result of this metamorphosis, Defendants' are exerting unlawful dominion and control over the 2nd Street Property as of January 7, 2006, including on-going interfering with Wilson's private property and contract rights emanating from the 2nd Street Property.[2]  Defendants' arguments strain credibility because the relevant focus of this Court's inquiry is:  <u>what the Home Savers Group was doing and saying **then** - - when Wilson was working to save his house; not what Defendants claim to be the true **now** that they are exerting unlawful dominion and control over Wilson's house and harassing the other residents at the 2nd Street Property without ever completing the very alleged land sale scheme they attempted to orchestrate during October and November 2004.</u>

As set forth more fully herein, Defendants' Opposition contains representations that cannot be reconciled with even a cursory review of the actual record.  When read together, Defendants' own "instruments" (s*ee, e.g.,* Exhibit No. 5 to the Verified Complaint at ECF pp. 84-129) paint a plain and unmistakable picture of the high cost, mortgage reinstatement loan Defendants made to Wilson made without the requisite legal disclosures as part of a ruse to strip

---

[2] Surprisingly, Defendants' inequitable conduct includes the forcible entry into Plaintiff's unit to change the locks on or about February 3, 2006, i.e., *after* this Court heard the parties' arguments and granted Plaintiff's Motion for Expedited Hearing on the TRO Motion.  No prior notice was given to this Court, Plaintiff or his counsel before such action was taken and Plaintiff remains locked out of the unit as of this date.

the equity in the 2nd Street Property and obtain title to Wilson's house. This type of misconduct can only be remedied by injunctive relief.

**I.    Injunctive Relief is Appropriate to Curb Defendants' Abuses**

**A.    Wilson is suffering Irreparable Harm**

The fundamental purpose of injunctive relief is to prevent irreparable harm and preserve the Court's ability to render a meaningful decision on the merits. *See Weinberger v. Barcelo-Romero*, 456 U.S. 305, 312 (1982) (injunctions are appropriate to protect property rights); *Wieck v. Sterenbuch*, 350 A.2d 384, 387-388 (D.C. 1976) (similar). The Opposition leaves a plain an unmistakable impression that Defendants' fuel their greed by acting first and asking later when it comes to Plaintiff's private property and related contract rights. *See, e.g., Cooper v. First Gov't Mortgage & Investors Corp.*, 238 F.Supp.2d 50 (D.D.C. 2002) (federal courts are authorized to decided questions arising under and related to TILA and HOEPA-related claims regardless of citizenship or the amount in controversy).

1.    It is well settled that that loss of an interest in real property constitutes irreparable harm because each parcel of land is unique and monetary damages are inadequate compensation for such a loss. *O'Hagan v. United States*, 86 F.3d 776, 783 (8th Cir. 1996); *1010 Potomac Associates v. Grocery Mftrs. of America, Inc.*, 485 A.2d 199, 212 (D.C. 1985). This is particularly true when the real property is the movant's primary asset. *Perpetual Bldg. v. District of Columbia*, 618 F. Supp. 603, 618 (D.D.C. 1985); C. Wilson Decl., ¶¶ 2, 49-58, attached as Exhibit No. "1" to the TRO Motion.

2.    Here, Defendants admit that they recorded the alleged "sale" of the 2nd Street Property with the D.C. Recorder of Deeds; changed the locks on the 2nd Street Property; contacted the residents regarding their leaseholds; and that they are free to treat the 2nd Street

Property in any manner they see fit, e.g., subsequent sale, assignment or refinancing to a third party. *See* Defs. Opp. at ¶39, pp. 8-9; T. Phillips Decl., ¶¶ 2-4, 9-14, attached as Exhibit No. "11" to the TRO Motion.  All of this conduct is frustrating Plaintiff's rights and impairing this Court's ability to render a meaningful decision on the merits.

3.     Defendants' conduct is made all the more egregious because the on-going activities which undergird the TRO Motion are being committed by persons and entities that are not qualified to conduct business within the District of Columbia. Specifically, the D.C. Government has "No Record" of defendant Home Savers despite its on-going use of the "Limited Liability Company" designation (*see* Exhibit "12" attached hereto); defendant 1905 2nd Street, NE, LLC's charter has been "Revoked" (*see id.*); and Messrs. Barrett Ware, Luther Hector, and the recently identified Dan Felton (who passed himself off as Mr. Ware beginning with the presentation of Mr. Ware's business card as his own to Plaintiff on October 8, 2004, a copy of which is attached hereto as Exhibit "13") do not hold any lenders, brokers or agents licenses to conduct real estate business within the District of Columbia (*see* Exhibit "12" attached hereto). *Accord* D.C. Code Ann. § 26-1013 (D.C. Mortgage Lenders and Brokers Act).[3]

4.     In short, Plaintiff is being deprived of his property and contract rights on the basis of Defendants' illicit "foreclosure rescue scheme" (i.e., a high cost, predatory loan now being characterized by Defendants as a land sale), and fundamental changes are taking place which will impair this Court ability to render a meaningful decision on the merits absent immediate injunctive relief.

## II.    Wilson Has Demonstrated a Likelihood of Success on the Merits

### A.    Wilson is entitled to Consumer Protection

1.      The gravamen of Wilson's Verified Complaint is that the November 2004 advance made by Defendants to reinstate the consumer debt to defendant ABN AMRO Mortgage Group, Inc. ("ABN AMRO") violated the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601 *et seq.*, as amended by the Home Ownership and Equity Protection Act of 1994 ("HOEPA"), as well as District of Columbia consumer protection, contract and tort law.  *See generally* Verified Complaint at ¶¶ 3, 12, 17, 25, 49-50, 57, 63, 66, 69, 71, 72, 116, 122, 125, 127-128, 130, 133, 137, 141-143, 146, 151, 158, 160, 162, 169, 170-171, 178-179, 181, 187, 190-191 and 197 (litany of HOEPA references in the Verified Complaint).

2.      Every exercise of statutory interpretation begins with the plain language of the statute itself. *Landreth v. Landreth Timber Co.*, 471 U.S. 681, 685 (1985); *American Bankers Assn. v. National Credit Union Admin.*, 271 F.3d 262, 267 (D.C. Cir. 2001); *see also Engine Mfrs. Ass'n v. EPA*, 88 F.3d 1075, 1088 (D.C. Cir. 1996) (discussing the limits on literal statutory interpretation).

3.      Under TILA, a consumer loan involves two components:   "[A transaction] in which the party to whom credit if offered or extended is a natural person *and* the money, property or services which are the subject of the transaction are primarily for personal, family or household purposes". 15 U.S.C. § 1602(h); *accord Bloom v. I.C. System, Inc.*, 972 F.2d 1067, 1068 (recognizing the interplay of the entire Consumer Credit Protection Act, 15 U.S.C. §§ 160 to 1693r, in interpreting analogous terms; using "consumer loan" precedent under TILA to construe the term "debt" under the FDCPA).

