IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CALVERT M. WILSON** : | |
| : | |
| **Plaintiff,** : | |
| : | |
| v. : | Case No.: 1:06-CV-00069(JDB) |
| : | |
| **HOME-SAVERS, LLC**  et al. : | |
| : | |
| **Defendants.** : | |
| : | |
| : | |

**DEFENDANT'S SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**

Defendants, Home Savers, LLC, 1905 2nd Street, N.E., LLC, Barrett Ware and Luther Hector, by and through counsel, Richard D. Mirsky, Esq. and Offit Kurman Attorneys At Law, submits the following supplemental memorandum in support of dismissal for lack of subject matter jurisdiction, and respectfully states as follows:

**Procedural Posture**

1. This memorandum of points and authorities in support of dismissal for lack of subject matter jurisdiction, is submitted in furtherance of this Court's Minute Order dated February 9, 2006.

2. The following memorandum supplements the arguments presented to this Court on February 9, 2006.

**Plaintiff's Jurisdictional Statement**

3. Plaintiff has set forth in his pleading that this Court has subject matter jurisdiction

1

"...under the laws of the United States pursuant to 28 U.S.C. §§ 1331 and 2201, and 15 U.S.C. §§ 1601 *et seq.*, and 15 U.S.C. §§ 1602(aa) *et seq.* (*See*, Plaintiff's Verified Complaint, paragraph 19).

4. 28 U.S.C. §§ 1331 provides: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." This is commonly referred to as jurisdiction of "federal questions."

5. 28 U.S.C. § 2201 provides in pertinent part: "(a) In a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." This section provides that district courts have declaratory relief powers, however, it does not eliminate the need for a basis for federal subject matter jurisdiction.

6. 15 U.S.C. §§ 1601 *et seq.* as well as 15 U.S.C. §§ 1602(aa) *et seq.* does provide a basis for a "federal question," however a closer review of these statutes are necessary to determine whether subject matter jurisdiction exists under the attendant facts and circumstances of this case.

## Federal Consumer Credit Protection Statutes

7. The statutes above are found in the United States Code, Title 15. entitled Commerce and Trade, Chapter 41. entitled Consumer Credit Protection, Subchapter I. entitled Consumer Credit Cost Disclosure, Part A. entitled General Provisions.

8. This statute sets forth the Congressional findings and a declaration of its purpose. The

statute states in pertinent part:

> The Congress finds that economic stabilization would be enhanced and the competition among various financial institutions and other firms engaged in the extension of consumer credit would be strengthened by the informed use of credit. The informed use of credit results from an awareness of the cost thereof by consumers. It is the purpose of this subchapter to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices. (*See*, 15 U.S.C. § 1601 (a)).

9. From this framework, plaintiff's allegations must be analyzed. It should be noted that the Board of Governors of the Federal Reserve System was to conduct a study and submit to the Congress a report, including recommendations for any appropriate legislation, regarding (1) whether a consumer engaging in an open end credit transaction (as defined in section 103 of the Truth in Lending Act [15 U.S.C.A. 1602]) **secured by the consumer's principal dwelling is provided adequate protections under Federal law**, including section 127A of the Truth in Lending Act [15 U.S.C.A. 1637a]; and (2) whether a more appropriate interest rate index exists for purposes of subparagraph (A) of section 103 (aa)(1) of the Truth in Lending Act (as added by section 152(a) of this Act [15 U.S.C.A. 1602(aa)(1)(A)]) than the yield on Treasury securities referred to in that subparagraph (emphasis added). (*See*, Pub.L. 103-325, Title I, § 157, Sept. 23, 1994, 108 Stat. 2197).

10. It is helpful and instructive to review the general construction and purpose of this statute. Congress designed the Truth-in Lending Act (TILA) to protect consumers from inaccurate and unfair credit practices. Fairley v. Turan-Foley Imports, Inc., C.A.5 (Miss.) 1995, 65 F.3d 475.