---

[3] Defendants' knowing and intentional failure to even properly identify themselves throughout this transaction - - i.e., Barrett Ware or Dan Felton - - speaks volumes in confirming that that neither Plaintiff nor his agents were ever given full disclosure by these Defendants verbally, or in writing as required by law.

4.    It is undisputed that Wilson is a natural person under the statute.  15 U.S.C. § 1602(d), (h).  As such, the only issue is whether the Home Savers advance was used for personal or commercial purposes under the Act.  *See, e.g., Miller v. McCalla, Raymer, Padrick, Nichols & Clark, LLC*, 214 F.3d 872, 874-875 (7th Cir. 2000*), reh'g and reh'g en banc denied*, (2000) (relevant time period for characterizing consumer obligation is when the *underlying* debt arose under both TILA and the FDCPA).

### B.    Consumer loans are evaluated based on the totality of the circumstances

1.    "When classifying a loan [under the Consumer Credit Protection Act], courts typically "'examine the transaction as a whole,' paying particular attention to 'the purpose for which the credit was extended in order to determine whether [the] transaction was primarily consumer or commercial in nature'".  *Bloom*, 972 F.2d at 1068 (other citation omitted).

2.    In *Miller*, the plaintiff bought a house in Atlanta during 1992 and lived there until 1995, when he moved to Chicago; from then on he rented the house to third parties.  *Miller*, 214 F.3d at 874.  In 1997, the mortgagee's law firm began debt collection attempts resulting in a lawsuit.  *Id.*  The case turned on whether the defendants were pursuing a business debt or a consumer obligation.  In reversing the district court's summary judgment order for the defendants, the Seventh Circuit opined:

> The defendants don't deny that the plaintiff is a "consumer" even though he is in the "business" of renting his house (*they can't deny this because the 'term consumer means any natural person obligated to or allegedly obligated to pay any debt.* . . . And the antecedent of the first 'which' in the clause 'in which the money, property, insurance or services which are the subject of the transaction are primarily for personal, family or household purposes' is  . . . *the transaction out of which the obligation to repay arose, not the obligation itself; and that transaction was the purchase of a house for personal use, namely living in it.*

*Miller*, 214 F.3d at 874-875 (emphasis added). The Court in *Miller* rationalized that "the *original* creditor is more likely to know whether the debt was personal or commercial at its incipience than either the creditor or the debt collector is to know what current use the debtor is making of the loan (in this case, the plaintiff is using the loan, in effect, to generate income from the house that secures the loan)." (Emphasis added).

      3.     Here, the evidence that the Home Savers Group's advance was a consumer loan committed to *personal use* is overwhelming.  For example:

      a.     Wilson purchased the 2nd Street Property during December 1996 and lived there full-time until October 2002 and continues to maintain a unit at the house (*see* Wilson Decl., ¶¶ 1, attached as Exhibit No. "1" to the TRO Motion); and 12/30/96 HUD-1 Settlement Statement, attached hereto as Exhibit No. "14";

      b.     From January 2001 until July 2005, Wilson was a Debtor in a Chapter 13 consumer bankruptcy proceeding showing the 2nd Street Property as his home address, and the secured debt to ABN AMRO was a scheduled obligation in that case (*In re Wilson*, Case No. 01-0092 (Bankr. D.D.C.)) (*see* Bankr. Docket Sheet excerpt, attached as Exhibit "15");

      c.     The Default Notices and Foreclosure Notices sent from the law firm of Friedman & MacFayden, PA to Wilson were mailed to *his 2nd Street Property address*, and either contain "Mini-Miranda" warnings as required by the FDCPA, 15 U.S.C. § 1692g, or reference a mortgagor's cure rights under D.C. consumer protection law (*see,e.g.,* Exhibit No. "16", attached hereto);

      d.     Although the figures were long over due, after the Bankruptcy Court's Stay Hearing, the *conflicting* reinstatement and payoff amounts that Friedman & MacFayden, PA

sent to Defendants and Wilson on same date - - October 18, 2004 - - were mailed to Plaintiff at the 2nd Street Property (*see* Exhibit No. "3" to the Verified Complaint);[4]

      e.     Notwithstanding the land sale allegations in the Opposition, Defendants' own documents (including Deed of Trust Defendants provided to Plaintiff) contain Defined Terms or references to, among other things: "Borrower", "Lender", "Note", "Loan", "Escrow Items", "**RESPA**",[5] "Loan Charges", "Property Insurance", "Borrower's Right to Reinstate", and "Borrower's Right to 30-Days Notice before Acceleration" (*see* Exhibit "5" to the Verified Complaint at ECF pp. 85-86, 89, 92);

      f.     By their own admission, Defendants' have only contributed an alleged "earnest money deposit" in the amount of $30,000 (in the form of the mortgage reinstatement loan) as part of their alleged $160,000 purchase of the 2nd Street Property, Defendants still did not do everything they promised to do or were obligated to do before clouding the title and seizing control over the Wilson's house. *See* Defs. Opp. at ¶13, p. 4;

      g.     Defendants' assertion that they purchased the house for $160,000 also rings hollow because the 2nd Street Property has been appraised at $423,000 (*see* Exhibit No. "4" to the Verified Complaint at CW 0968). It is beyond dispute that Wilson was working feverishly to save (not sell) his house - - hence Plaintiff's ultimate decision to do business with a company called "Home Savers";

      h.     It also is worth noting that ABN AMRO's Note on the 2nd Street Property was only worth $82,000 at the time Defendants preyed on Plaintiff. In other words, assuming

---

[4] *Accord Sandlin v. Shapiro & Fishman*, 919 F. Supp. 1564 (M.D. Fla. 1996) (law firm retained by mortgagee to collect debt, including sending payoff and cure amounts, and directing borrower to make payment directly to law firm is a debt collector under the *consumer* protection laws). It is axiomatic that if Friedman & MacFayden, PA was pursuing the collection of consumer debt the funds used to reinstate that very same home loan must be a consumer transaction.

Defendants' contention about an alleged sale had any merit, the weight to be given this allegation is minimal because with all the equity in the house, Wilson could have fared better under foreclose or deed in lieu in he truly was desirous of giving up his house.

4.    As such, the sum and substance of Defendants' *entire* closing package must be seen by this Court for what it really is:  compelling evidence that Defendants wanted and needed Wilson to believe he was taking out a consumer loan regardless of their after-the-fact rationalizations in this proceeding.  Plaintiff relied to his detriment on these material misrepresentations and is suffering irreparable harm as a result. *See* Exhibit No. "2" to the Verified Complaint (Defendants did not need authorization to check Plaintiff's account and credit history to buy the house).

### B.    Defendants' Statutory Violations Warrant an Injunction

1.    Because it is beyond dispute that the transaction between the parties involves an interest in real property, if this Court finds and concludes that Wilson is a consumer, a corollary finding that Defendants did not provide the necessary disclosures is thus inevitable.