11. Note, however, that the district court will construe provisions of this subchapter against borrowers who were not misled, but are merely seeking a windfall for finding a technical defect in disclosure form which could not conceivably have influenced his choice of credit. <u>Dixey v. Idaho First Nat. Bank</u>, D.C. Idaho 1981, 505 F. Supp. 846, reversed on other grounds 677 F.2d 749.

12. In this instant case, plaintiff (Calvert Wilson) was well aware of the terms and conditions of this transaction. At no time was he misled. The "Equity-Share Plus" Agreement that he executed set forth exactly how much he would pay to defendant as well as what would happen if payment were not forthcoming. Plaintiff was also represented by counsel. Both plaintiff and his counsel were informed as to the terms and conditions of this particular transaction.

13. Our courts have held that in construing this subchapter, court should look at substance of transactions involved and not simply the form. <u>James v. Ragin</u>, W.D.N.C. 1977, 432 F.Supp. 887. While this subchapter is to be interpreted liberally for the protection of borrowers, it is to be read in a manner calculated to protect borrowers, not as a maze containing obscure technical pitfalls for creditors. <u>George v. General Finance Corp. of Louisiana</u>, E.D.La. 1976, 414 F.Supp.33.

14. 15 U.S.C. §§ 1602, sets forth the various definitions and rules of construction for this statute. 15 U.S.C. §§ 1602(h) sets forth in pertinent part:

> The adjective "consumer", used with reference to a credit transaction, characterizes the transaction as one in which the party to whom credit is offered or extended is a natural person, and the money, property, or services which are the subject of the transaction are primarily for personal, family, or household purposes.

4

15. In the instant case, plaintiff's transaction with defendants was not a "consumer" transaction as anticipated under these statutes. It has been conceded that at the time of the transactions, to wit, November of 2004, plaintiff did not reside at the subject property nor was it plaintiff's principal dwelling. To the contrary, plaintiff lived at a completely different address in the District of Columbia: 1118 47th Pl., N.E. Washington, DC 20019.

16. In November of 2004, plaintiff was seeking monies to stop a foreclosure upon the subject property located at 1905 Second St., N.E., Washington, DC 20002. Plaintiff was, and is, a landlord deriving rents from tenants renting at the subject property.

17. 15 U.S.C. §§ 1602 (aa), which plaintiff reflects in his pleading at paragraph 19 as a basis for subject matter jurisdiction, states in pertinent part:

> "A mortgage referred to in this subsection means a consumer credit transaction that is secured by the consumer's principal dwelling ...."

18. Plaintiff's complaint is replete with numerous allegations that the underlying transaction with these defendants violated the Home Ownership and Equity Protection Act of 1994 (HOEPA).

19. Plaintiff refers to the underlying transaction as a "HOEPA loan." (*See*, generally the litany of HOEPA references in the Verified Complaint at ¶¶ 3, 12, 17, 25, 49-50, 57, 63, 66, 71, 72, 116, 122, 125, 127-128, 130, 133, 137, 141-143, 146, 151, 158, 160, 162, 169, 170-171, 178-179, 181, 187, 190-191, and 197).

20. In 1994, Congress enacted the Home Ownership and Equity Protection Act of 1994 (HOEPA), 15 U.S.C.A. §§ 1602(aa), 1610, 1639, 1640 which amended the Truth in Lending Act (TILA), 15 U.S.C.A. §§ 1691 et seq., to add new disclosure requirements

and new consumer protection restrictions on specified home mortgage loans. The legislation was an effort to curb the practice called "reverse redlining" in which lenders would make high cost mortgage loans to individuals with substantial equity in their homes without regard to the individual's income and cash flow to repay the debt. (*See*, 198 A.L.R. Fed. 631 Validity, Construction, and Application of Home Ownership and Equity Protection Act of 1994).

21. The predatory lending practice which gave rise to this legislation had often been referred to as "equity stripping," i.e., lending based on the value of an asset securing the loan, rather than a borrower's ability to repay. Specifically, equity stripping involves issuing a loan designed to fail and profiting by acquiring the property through default, rather than by receiving loan payments.