2.    Indeed, Defendants' Opposition all but concedes that they did not provide all of the consumer protection disclosures to Wilson when the $30,000 mortgage reinstatement loan was made.  Moreover, Wilson is adamant that he did not sell his house to Defendants and had no intention to do so. It is undisputed that Wilson never received anything of value from Defendants in connection with this transaction except the $30,000 advance, which was paid directly to Friedman & MacFayden, PA for the benefit of ABN AMRO. *See* Exhibit No. "5" to the Verified Complaint, at ECF, pp. 85-86, 92.

---

[5] It is undeniable that the reference to RESPA, i.e., the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601 *et seq.*, in the form Deed of Trust that Defendants provided to Wilson can only arise within the context of consumers and home secured loans because RESPA is a consumer protection statute (12 U.S.C. § 2601(a)).

3.    When viewed as a whole, the record shows that Defendants have cobbled together a Byzantine array of land records that are neither seamless nor straightforward entitled "Deed of Trust", "Deed", "Equity Share Plus", "Power of Attorney", Equity Calculation Worksheet", "Prospect Summary" and "Good Faith Estimate". Interestingly enough, there is *no* Asset Purchase Agreement or Real Estate Sales Contract in the closing package that Defendants presented to Wilson. *But see* Exhibit No. "14" to the Verified Complaint, attached hereto.

4.    For the Defendants' mortgage reinstatement loan to be valid, Defendants were obligated to provide certain material terms and disclosures to Wilson in writing before the consummation of any transaction, as well as written notice of Plaintiff's unconditional right to rescind the entire transaction for any reason or no reason without penalty or additional funds owed to the lender. *See generally* 15 U.S.C. §§ 1601 *et seq.* (TILA, and as amended by HOEPA); 12 C.F.R. Part 226 (Reg. Z); and, 12 U.S.C. §§ 2601 *et seq.* (RESPA).

5.    Most notably, although Defendants provided a Deed of Trust for Wilson's signature, they did not provide Plaintiff with an actual Good Faith Estimate or a HUD-1 Disclosure Statement as required by RESPA. Defendants also failed to make the five (5) material disclosures and the notice of right to cancel as required by Regulation Z § 226.23. Similarly, the 60-day loan term required by Defendants also violates the prohibition on balloon payments under Regulation Z § 226.32.

6.    Defendants' violations of federal lending laws (including the failure to make mandatory disclosures before or during the rescission period) also constitute violations of District of Columbia law. Such laws include the D.C. Consumer Protection Procedures Act (D.C. Code Ann. §§ 28-3901, 3904(r) *et seq.*, which prohibits, among other things, making or enforcing unconscionable terms or provisions in real estate agreements; the D.C. Mortgage

Lenders and Brokers Act (D.C. Code Ann. §§ 26 1013 *et seq.*), which requires, among other things, mandatory disclosures and licensing of real estate and mortgage professionals; and the D.C. Interest Ceiling Amendment Act (D.C. Code Ann. §§ 28-3301 *et seq.*), which mandates that lenders provide disclosures consistent with the federal truth-in-lending statute and imposes maximum interest ceilings.

7.      Defendants' wholesale failure to provide the material disclosures required by D.C. law provides additional grounds for Wilson to rescind the transaction in its entirety.  *DeBerry v. First Gov't Mortgage & Investors Corp.*, 743 A.2d 699, 703 (D.C. 1999), *reh'g en banc denied* (May 16, 2000). This is particularly true when, as here, Defendants' perpetrated their ruse by, *inter alia*, misrepresenting the identities of company representatives, operated real estate firms that were not qualified to do business in the District of Columbia, and employed or affiliated with persons that knowingly engaged in real estate mortgage and lending for profit without a license.

8.      In addition to Defendants' numerous statutory violations, this Court also can rescind this onerous transaction under the common doctrine of unconscionability based, in whole or substantial part, on:  (a) the Home Savers Group's knowledge at the time the HOEPA loan was made that there was no probability of payment in full by Wilson or a disregard of this ability to repay the debt because of the substantial equity in the house; (b) the absence of meaningful choice by Plaintiff, which led to the manipulation or failure to disclose material terms; and (c) contract terms that are unreasonably favorable to Defendants, including the apparent ability to foreclose on the 2nd Street Property without notice. *See, e.g., Williams v. Walker-Thomas Furniture Co.*, 350 F.2d 445 (D.C. Cir. 1965); *see also Insurance Fed. Savings Bank v. Huntley*, 573 A.2d 787, 788 (D.C. 1990) (no foreclosure is permitted in D.C. absent the issuance of a valid

foreclosure notice 30 days prior to sale).  Defendants have never given Plaintiff any notice of foreclosure, or published notice of the same in a newspaper of general circulation.

### III.    A Balance of the Hardships Tips Decidedly in Plaintiff's Favor

1.    Absent injunctive relief, the 2nd Street Property will be left to languish in the hands of so-called real estate firms and representatives that are not qualified or licensed to do business in the District of Columbia.  *See* Exhibit No. 12 attached hereto.  Wilson will continue to be locked out of and denied access to the house.  See Exhibit No. "1" to the TRO Motion. The other residents of the 2nd Street Property will be subject to continued harassment, intimidation and confusion as a result of Defendants misconduct.

2.    Defendants either will not be harmed because of the substantial value of the 2nd Street Property, or should not be heard on alleged injury because they are guilty of "unclean hands" such that the absence of an injunction would reward their recalcitrance.  *See* Exhibit Nos. 6-8 to the Verified Complaint (e.g., Cease & Desist Letters designed to stop Defendants from ruining Wilson's efforts to refinance his mortgage).  For example, the Opposition, in claiming fee title to the property, makes *no* mention of what effect the Home Savers Group's unauthorized actions are having on the First Mortgage Holder and the Property Insurer to the 2nd Street Property, and whether Defendants' misconduct (including the failure to provide notice to interested third parties) also is impairing these significant interests in the house.

3.    Finally, even if this Court were to find that some kind of *forced* sale resulted from the parties' dealings, which Plaintiff does not concede, that still would leave *unanswered* a fundamental questions: on what basis Defendants do they assert legal title to the 2nd Street Property, lock Wilson out of the house and harass the other residents of the house all before ever tendering to Plaintiff the paltry $160,000 stated in their own, self-serving documents necessary

to consummate an alleged land sale, which as Defendants' action demonstrate, never took place. <u>Not surprisingly, the Home Savers Group's Opposition also is noticeably silent on this material failure of condition.</u> *See* Exhibit No. "10" to the Verified Complaint. Given the protracted effort to obtain discovery from the Home Savers Group, an Order must be entered to preserve the evidence in Defendants' possession, custody and control. The foregoing reasons standing alone more than justify the issuance of an injunction here.

## IV.    The Public Interest Favors the Elimination of Predatory Lending

1.      Because Defendants' failed to provide the requisite disclosures to Wilson, the Opposition predictably adopts a stance more akin to the early days at common law when *caveat emptor* was the law of the marketplace. However, those darks days fortunately have long since passed.