22. The instant case is not a transaction that falls within the purview of HOEPA as will be discussed herein. Moreover, the transaction is distinguishable from the equity stripping scheme contemplated by Congress.

23. Whether the underlying transaction be deemed a sale (with an option to repurchase) or a loan, it was not designed to fail. To the contrary, the transaction contemplated that plaintiff would utilize the funds advanced by the defendants (approximately $30,500.00) to reinstate plaintiff's existing loan that was already in default. Thereafter, it was contemplated that plaintiff would refinance the loan that had been reinstated, and from the funds received during the refinance, pay the defendants approximately $122,000.00. In fact, plaintiff did refinance his existing loan, and upon information and belief, did also walk away with funds utilizing the equity that had accrued in the subject property (which

could have been paid defendant), but then refused to pay defendants.

## HOEPA Loan Requirements

24. In <u>Lopez v. Delta Funding Corp.</u>, 1998 WL 1537755 (E.D. N.Y. 1998), the court held that to qualify as a mortgage loan within the definition at 15 U.S.C.A. §1602 (aa) (a "HOEPA loan"), a mortgage loan must satisfy the following five requirements. First, the mortgage loan must be a "consumer credit transaction," as defined in 15 U.S.C.A. §1602(h). Second, the mortgage loan must be a consumer credit transaction with a "creditor," as defined in 15 U.S.C.A. §1602(f). Third, the mortgage loan must be secured by the "consumer's principal dwelling," as defined with reference to the definition of "dwelling" in 15 U.S.C.A. §1602(v). Fourth, the mortgage loan must be a second or subordinate residential mortgage, not a "residential mortgage transaction," a "reverse mortgage transaction," or a transaction under an "open credit plan." Fifth, the mortgage loan must satisfy either of two tests set forth in 15 U.S.C.A. §1602(aa)(1). The first test applies when the annual percentage rate of interest for the loan transaction exceeds certain levels (15 U.S.C.A. §1602(aa)(1)(A)). The second test applies when the total "points and fees" payable by the borrower at or before closing will exceed the greater of 8% of the total loan amount, or $400 (15 U.S.C.A. §1602(aa)(1)(B)). If a mortgage loan satisfies these five requirements, it is considered a HOEPA loan under 15 U.S.C.A. §1602(aa) and is subject to the requirements of HOEPA, 15 U.S.C.A. §1639.

25. For the purposes of this memorandum, we need not look any further than the conceded facts. This was not plaintiff's principal dwelling. For this transaction to qualify as a HOEPA loan, a mortgage loan must be secured by the "consumer's principal dwelling."

Although the subject property could, under different circumstances, qualify as a "dwelling" under the definition set forth in 15 U.S.C.A. §1602(v), it cannot qualify as a HOEPA loan unless at the time of the transaction it was also the consumer's principal dwelling.

26. It should be noted that several other requirements may also be lacking, i.e., even if this transaction were deemed to be a loan, it is not clear that it was a mortgage loan. No deed of trust was ever filed. Moreover, it is not clear that it would be considered a "consumer credit transaction," as defined in 15 U.S.C.A. §1602(h). That section provides, in pertinent part that:

> The adjective "consumer", used with reference to a credit transaction, characterizes the transaction as one in which the party to whom credit is offered or extended is a natural person, and the money ... which [is] the subject of the transaction [was used] for personal, family, or household purposes.

Plaintiff was not using the money for personal, family or household purposes. Plaintiff was using the money to reinstate a loan on real property that he owned and was operating as a business, to wit, he was collecting rents from tenants.

27. It is also unclear whether the defendants would qualify as creditors as defined in 15 U.S.C.A. §1602(f). Under that section, the term "creditor" refers only to a person who both (1) regularly extends ... consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement.

28. For all of the reasons set forth above, this instant transaction does not qualify as a

HOEPA loan.