2.      Today, Congress and state legislatures have enacted laws, like TILA, HOEPA, RESPA and the D.C. CPPA, which together provide the foundation for a modern legal landscape expressly designed to protect homeowners, like Plaintiff, against predatory lending and abusive debt collection practices. Executive agencies like, HUD, the FTC and the D.C. DISB have promulgated of rules and regulation to aid in the enforcement of these statutes. And, the federal and state courts have upheld the viability of these statutes, rules and regulations in furtherance of the public interest. In sum, the current law of the land is *caveat venditor* when it comes to sub-prime loans and foreclosure rescue scams.

3.      By their actions and omissions, Defendants knowingly and deliberately chose to enter the real estate business, without the necessary licenses and authorizations; grafted together a "mixed and matched" closing package designed to confuse unwitting victims; and then took

steps to assume, with little or no compensation, all the benefits but none of the burdens associated with the homeownership.

WHEREFORE, Plaintiff Calvert M. Wilson respectfully requests that this Court enter grant his motion for injunctive relief in its entirety, together with such other relief favoring Wilson as this Court deems proper under the circumstances.

Respectfully submitted,

By:  _/s/ Rawle Andrews Jr._
Rawle Andrews Jr. (DC 436283)
ANDREWS & BOWE, PLLP
1717 K Street N.W., Suite 600
Washington, DC 20036
Office: (202) 349-3975
Fax: (410) 510-1034
Dated:  February 7, 2006          Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on this the 7th day of February, 2006, I caused a copy of the foregoing **"REPLY TO DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR INJUNCTIVE RELIEF"** that was filed electronically with the U.S. District Court and served on counsel for Defendants, an ECF compliant attorney on this date in the above captioned matter as follows:

Richard D. Mirsky, Esq.
8171 Maple Lawn Blvd., Suite 200
Maple Lawn, Maryland 20759
Counsel for Defendants
rmirsky@offitkurman.com

/s/ _Rawle Andrews Jr._
Rawle Andrews Jr., Esq.
Counsel for Plaintiff

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLUMBIA

CALVERT M. WILSON, an individual,          *
                                           *
              Plaintiff,                    *         Case No.:  1:06-CV-00069 (JDB)
                                           *
        v.                                 *
                                           *
                                           *
HOME-SAVERS, LLC, a foreign limited        *
liability company; 1905 2nd STREET, NE,    *         **SCHEDULE OF EXHIBITS IN SUPPORT OF**
LLC, a limited liability company;  LUTHER   *         **PLAINTIFF'S MOTION FOR INJUNCTIVE**
HECTOR, an individual; and BARRETT         *         **RELIEF**
WARE, an individual,                       *
                                           *
              Defendants.                    *
                                           *
                                           *
                                           *
                                           *
************************************* *

        Plaintiff Calvert M. Wilson, by undersigned counsel, respectfully submits this Schedule

of Exhibits in Support of his Motion for Injunctive Relief.

| **Exhibit** | **Document** |
| --- | --- |
| 1 | Decl. of Calvert Wilson (attached to Verified. Compl.) |
| 2 | Home Savers' Authorization Form (attached to Verified Compl.) |
| 3 | F&M Law Firm Payoff & Reinstatement Ltrs. (attached to Verified Compl.) |
| 4 | Property Appraisal (attached to Verified Compl.) |
| 5 | Home Savers' "Closing Package" (attached to Verified Compl.) |

| **Exhibit** | **Document** |
|---|---|
| 6 | 08/05/05 Cease & Desist Ltr. to Home Savers (attached to Verified Compl.) |
| 7 | 11/08/05 Cease & Desist Ltr. to Home Savers (attached to Verified Compl.) |
| 8 | 09/12/05 Ltr. from Allstate Lending confirming interference with the refinancing process (attached to Verified Compl.) |
| 9 | 01/07/06 Ltr. From Home Savers to 2nd Street Property Tenants (attached to Verified Compl.) |
| 10 | 01/12/06 Order to Show Cause Re: Home Savers Subpoena in Case No. 05-CV-0108 (JDB) (attached to Verified Compl.) |
| 11 | Decl. of Tjuana Phillips (attached to TRO Motion) |
| 12 | D.C. Government Records (attached to Reply Brief) |
| 13 | Barrett Ware Business Card (attached to Reply Brief) |
| 14 | 12/30/96 HUD-1 Settlement Statement (attached to Reply Brief) |
| 15 | In re Wilson Bankr. Docket Sheet (attached to Reply Brief) |
| 16 | F&M Default and Foreclosure Notice (attached to Reply Brief) |

EXHIBIT "12"

# GOVERNMENT OF THE DISTRICT OF COLUMBIA
## DEPARTMENT OF CONSUMER AND REGULATORY AFFAIRS



# CERTIFICATE

**THIS IS TO CERTIFY** that there were received and accepted for record in the Department of Consumer and Regulatory Affairs, Corporations Division, on the **16th** day of **November , 2004** *, Articles of Organization of:*

## 1905 2ND ST NE, LLC

**WE FURTHER CERTIFY** that said Articles of Organization were Revoked by Proclamation on the **14th** Day of **November , 2005** , pursuant to the District of Columbia Limited Liability Company Act, for having failed and/or refused to file reports and pay all fees due and owing on or before June 16th , **2004** and **2005** .

**IN TESTIMONY WHEREOF I** have hereunto set my hand and caused the seal of this office to be affixed this **3rd** day of **February , 2006** .



Patrick J. Canavan, Psy. D.
Director

Business and Professional Licensing Administration

Maxine M. Hinson
Act. Assistant Superintendent of Corporations
Corporations Division

Anthony A. Williams
Mayor

**Department of Consumer and Regulatory Affairs**
**Business Regulation Administration Corporations Division**
**Corporation Abstract Print Out**

## Corporation Detail

File No: **L21157**     Inc Date: **11/16/2004**   Type Code: **DLC**     Country: **UNITED STATES**

State:   **DC**     Status: **RV**     Status Date: **11/14/2005**   Fee: **150.00**     Bundle No: **D-270**

Name:  **1905 2ND ST NE, LLC**


Agent: **Barrett Ware**

Address: **1717 K St., NW, Ste. #600**                    Zip Code: **20036**   Zip 4:

Stock:                                Dollar Value: **.00**

Retire Date: **00/00/0000**   Retired Box:              Liber No:          Folio No:

Perpetual:          Duration: **01/07/2015**  Goodstandings:

Special Note:


Miscellaneous:


Reports:

# GOVERNMENT OF THE DISTRICT OF COLUMBIA
## DEPARTMENT OF CONSUMER AND REGULATORY AFFAIRS



# C E R T I F I C A T E

**THIS IS TO CERTIFY** that a search of record of the Department of Consumer and Regulatory Affairs, Corporations Division, reveals that

**HOME SAVERS PLUS, LLC**

***IS NOT OF RECORD*** as either a domestic entity organized in the District of Columbia or a foreign entity registered to transact business as of the date hereinafter mentioned.