## Statute of Limitations Has Expired

29. It should also be noted that the court in Foster v. EquiCredit Corp., 2001 WL 177188 (E.D. Pa. 2001), held that the statute of limitations for recovery of damages under the Truth in Lending Act (TILA), 15 U.S.C.A. §1640(e), is one year from the time of the transaction, and that because the Home Ownership and Equity Protection Act of 1994 (HOEPA), 15 U.S.C.A. §1639, is an amendment to TILA, it is governed by the same statute of limitations. *See also*, Celimar Solar v. Millenium Financial Inc., 2002 WL 1019047 (E.D. Pa. 2002), which held that the Home Ownership and Equity Protection Act of 1994 (HOEPA), 15 U.S.C.A. §1640(e), contains a clear one-year statute of limitations that begins to run from the date of the alleged violation.

30. To the extent that the plaintiff herein is seeking monetary damages from disclosure violations of HOEPA, he was required to commence his action before November 14, 2005.

WHEREFORE, defendants respectfully request the following relief:

    A.    That plaintiff's complaint be dismissed;

    B.    That this Court grant such further and other relief as the nature of this case and equity and justice may require.

Respectfully submitted,

Offit Kurman Attorneys At Law

By: /s/ Richard D. Mirsky
_____
Richard D. Mirsky, Esq. (Fed. Bar. No. 24438)
(DC Bar. No. 396939)
8171 Maple Lawn Blvd., Suite 200
Maple Lawn, MD 20759
Direct Dial (301) 575-0342
Facsimile (301) 575-0335

Attorney for Defendants

## CERTIFICATE OF SERVICE UNDER LCvR 65.1

I hereby certify that on the 16th day of February 2006, I caused a copy of the **"Defendant's Supplemental Memorandum of Points and Authorities in Support of Motion to Dismiss for Lack of Subject Matter Jurisdiction "** that was filed electronically under the ECF guidelines with the Court on this date in the above captioned matter, was also sent via first class mail, postage prepaid, to the following:

Rawle Andrews Jr., Esq.
Andrews & Bowe, PLLP
1717 K street N.W., Suite 600
Washington, DC 20036

/s/ Richard D. Mirsky
_____
Richard D. Mirsky, Esq.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CALVERT M. WILSON**        : | |
| : | |
| **Plaintiff,**        : | |
| : | |
| v.        : | Case No.: 1:06-CV-00069(JDB) |
| : | |
| **HOME-SAVERS, LLC**    et al.      : | |
| : | |
| **Defendants.**        : | |
| : | |

## ORDER

This matter came before the Court on February 9, 2006 upon plaintiff's amended motion for a temporary restraining order and a preliminary injunction [6], arguments were also heard regarding the issue of this Court having the power to exercise subject matter jurisdiction. By MINUTE ORDER of the same date, the Court ORDERED that either party may file, by not later than February 17, 2006 a supplemental memorandum addressing the question of whether this Court may exercise jurisdiction over the subject matter of this case, which this Court indicated it would consider in the posture of a Motion to Dismiss.

The Court, having considered Defendant's Supplemental Memorandum of Points and Authorities in Support of Motion to Dismiss for Lack of Subject Matter Jurisdiction, and upon further consideration of Plaintiff's Supplemental Memorandum, if any, filed thereto, as well as the entire record of this case, it is this _____ day of _____, 2006 by the United States District Court for the District of Columbia, hereby:

1

ORDERED, that the above-captioned case be, and hereby is, dismissed for lack of subject matter jurisdiction.

                                                                  _____
                                                                  Honorable John D. Bates
                                                                   United States District Court

Copies to:

Richard D. Mirsky, Esq.
Offit Kurman Attorneys At Law
8171 Maple Lawn Blvd., Suite 200
Maple Lawn, MD 20759
email: rmirsky@offitkurman.com

*Counsel for Defendants*

Rawle Andrews Jr., Esq.
Andrews & Bowe, PLLP
1717 K street N.W., Suite 600
Washington, DC 20036
email: randrews@andrewsgroup.org

*Counsel for Plaintiff*