**IN TESTIMONY WHEREOF I** have hereunto set my hand and caused the seal of this office to be affixed this **3rd** day of **February , 2006 .**

Patrick J. Canavan, Psy. D.
Director

Business and Professional Licensing Administration

Maxine M. Hinson

Maxine M. Hinson
Act. Assistant Superintendent of Corporations
Corporations Division

Anthony A. Williams
Mayor



Online FAQs    ▯ About License Renewals    ▯ Contact Online Services

    o n l i n e   l i c e n s i n g   s e r v i c e s

**Search The Registry : Search Criteria**



### District of Columbia Real Estate

Please enter the name OR select the license prefix and enter the license number of the individual or company. You may enter up to five letters of the first name when searching for an individual in order to narrow your search.

| | | |
|---|---|---|
| **Choose one** | ○ Search for individual | ⦿ Search for company |
| **Full last name/Company name** | Hector | **Individual first name**   L  (optional) |
| **OR** | | |
| **Individual/Company license prefix** | Select a prefix | **License number** |

Search    Reset

..............................................................................................................................................

Privacy Policy, Terms and Conditions of Use,  Copyright © 2004 Promissor,  a Houghton Mifflin Comp

**Online FAQs**   **About License Renewals**      **Contact Online Services**

## Search Results

**District of Columbia Real Estate**

**Company search criteria:** HECTOR   L

**Date:** 05-Feb-2006

**No records found matching the selected criteria. Please use the 'Back' button and check the spelling or license number.If you still fail to locate the individual, please contact the board at the number listed in the FAQs.**

For further options, return to the District of Columbia Real Estate services menu

This search was generated on 05-Feb-2006 at 11:11:23 PM

Privacy Policy, Terms and Conditions of Use,  Copyright © 2004 Promissor,  a Houghton M



**Online FAQs**     **About License Renewals**     **Contact Online Services**



online licensing services

## Search The Registry : Search Criteria



### District of Columbia Real Estate

Please enter the name OR select the license prefix and enter the license number of the individual or company.
You may enter up to five letters of the first name when searching for an individual in order to narrow your search.

Choose one      ● **Search for individual**      ○ **Search for company**

| **Full last name/Company name** | Ware | **Individual first name** | Ba | (optional) |

OR

| **Individual/Company license prefix** | Select a prefix ▼ | **License number** | |

[ Search ]   [ Reset ]

............................................................................................................

Privacy Policy, Terms and Conditions of Use,  Copyright © 2004 Promissor,  a Houghton Mifflin Company





**Online FAQs**    **About License Renewals**        **Contact Online Services**



Search Results

**District of Columbia Real Estate**



Submit a new search

**Individual search criteria:** WARE   BA
**Date:** 06-Feb-2006

**No records found matching the selected criteria.
Please use the 'Back' button and check the spelling
or license number.If you still fail to locate the
individual, please contact the board at the number
listed in the FAQs.**

For further options, return to the District of Columbia Real Estate services menu

This search was generated on 06-Feb-2006 at 4:38:10 PM

Privacy Policy, Terms and Conditions of Use,  Copyright © 2004 Promissor,  a Houghton Mifflin Company



PROMISSOR
knowledge beyond doubt™

Online FAQs    □ About License Renewals    □ Contact Online Services

 

### Search The Registry : Search Criteria

District of Columbia Real Estate

Please enter the name OR select the license prefix and enter the license number of the individual or company. You may enter up to five letters of the first name when searching for an individual in order to narrow your search.

| Choose one | ○ Search for individual | ● Search for company |
|---|---|---|
| **Full last name/Company name** | Felton | **Individual first name**   D (optional) |
| **OR** | | |
| **Individual/Company license prefix** | Select a prefix | **License number** |

[ Search ]   [ Reset ]

Privacy Policy, Terms and Conditions of Use,  Copyright © 2004 Promissor,  a Houghton Mifflin Comp

**Online FAQs**   **About License Renewals**   **Contact Online Services**

## Search Results

**District of Columbia Real Estate**

**Company search criteria:** FELTON  D

**Date:** 05-Feb-2006

**No records found matching the selected criteria. Please use the 'Back' button and check the spelling or license number.If you still fail to locate the individual, please contact the board at the number listed in the FAQs.**

---

For further options, return to the District of Columbia Real Estate services menu

This search was generated on 05-Feb-2006 at 11:12:14 PM

Privacy Policy, Terms and Conditions of Use,  Copyright © 2004 Promissor,  a Houghton M

EXHIBIT "13"



ASSOCIATED ESTATES, LIMITED LIABILITY COMPANY

**Barrett Ware**
Ofc: (202) 508-3886
Cell: (301) 254-7786
bware@associatedestates.com

1717 K Street, NW
Suite 600
Washington, DC 20036
Fax: (202) 726-8870

EXHIBIT "14"

**A. Settlement Statement**

| B. Type of Loan | | | 6. File Number | 7. Loan Number | 8. Mortgage Insurance Case Number |
|---|---|---|---|---|---|
| FHA INSURED | | | 1288-96 | 6128568 | |

U.S. Department of Housing and Urban Development OMB No. 2502-0265

**C. NOTE:** This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

**D. NAME AND ADDRESS OF BORROWER:**  Calvert Wilson
1905 2nd Street, N.E., Washington, DC 20002

**E. NAME AND ADDRESS OF SELLER:**  Demetrice A. Black

**F. NAME AND ADDRESS OF LENDER:**  Summit Mortgage Group, Inc.
7830 Old Georgetown Road #20
Bethesda, Maryland 20814            TIN:

**G. PROPERTY**
**LOCATION:**  1905 2nd Street, N.E.
Washington, DC 20002
Lot 47  NATIONAL SAVINGS AND TRUST

**H. SETTLEMENT AGENT:**  Reges Real Estate Settlements
**PLACE OF SETTLEMENT:**  20 Courthouse Square, #104
Rockville, Maryland 20850            TIN: 52-1853628

**I. SETTLEMENT DATE:**  December 30, 1996

| J. | SUMMARY OF BORROWER'S TRANSACTION | | K. | SUMMARY OF SELLER'S TRANSACTION | |
|---|---|---|---|---|---|
| **100. GROSS AMOUNT DUE FROM BORROWER:** | | | **400. GROSS AMOUNT DUE TO SELLER:** | | |
| 101. Contract sales price | 90,000.00 | | 401. Contract sales price | | 90,000.00 |
| 102. Personal property | | | 402. Personal property | | |
| 103. Settlement charges to borrower: | 4,900.10 | | 403. | | |
| _(from line 1400)_ | | | | | |
| 104. | | | 404. | | |
| 105. | | | 405. | | |
| ADJUSTMENTS FOR ITEMS PAID BY SELLER IN ADVANCE: | | | ADJUSTMENTS FOR ITEMS PAID BY SELLER IN ADVANCE: | | |
| 106. City/town taxes to | | | 406. City/town taxes to | | |
| 107. County taxes to | | | 407. County taxes to | | |
| 108. Assessments to | | | 408. Assessments to | | |
| 109. | | | 409. | | |
| 110. | | | 410. | | |
| 111. | | | 411. | | |
| 112. | | | 412. | | |
| **120. GROSS AMOUNT DUE FROM BORROWER:** | 94,900.10 | | **120. GROSS AMOUNT DUE TO SELLER:** | | 90,000.00 |
| **200. AMOUNTS PAID BY OR IN BEHALF OF BORROWER:** | | | **500. REDUCTIONS IN AMOUNT DUE TO SELLER:** | | |
| 201. Deposit or earnest money | 1,000.00 | | 501. Excess deposit _(see instructions)_ | | |
| 202. Principal amount of new loan(s) | 90,082.00 | | 502. Settlement charges to seller _(line 1400)_ | | 11,528.48 |
| 203. Existing loan(s) taken subject to | | | 503. Existing loan(s) taken subject to | | |
| 204. | | | 504. Payoff of first mortgage loan | | 18,109.10 |
| 205. | | | 505. Payoff of second mortgage loan | | |
| 206. | | | 506. Escrow for Water Escrow | | 175.00 |
| 207. | | | 507. | | |
| 208. | | | 508. | | |
| 209. | | | 509. | | |
| ADJUSTMENTS FOR ITEMS UNPAID BY SELLER: | | | ADJUSTMENTS FOR ITEMS UNPAID BY SELLER: | | |
| 210. City/town taxes 10/1/96 to 12/30/96 | 320.17 | | 510. City/town taxes 10/1/96 to 12/30/96 | | 320.17 |
| 211. County taxes to | | | 511. County taxes to | | |
| 212. Assessments to | | | 512. Assessments to | | |
| 213. closing costs | 1,694.70 | | 513. closing costs | | 1,694.70 |
| 214. | | | 514. | | |
| 215. | | | 515. | | |
| 216. | | | 516. | | |
| 217. | | | 517. | | |
| 218. | | | 518. | | |
| 219. | | | 519. | | |
| **220. TOTAL PAID BY/FOR BORROWER:** | 93,096.87 | | **520. TOTAL REDUCTIONS IN AMOUNT DUE SELLER:** | | 31,827.45 |
| **300. CASH AT SETTLEMENT FROM/TO BORROWER:** | | | **600. CASH AT SETTLEMENT TO/FROM SELLER:** | | |
| 301. Gross amount due from borrower _(line 120)_ | 94,900.10 | | 601. Gross amount due to seller _(line 420)_ | | 90,000.00 |
| 302. Less amount paid by/for borrower _(line 220)_ | ( 93,096.87) | | 602. Less total reductions in amount due seller _(line 520)_ | | ( 31,827.45) |
| **303. CASH ( X ) FROM ( ) TO ) BORROWER:** | 1,803.23 | | **603. CASH ( X ) TO ( ) FROM ) SELLER:** | | 58,172.55 |

Previous Edition is Obsolete            Amended 10/87    HUD-1 (3-86) - RESPA, HB 4305.2

0s2b

REG0409

HUD-1 (Rev. 3/86)

OMB No. 2502-0265

**L.**      SETTLEMENT CHARGES

| | | PAID FROM BORROWER'S FUNDS AT SETTLEMENT | PAID FROM SELLER'S FUNDS AT SETTLEMENT |
|---|---|---|---|
| 700. TOTAL SALES / BROKER'S COMMISSION: BASED ON PRICE $ 90,000.00 @ 6.00%= | 5,400.00 | | |
| **DIVISION OF COMMISSION (LINE 700) AS FOLLOWS:** | | | |
| 701. $ 2,700.00 to Rescom Realty | | | |
| 702. $ 2,700.00 to Century 21 Diplomat | | | 5,400.00 |
| 703. Commission paid at settlement | | | |
| 704. $1,000.00 Deposit held by Rescom Realty | | | |
| **800. ITEMS PAYABLE IN CONNECTION WITH LOAN:** | | 881.00 | |
| 801. Loan origination fee | 1.00 % Summit Mortgage Group, Inc. | | 1,801.64 |
| 802. Loan discount | 2.00 % Summit Mortgage Group, Inc. | | |
| 803. Appraisal fee to | 300.00 Summit Mortgage ( 300.00 POC) | | |
| 804. Credit report to: | 61.00 Summit Mortgage ( 61.00 POC) | | |
| 805. Lender's inspection fee | | | |
| 806. Mortgage insurance application fee to | | | 225.00 |
| 807. Assumption fee | Summit Mortgage Group, Inc. | | 295.00 |
| 808. underwriting fee | Summit Mortgage Group, Inc. | | 75.00 |
| 809. Processing Fee | Summit Mortgage Group, Inc. | | 225.00 |
| 810. Tax Service Fee | Summit Mortgage Group, Inc. | | |
| 811. Doc Prep Fee | Summit Mortgage Group, Inc. | | |
| **900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE:** | | 41.96 | |
| 901. Interest from 12/30/96 to 1/1/97 2@9800 /day | | 1,982.25 | Dept of Hud |
| 902. Mortgage insurance premium for mos. to | | | |
| 903. Hazard insurance premium for 725@04 POC 1 | | 24.00 | |
| 904. Flood Cert for Fee yrs. to Summit Mortgage Group, Inc. | | | |
| 905. | | | |
| **1000. RESERVES DEPOSITED WITH LENDER:** | | 181.26 | |
| 1001. Hazard insurance | 3 months @ $ 60.42 per month | 73.18 | |
| 1002. Mortgage insurance | 2 months @ $ 36.59 per month | 649.26 | |
| 1003. City property taxes | 6 months @ $ 108.21 per month | | |
| 1004. County property taxes | months @ $ per month | | |
| 1005. Annual assessments | months @ $ per month | | |
| 1006. Flood insurance | months @ $ per month | | |
| 1007. | months @ $ per month | | |
| 1008. aggregated escrow | | (-254.47) | 175.00 |
| **1100. TITLE CHARGES:** | | | |
| 1101. Settlement or closing fee to Reges Real Estate Settlements | -M &J Abstracts - | 172.50 | |
| 1102. Abstract or title search to | | | |
| 1103. Title examination to | | | |
| 1104. Title insurance binder to | | | |
| 1105. Document preparation to | | | |
| 1106. Notary fees to | | | |
| 1107. Attorneys' fees to | | | |
| (includes above items Numbers: ) | | | |
| 1108. Title insurance to First American Title Ins. Co. | | 350.00 | |
| (includes above items Numbers: ) | | | |
| 1109. Lender's coverage $ 225.00 ( $90,082.00) | | | |
| 1110. Owner's coverage $ 125.00 ( $90,000.00) | | | 16.00 |
| 1111. Delivery Charge to Reges Real Estate Settlements | | | 75.00 |
| 1112. Obtain and Record Release Reges Real Estate Settlements | | 486.00 | |
| 1113. Title Examination Reges Real Estate Settlement | | | |
| **1200. GOVERNMENT RECORDING AND TRANSFER CHARGES:** | | 105.00 | 50.00 |
| 1201. Recording fees: Deed $ 30.00 ; Mortgage $ 75.00 ; Release $ 50.00 | | | 1,980.00 |
| 1202. City/county tax / stamps: Deed $ 1980.00 Mortgage $ | | | |
| 1203. State tax / stamps: Deed $ Mortgage $ | | | |
| 1204. | | | |
| 1205. | | | |
| **1300. ADDITIONAL SETTLEMENT CHARGES:** | | 150.00 | |
| 1301. Survey to O'Connell & Lawrence, Inc. | | 58.16 | 1,210.84 |
| 1302. Pest inspection to Home Paramount | | | |
| 1303. | | | |
| 1304. | | | |
| 1305. | | | |
| 1306. | | | |
| 1307. | | | |
| **1400. TOTAL SETTLEMENT CHARGES** (Enter on line 103, Section J and line 502, Section K) | | 4,900.10 | 11,528.48 |

REG0410

# ADDENDUM TO HUD-1 SETTLEMENT STATEMENT

**ACCEPTANCE:** The parties hereto accept this settlement statement as a correct representation of our contract as modified by any oral or written agreement at or before settlement.

**LIABILITY:** The parties hereto acknowledge that the correctness of information furnished to the Firm of Reges Real Estate Settlements, (hereinafter "the Firm"), by other than its employees is not guaranteed by the Firm and that the Firm takes no liability for matters not appearing of record or improperly indexed when title examination is made.

**TAX ADJUSTMENTS:** If proration of taxes and assessments was made on estimates prior to receipt of actual bills, the parties hereto agree to adjust the prorations shown hereon when the actual bills are received. Payment of outstanding real estate taxes not paid at settlement are assumed by the Purchaser.

**SUBJECT TO FINAL AUDIT:** All computations are subject to final audit. Any error discovered may be corrected by the Firm in which event the parties hereto agree to immediately reimburse the Firm for any error made in their favor, and for the cost of the collection of same, if necessary, including reasonable attorney's fees.

**WATER ESCROW:** The Firm's liability for payment of any water bill is limited to the amount held from the Seller for such payment.

**BAD CHECK CHARGE:** In the event that any check presented to the Firm by the Purchaser is returned by the Purchasers' bank for any reason, the Purchaser agrees to pay to the Firm the sum of $50.00 for each check so returned to help defray the bookkeeping costs associated therewith. In the event the payoff of existing loan(s) is delayed due to the Purchaser presenting an 'assignment of funds' or due to the delay in Purchasers' check clearing the Firms bank, Purchaser agrees to reimburse the Firm for additional interest resulting from said delay which the Firm may pay to any secured lender in order to obtain the necessary release or releases of any secured Deed of Trust or Mortgage.

**EXISTING LIENS:** The Seller certifies that there are no bankruptcy proceedings, Deeds of Trust, Mortgages, Special Assessments, or HOA Dues, levied or pending, or other liens affecting the property other than those shown on page 1 hereof, and if there are such liens, the Seller hereby guarantees payment and release of same.

**SUBSTITUTE FORM 1099 - SELLER STATEMENT:** *The information contained in Blocks E, G, H, AND I and on lines 401, 406, and 407 of the HUD-1 Settlement Statement is important tax information and is being furnished to the IRS. If you are required to file a return, a negligence penalty or other sanction will be imposed on you if this item is required to be reported and the IRS determines that it has not been reported. SELLER INSTRUCTIONS: If this real estate was your principal residence, file Form 2119, Sale or Exchange of Principal Residence, for any gain, with your income tax return; for other transactions, complete the applicable parts of Form 4797, Form 6252 and/or Schedule D (Form 1040). You are required to provide the Firm with your taxpayer identification numbers. If you do not provide the Firm with your correct taxpayer identification numbers, you may be subject to civil or criminal penalties imposed by law. By signing this form, the undersigned Sellers do hereby certify UNDER THE PENALTIES OF PERJURY that the numbers shown on this statement are their correct taxpayer identification numbers.*

| BORROWER'S ESTIMATED MONTHLY PAYMENT | | | MAKE PAYMENTS TO: |
|---|---|---|---|
| Principal and Interest | $ | 0.00 | Summit Mortgage Group, Inc. |
| Hazard Insurance Premium | $ | 60.42 | 7830 Old Georgetown Road #20 |
| State and County Tax Escrow | $ | 0.00 | Bethesda, Maryland 20814 |
| City or Town Tax Escrow | $ | 108.21 | |
| Mortgage Insurance Escrow | $ | 36.59 | **FIRST PAYMENT DUE DATE:** |
| Miscellaneous Escrow | $ | 0.00 | |
| TOTAL PITI | $ | 205.22 | |

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.

_____          _____
CLINTON WILSON                              DOMONRICE A. BLACK

S.S. No.: _____                  Purchasers Phone No.: _____

Sellers Phone No.: _____

Sellers Forwarding Address: _____

_____

The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused the funds to be disbursed in accordance with said statement.

_____          _____
Settlement Agent                            Date

**WARNING:** It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine and imprisonment. For details see: Title 18 U.S. Code Section 1001 and Section 1010.

CERTIFIED TO BE A TRUE AND CORRECT COPY OF THE ORIGINAL SETTLEMENT STATEMENT CONSISTING OF 3 PAGES.

Reges Real Estate Settlements, BY: _____

REG0411

EXHIBIT "15"

APPEAL

# U.S. Bankruptcy Court
# United States Bankruptcy Court for the District of Columbia (Washington, D.C.)
# Bankruptcy Petition #: 01-00092

*Assigned to:* Judge S. Martin Teel Jr.
Chapter 13
Voluntary
Asset

*Date Filed:* 01/16/2001
*Date Discharged:* 07/01/2005

**Calvert M. Wilson**
1905 2nd Street NE
Unit #2
Washington, DC 20002
SSN: xxx-xx-9292
*Debtor*

represented by **Rawle Andrews, Jr.**
Andrews & Bowe, PLLP
1717 K Street, N.W.
Suite 600
Washington, DC 20036
202-349-3975
Email: randrews@andrewsgroup.org

**Steven M. Stomski**
6917 Annapolis Road
Hyattsville, MD 20784
202-246-7911
Email: smslaw@aol.com

**Cynthia A. Niklas**
4545 42nd Street, NW Suite 211
Washington, DC 20016-4623
202-362-8500
*Trustee*

| Filing Date | # | Docket Text |
|---|---|---|
| 01/16/2001 | 1 | Voluntary Petition, List of Creditors, Ntc. to Individual Consumer Debtor & Matrix. (Filing Fee: $185.00; Receipt# 41350) (kn) (Entered: 01/18/2001) |
| 01/16/2001 | 2 | Schedules A-J. (kn) (Entered: 01/18/2001) |
| 01/16/2001 | 3 | Statement of Financial Affairs. (kn) (Entered: 01/18/2001) |
| 01/16/2001 | 4 | Disclosure of Compensation Filed By Steven M. Stomski In the Amount of $ 1,250.00. (dc) (Entered: 01/19/2001) |
| 01/18/2001 | | First Meeting of Creditors Scheduled For 10:00 3/5/01 At Courtroom 24 Witness Room Confirmation Hearing Set For 9:30 5/18/01 At Courtroom 24, |

# EXHIBIT "16"

LAW OFFICES

# *Friedman & MacFadyen, P.A.*

ALVIN E. FRIEDMAN*

KENNETH J. MacFADYEN

MARK H. FRIEDMAN*

MICHAEL T. CANTRELL*

DANIEL B. MENCHEL*

JAMES J. LOFTUS*

STEPHEN B. WOOD**

NICOLE ROSSI**

KATHRYN D. CLAYPOOLE

DAVID B. MINTZ*

*ADMITTED TO PRACTICE IN MD & D. C.

**ADMITTED TO PRACTICE IN VA

TOTMAN BUILDING—SUITE 400

210 EAST REDWOOD STREET

BALTIMORE, MARYLAND 21202-3399

———

(410) 685-1763

FAX (410) 727-1759

PLEASE REPLY TO BALTIMORE _____

PLEASE REPLY TO VIRGINIA _____

SAMUEL S. LEVIN

(1897-1979)

———

D. C. OFFICE

5301 WISCONSIN AVENUE N. W.

SUITE 750

WASHINGTON, D. C. 20015

VIRGINIA OFFICE

1601 ROLLING HILLS DRIVE

SURRY BUILDING, SUITE 125

RICHMOND, VIRGINIA 23229

(804) 288-0088

FAX (804) 288-0052

October 12, 2004

Mr. Calvert M. Wilson
1905 2nd Street, N.E.
Washington, DC  20002

Re: 1905 2nd Street, N.E.
   Our File No.: 519031

Dear Mr. Wilson:

Enclosed herewith please find a copy of the Notice of Sale with reference to the above captioned property spelling out the terms and conditions of said foreclosure sale.

It will be necessary for you to contact this office to determine the exact amount due and payable to stop the foreclosure sale.

THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE

Very truly yours,

FRIEDMAN & MacFADYEN, P.A.

Alvin E. Friedman

AF:tng
Enclosures

CERTIFIED MAIL - RETURN RECEIPT REQUESTED
FIRST CLASS MAIL

CW 1840

GOVERNMENT OF THE DISTRICT OF COLUMBIA
DEPARTMENT OF FINANCE AND REVENUE

File No.: 519031

Recorder of Deeds

515 D STREET, NORTHWEST
WASHINGTON, D. C. 20001 · 2783

NOTICE OF FORECLOSURE SALE OF REAL PROPERTY
OR CONDOMINIUM UNIT

(Pursuant to Public Law 90-566, approved October 12, 1968)

TO : (List Name and address of each owner of the real property
encumbered by said deed of trust, mortgage, or security
instrument.)

Property:
Mailing :

Calvert M. Wilson
1905 2nd Street, N.E., Washington, DC 20002
1905 2nd Street, NE, Unit #2, Washington, DC 20002
1036 Marbury Court, District Heights, MD 20747
P.O. Box 71136, Washington, DC 20024

FROM: Alvin E. Friedman, Esquire     PHONE: (410)685-1763

YOU ARE HEREBY NOTIFIED THAT IN ORDER TO SATISFY THE DEBT
SECURED BY THE DEED OF TRUST, MORTGAGE, OR OTHER SECURITY
INSTRUMENT, THE REAL PROPERTY OR CONDOMINIUM UNIT HEREIN
DESCRIBED WILL BE SOLD AT A FORECLOSURE SALE TO BE HELD ON
Wednesday, November 17, 2004 11:24 a.m. AT THE OFFICE OF Alex
Cooper Auctioneers, 5301 Wisconsin Avenue, N.W., Suite 750
Washington, D.C. 20005 THIS SALE DATE IS SUBJECTED TO
POSTPONEMENT FOR A PERIOD NOT TO EXCEED THIRTY (30) CALENDAR
DAYS FROM THE ORIGINAL DATE OF FORECLOSURE SALE, AFTER WHICH
THIS NOTICE OF FORECLOSURE SHALL EXPIRE.

Security Instrument recorded in the land records of the District
of Columbia at the Recorder of Deeds on January 2, 1998.

Liber: __n/a__   Folio: __n/a__   Instrument No. 0225

Maker(s) of Note secured by the instrument: Calvert M. Wilson
                        1905 2nd Street, NE, Unit #2,Washington,DC 20002
      Phone Number        Last known address

Description
of Property: __Residential__
            (two-story brick, dwelling, apartment building, vacant
            lot, condominium unit, etc.)
Address: 1905 2nd Street, N.E., Washington, DC 20002

Lot & Square No: 47_____ / 3565_____   or Parcel No: n/a_____

Holder of the Note: ABNAMRO Mortgage Group, c/o Friedman &
MacFadyen, P.A.
                (Name)

(410)685-1763          210 E. Redwood Street, Baltimore, MD 21202
(Phone Number)     (Address)

Balance owed on the note : $108,272.94 approx plus all foreclosure
                           fees & costs through November 17, 2004

Minimum balance required to cure default obligation pursuant to
D.C. Law 5-82 "Right to Cure a Residential Mortgage Foreclosure
Default Act of 1984." $27,535.14 approx plus all foreclosure fees &
                      costs through November 17, 2004

Person to contact
to stop foreclosure sale: Alvin E. Friedman, Esquire_____
                        (Name)

Friedman & MacFadyen, P.A., 210 E. Redwood Street, Baltimore, MD 21202     (410)685-1763
(Address)                                              (Phone Number)

( OVER )

CW 1841

I hereby certify that the Notice of Foreclosure Sale was sent to the present owner(s) of the real property encumbered by the said deed of trust, mortgage, or other security instrument described above, by certified mail, return receipt required on October 12, 2004 ;  and I further certify that I understand that Public Law 90-566 prohibits any foreclosure sale under a power of sale provision contained in any deed of trust, mortgage or other security instrument until after the owner(s) of the real property encumbered by said deed of trust, mortgage, or security instrument has been given written notice of such sale, and the Recorder of Deeds, D.C. has received a copy of such notice at least 30 days in advance of such sale.

10/12/04                         _____
(Date)                          (Signature of the Noteholder or his Agent)

     I, Terry J. Vanover, a Notary Public in and for Harford County, Do HEREBY CERTIFY THAT Alvin E. Freedman, James J. Loftus, Daniel Menchel , party/ies to this Notice of Foreclosure Sale bearing date on the October 12, 2004 personally appeared before me and executed the said Notice of Foreclosure Sale and acknowledged the same to be his/her/their act and deed.

     Given under my hand and seal this the October 12, 2004 .

                            _____
                            Terry J. Vanover, Notary Public

My Commission Expires: 04/12/2006