# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLUMBIA

CALVERT M. WILSON, an individual,     *

          *

     Plaintiff,                   *

          *

     v.                        *    Case No.:  1:06-CV-00069 (JDB)

          *

          *

HOME SAVERS, LLC, a foreign limited     *

liability company; 1905 2nd STREET, NE,     *

LLC, a foreign limited liability company;     *

LUTHER HECTOR, an individual; and     *    **PLAINTIFF'S SUPPLEMENTAL**

BARRETT WARE, an individual,          *    **MEMORANDUM RE: SUBJECT MATTER**

          *    **JURISDICTION AND IN FURTHER**

     Defendants.              *    **SUPPORT OF AMENDED MOTION FOR**

          *    **PRELIMINARY INJUNCTION**

          *

          *

          *

          *

          *

          *

*********************************** *

Rawle Andrews Jr. (D.C. Bar No. 436283)
ANDREWS & BOWE, PLLP
1717 K Street N.W., Suite 600
Washington, DC 20036
Office: (202) 349-3975
Fax: (410) 510-1034
Attorney for Plaintiff Calvert M. Wilson

Dated:  February 16, 2006

# TABLE OF CONTENTS

**Page**

Questions Presented ..........................................................................................................1

Summary Of Argument .....................................................................................................2

I.    The 2nd Street Property is Wilson's Principal Dwelling............................................5

    A.    Principal Residence Defined ........................................................................8

    B.    The Timeline.................................................................................................9

II.    The Home Savers' Advance to Wilson is void under Federal Bankruptcy Law ............10

    A.    Unauthorized Section 363 Asset Sales are Void under the Bankruptcy Code .........................................................................................11

    B.    Unauthorized Section 364 Advances are Void under the Bankruptcy Code .......11

III.    This Court has subject matter jurisdiction even in the absence of federal questions.......14

    A.    Elimination of the Defunct Entity Defendants Establishes Diversity Jurisdiction .................................................................................................14

    B.    Supplemental Jurisdiction Should Be Exercised; This Dispute Is Not Peculiarly Local .........................................................................................15

CONCLUSION...............................................................................................................17

# TABLE OF AUTHORITIES

**Page**

## CASES

*Bridges v. Kelly*,
977 F. Supp. 503 (D.D.C. 1997)................................................................................4

*Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*
467 U.S. 837................................................................................................8, 9

*CityFed Financial Corp. v. Office of Thrift Supervision*,
58 F.3d 738 (D.C. Cir. 1996) ................................................................................14

*Commissioner v. Tower*,
327 U.S. 280 (1946)................................................................................16

*Engine Manufacturers Association v. EPA*,
88 F.3d 1075 (D.C. Cir. 1996) ................................................................................7

*Fairley v. Turan-Foley Imports*,
65 F.3d 475 (5th Cir. 1995)................................................................................6, 10

*Flynn v. R.C. Tile*,
353 F.3d 953 (D.C. Cir. 2004) ................................................................................5

*Garofalo's Finer Foods, Inc. v. First National Bank of Harvey*,
186 B.R. 414 (N.D. Ill. 1995)................................................................................13

*In re Berheim*,
62 B.R. 739 (D.N.J. Bankr. 1986) ................................................................................13

*In re J.L. Graphics, Inc.*,
62 B.R. 750 (D.N.H. Bankr. 1986)................................................................................13

*In re Martin*,
91 F.3d 389 (3d Cir. 1996)................................................................................11

*In re Roth American*,
975 F.2d 949 (3d Cir. 1992)................................................................................11

*Miller v. McCalla, Raymer, Padrick, Nichols & Clark, LLC*,
214 F.3d 872 (7th Cir. 2000)................................................................................3, 10

# TABLE OF AUTHORITIES
(continued)

**Page**

*Nautilus Insurance Co. v. Winchester Homes, Inc.,*
15 F.3d 371 (4th Cir. 1998)..................................................................16

*Pauley v. BethEnergy Mines, Inc.,*
501 U.S. 680 (1991)..........................................................................9

*Perpetual Building v. District of Columbia,*
618 F. Supp. 603 (D.D.C. 1985)............................................................7

*Rosado v. Wyman,*
397 U.S. 397 (1970)........................................................................16

*Sherwin-Williams Co. v. Holmes County,*
343 F.3d 383 (5th Cir. 2003)..............................................................17

*United Mine Workers of Amer. v. Gibbs,*
383 U.S. 715 (1966).........................................................................16

## DOCKETED CASES

*Reese v. Hammer Financial Corp.,*
No. 99-C-0716...........................................................................12, 13

## FEDERAL STATUTES

11 U.S.C. § 101............................................................................7
11 U.S.C. § 350...........................................................................14
11 U.S.C. § 363..............................................................1, 2, 3, 4, 11, 13
11 U.S.C. § 364......................................................................passim
11 U.S.C. § 541............................................................................9
15 U.S.C. § 1639...........................................................................6
15 U.S.C. § 1635...........................................................................5
15 U.S.C. § 1601.........................................................................1, 6
15 U.S.C. § 1602.........................................................................2, 6
26 U.S.C. § 121.....................................................................2, 7, 8, 9
28 U.S.C. § 157..........................................................................14
28 U.S.C. § 1332..............................................................1, 4, 14, 16
28 U.S.C. § 1334............................................................... 2, 11, 16
28 U.S.C. § 1367.......................................................................1, 16
28 U.S.C. § 2201.............................................................1, 3, 10, 11

TABLE OF AUTHORITIES
(continued)

**Page**

**FEDERAL RULES & REGULATIONS**

12 C.F.R. § 226.1 ...................................................................................7
12 C.F.R. § 226.2 ...................................................................................7
12 C.F.R. § 226.23 ..............................................................................2, 6
26 C.F.R. § 1.121-1 ................................................................................8
Fed. R. Civ. P. 12 ..................................................................................1
Fed. R. Civ. P 65 ...................................................................................1
Fed. R. Evid. 801 ..............................................................................5, 15
DCt.LBR 5011-2 ..................................................................................14

**LOCAL STATUTES**

D.C. Code § 29-1301 ..........................................................................4, 14

Pursuant to this Court's February 9, 2006 Order, and Fed. R. Civ. P. 12(b) (1), and 65(a), Plaintiff Calvert M. Wilson ("Wilson" or "Plaintiff"), by undersigned counsel, respectfully submits this Supplemental Memorandum Regarding Subject Matter Jurisdiction and in Further Support of Amended Motion for Preliminary Injunction. Based on the existing record, this Court's inquiry into subject matter jurisdiction necessarily involves the resolution of three (3) issues:

## Questions Presented

1.    Whether, based on a totality of the circumstances, the 2nd Street Property constitutes Wilson's principal dwelling for purposes of federal question jurisdiction under the Truth in Lending Act ("TILA"), and as amended by the Home Ownership Equity Protection Act of 1994 ("HOEPA"), 15 U.S.C. §§ 1601 *et seq.*;

2.    Whether Defendants' "advance" to reinstate Wilson's mortgage with the ABN AMRO or alleged "sale" of the 2nd Street Property are *void* because both events violate the *mandatory* "Notice & Hearing" requirements of Sections 363(b) and 364(b) of the U.S. Bankruptcy Code, thus making an order of rescission appropriate under federal law, 11 U.S.C. §§ 363, 364, and 28 U.S.C. § 2201; and,

3.    Whether, in the absence of federal question jurisdiction, this Court has federal diversity jurisdiction because the business entity defendants were non-jural entities as of the date the Verified Complaint was filed (28 U.S.C. § 1332), or should exercise supplemental jurisdiction (28 U.S.C. § 1367) because Congress has declared that the federal questions raised above (Nos. 1-2) are better committed to the expertise of the federal courts than the state and District of Columbia courts.

<u>**Summary of Argument**</u>

**Issue No. 1:**  Because Defendants[1] allege their November 2004 dealings with Wilson

constituted a *sale* of the 2nd Street Property (*see* Defs. Opp. at p. 4, ¶13) and TILA, as amended,

does not define *principal* dwelling,[2] this Court must look to the existing record and outside the

four corners of TILA to determine whether the 2nd Street Property is Wilson's principal

residence.   A person's principal dwelling or residence is determined based on a person's intent

and duration, and not one snap shot in time.   There are at least two other applicable statutes that

can provide guidance to this Court:  (a) the U.S. Bankruptcy Code; and (b) the Internal Revenue

Code. Regardless of whether the parties' dealings constituted a secured loan or sale, the

agreement is void under U.S. Bankruptcy Code §§ 363(b), 364(b).  *See also* 28 U.S.C. § 1334 (e)

(exclusive jurisdiction in cases commenced *or* pending under Title 11).   Furthermore, assuming

there was a post-petition home sale between the parties' during November 2004 <u>and</u> because

Wilson has never purchased another house (*see* Exhibit No. "18"), there would be tax

consequences resulting from the parties' post-petition dealings.[3] For federal taxation purposes

(e.g., recognition of capital gains), sales of a *principal* residence for individuals with more than

one house are governed by a five-year window, beginning with the immediate period of

ownership and use of the premises, and ending on the date of the alleged sale.   Under the Internal

Revenue Code, the homeowner [4] need only "own and use" the house for *any* two (2) years out of

the five year period to qualify as a *principal* residence.   26 U.S.C. § 121 ("Exclusion of gain

from sale of principal residence"); 26 C.F.R. §226.23(a).   It is beyond dispute that Wilson: (a)

---

[1] The above-named Defendants sometimes are referred to collectively herein as the "Home Savers Group".
[2] It is undisputed that Wilson is a "person", and that the 2nd Street Property is a "dwelling" as those terms are defined at 15 U.S.C. §§ 1602 (d), (v), respectively.
[3]  Letter from Benjamin Franklin to Jean Baptiste Le Roy: "Our new Constitution is now established, and has an appearance that promises permanency; but *in this world nothing can be said to be certain, except death and taxes.*" (Nov. 13, 1789) (emphasis added).

files his taxes under the 2nd Street Property address (*see* Exhibit No. "17"); (b) continues to maintain a unit at the 2nd Street Property (i.e., actual use; and no abandonment of the domicile); and (c) lived full-time in the 2nd Street Property during CY 2000, CY 2001, and the bulk of CY 2002, i.e., an ownership period exceeding the two-year durational requirement for determining a taxpayer's[5] *principal* residence under federal law. Consequently, this Court can exercise subject matter jurisdiction over Plaintiff's Declaratory Judgment claims (Count I) and TILA claims (Count II) because Wilson's contention that the 2nd Street Property is his principal dwelling is entirely consistent with the overall body of federal statutory law; *Miller*;[6] and Defendants' own characterization of their post-petition relationship with Plaintiff as a "sale" of the 2nd Street Property. *See* Pltf's Supp. Brief at, *infra.* at 6-9.

   **Issue No. 2:** The parties dispute the legitimacy and characterization of their relationship in this proceeding. When an actual controversy exists, Section 2201(a) of the Declaratory Judgment Act authorizes this Court to declare the rights and other legal relations of any interested party seeking such declaration as a final judgment or decree, whether or not further relief is or could be sought by the requesting party. 28 U.S.C. § 2201; *accord* Verified Complaint, ¶¶ 1, 63, 71, 136, and 143-144. It is undisputed that: (a) Wilson was a Chapter 13 Debtor during November 2004; (b) the parties' relationship, regardless of ultimate characterization (i.e., "loan" or "sale") was a post-petition relationship; and (c) the 2nd Street Property was an asset of that Bankruptcy Estate that was subject to ABN AMRO's first mortgage lien. Under Bankruptcy Code §§ 363(b) and 364(b), a Chapter 13 Debtor cannot sell estate

---

[4] Like TILA, Section 7701(a) of the Federal Tax Code defines "person" broadly as an *individual*, a trust, estate, partnership, association, company or corporation". 26 U.S.C. § 7701(a) (1) (emphasis added).
[5] *Id.* at § 7701 (a) (14) ("The term 'taxpayer' means any *person* subject to any internal revenue tax) (emphasis added). Wilson was a taxpayer during the years he was a Debtor in Chapter 13 bankruptcy (Jan. 2001 – July 2005).
[6] *Miller v. McCalla, Raymer, Padrick, Nichols & Clark, LLC*, 214 F.3d 872, 874-875 (7th Cir. 2000*), reh'g and reh'g en banc denied*, (2000) (relevant time period for characterizing consumer obligation is when the *underlying* debt arose under both TILA and the FDCPA).

assets or incur secured debt absent <u>Notice</u> to creditors and other interested parties (e.g., the Chapter 13 Trustee), a <u>Hearing</u> *and* Bankruptcy <u>Court Approval</u> of the transaction. 11 U.S.C. §§ 363-364. Here, this Court can take judicial notice that neither Wilson nor the Home Savers Group ever submitted the post-petition advance for pre-approval by the Bankruptcy Court. Accordingly, the parties' relationship is void *ab initio* (regardless of its characterization as a "loan" or "sale"), and must be rescinded under federal law. *See* Pltf's Supp. Brief at 9-12, *infra*.

     **Issue No. 3:** To the extent the Court declines to exercise federal question jurisdiction, subject matter jurisdiction nonetheless exists because the "real parties in interest" are citizens of different states and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs. 28 U.S.C. § 1332. It is well-settled for purposes of diversity jurisdiction that citizenship is based on the date the Complaint is filed, i.e., **January 13, 2006**. As of the filing date, the business entities defendants, identified as "Home Savers, LLC" and "1905 2nd Street, NE, LLC", did not exist under the laws of the District of Columbia. Since Home Savers and the 1905 Company are *non-jural* entities, they do not have authority to conduct business in the District of Columbia, including the capacity to sue or be sued in this jurisdiction.[7] Because this is an equitable proceeding, Plaintiff also notes that 1905 Company's charter is still *revoked* according the D.C. Department of Consumer & Regulatory Affairs ("DCRA") as of **February 16, 2006**. *See* Exhibit No. "17", attached hereto. Of course, this once again takes Defendants at their "word" that, if ever truly dispatched, a mere *courier* could have satisfied all the requirements to reinstate a revoked company under D.C. law without a duly authorized 1905

---

[7] Curiously, the named business entity defendants answered and joined in the opposition to injunctive relief despite the fact all Defendants knew the business entity defendants were non-existent or administratively dissolved under the D.C. Limited Liability Company Act of 1994, D.C. Code Ann. §§ 29-1301 *et seq.*, before, as of and since the Verified Complaint was filed. These non-jural entities have no right to sue or defend suits in this jurisdiction and thus there responsive pleading should be stricken. *Bridges v. Kelly*, 977 F. Supp. 503, 506 n.4 (D.D.C. 1997).

Company representative present.[8]   Finally, defense counsel asserted during the February 9th Hearing that the defunct entities were *acting under the auspices* of defendant Barrett Ware. This is a judicial admission of *alter ego* status under F.R.E. 801(d) (2)); *see also Flynn v. R.C. Tile*, 353 F.3d 953, 958-960 (D.C. Cir. 2004). As such, there is complete diversity of citizenship between the "real parties in interest" because Plaintiff is a life-long District of Columbia resident, defendant Barrett Ware is a Hyattsville, Maryland resident, on information and belief, defendant Luther Hector[9] is a Maryland resident, and the amount in controversy unquestionably exceeds the sum of $75,000, exclusive of interest and costs.[10]

Alternatively, this Court can exercise supplemental jurisdiction over this matter because the resolution of this matter will necessarily involve mixed questions of federal and D.C. law. Moreover, the local courts are not authorized to make declaratory rulings concerning the Federal Bankruptcy Code or the Federal Tax Code.  It is likely that these federal statutes are outcome determinative on the rescission issue regardless of Wilson's common law and statutory claims under District of Columbia law.  *See* Pltf's Supp. Brief at 10-14, *infra*.

I.    **The 2nd Street Property is Wilson's *Principal* Dwelling**

1.    As this Court has already observed, TILA establishes a consumer's right of rescission for any loan transaction in which the borrower's principal dwelling is used as security for the obligation. 15 U.S.C. § 1635(a).  This rescission period runs until: (a) midnight on the third (3rd) business day following the loan closing; (b) the lender's *actual* delivery of the notice of the right

---

[8] Although it remains to be seen, the person now identifying himself as "Barrett Ware" presumably was in Court at the time of the courier's trip to the DCRA.
[9]  Unless defendant Luther Hector is going to save this Court and the parties the time and effort of confirming his Maryland residency, Plaintiff hereby renews his request for discovery in aid of subject matter jurisdiction.
[10]  Because it is a time honored principle of civil litigation that pleadings conform to the evidence, Plaintiff is prepared to make any technical amendments to the Verified Complaint to exclude the defunct entity defendants from the pleading to the extent ordered by the Court.

to rescind; or (c) the lender's delivery of *all* the material disclosures required under the statute, *whichever occurs last*. 12 C.F.R. § 226.23(a) (3) (emphasis added).

2. Although the Home Savers Group denies that the "advance" to Wilson was a loan,[11] they nonetheless concede that they did not make all the disclosures required under TILA, and as amended by HOEPA. *See, e.g.,* 15 U.S.C. §§ 1602(u), 1639(a). As such, this Court has inquired whether the litigants' dealings arise under or are related to Plaintiff's principal dwelling under TILA and HOEPA. *Fairley v. Turan-Foley Imports,* 65 F.3d 475 (5th Cir. 1995) (TILA is to be enforced strictly against the creditors and liberally in favor of consumers).[12]

3. Interestingly, TILA does not define the full term "principal dwelling". Section 1605 of the statute simply provides: "[t]he term 'dwelling' means a residential structure . . . which contains one to four family housing units . . . . 15 U.S.C. § 1605(v). It is undisputed that the 2nd Street Property is a residential structure/four family dwelling. *See, e.g.,* 2nd Street Property Appraisal, attached to the Verified Complaint as Exhibit No. "4". Contrary to Defendants' contentions, however, a principal dwelling is based on the totality of the circumstances; not one moment in time.

4. A top to bottom review of the statute, beginning with the preamble at Section 1601, confirms that TILA is not limited to private property rights. 15 U.S.C. § 1601(a). Thus, when examining the Act's descriptive term *principal* and the Congressional mandate to liberally construe TILA to achieve its public aims and purposes in favor of consumer protection, this Court must necessarily look outside the four corners of the statute to the existing record, as well

---

[11] *Contra* "Deed of Trust" (Verified Complaint, Exhibit No. "5"); *and* correspondence between Allstate Lending Services and Defendants regarding their Wilson Loan #-DC-04-292880004 (*see* Exhibit No. "18" attached hereto).
[12] During the February 9th Hearing, the Court inquired as to what monetary damages might exist under HOEPA, without regard to Plaintiff's other claims. Based solely on Defendants' contentions regarding an alleged November 2004, post-petition sale, Plaintiff's preliminary damages or offsets to the $30,000 advance would include Wilson's cross advances: all mortgage payments since that date ($14,400; on-going); all maintenance, property taxes,

as the use of the same or analogous phrases within the body of federal statutory law to define "principal dwelling". *See Engine Mfrs. Ass'n v. EPA*, 88 F.3d 1075, 1088 (D.C. Cir. 1996) (discussing the limits on literal statutory interpretation in the D.C. Circuit).

5.    A natural follow-up source for defining the term *principal* dwelling would be to examine TILA's implementing regulations, Regulation Z, as promulgated by the Federal Reserve Board. *See* 12 C.F.R. §§ 226.1 *et seq.* Like TILA, however, the Federal Reserve uses the term *principal* dwelling in Regulation Z without a full definition.    12 C.F.R. §§ 226.2(19) (Reg. Z defines "dwelling" in the same manner as provided in TILA).

6.    Given the Home Savers Group's argument that their post-petition dealings with Wilson constituted a sale and the fact that Defendants have already recorded, albeit improperly, a deed to the 2nd Street Property[13], this Court can look to any other applicable federal statutes or regulations to analyze the parties' post-petition dealings when there is a reasonable prospect that other legal consequences might flow from the parties' arrangement. *Engine Mfrs. Ass'n*, 88 F.3d at 1088.

7.    Here, there are at least two other, applicable federal statutes to guide this Court's determination:    (a) the U.S. Bankruptcy Code (11 U.S.C. §§ 101 *et seq.*; *see* Discussion at pp. 11-14, *infra.*); and (b) the Internal Revenue Code (26 U.S.C. § 121). Although the U.S. Bankruptcy Code and Rules are silent on the term (*see* 11 U.S.C. § 101; Fed. R. Bankr. P. 9001), this Court's review is nevertheless aided by a specific federal tax code provision and regulation,

---

insurance and utilities payments since that date ($30,000; on-going), simple interest on these advances; *and* the reasonable value of Wilson's "property management services" from November 2004 to present.

[13] Defendants have yet to apprise this Court on what basis they could record a deed to the 2nd Street Property without any notice to Wilson if they only advanced $30,000 toward the alleged $160,000 sales price for the house.    This premature recordation frustrates Wilson's interests in the 2nd Street Property regardless of ultimate characterization, and thus, constitutes irreparable harm. *Perpetual Bldg. v. District of Columbia*, 618 F. Supp. 603, 618 (D.D.C. 1985).

which define the analogous term *principal residence* and the legal requirements for asserting such a claim under federal law.

## A.    Principal Residence Defined

1.   Like TILA, the Internal Revenue Code and Regulations contemplate that taxpayers' may own and/or use more than one house, but they can have only one *principal* residence.  26 U.S.C. § 121(a); 26 C.F.R. § 1.121-1. The determination of *principal* residence is not, however, based on one moment in time.  There are intent and durational requirements that must be examined to resolve the issue.

2.   Under IRC § 121(a), Congress has declared that "Gross income shall *not* include gain from the sale  . . .  of a taxpayer's *principal residence* if, **during the 5-year period ending on the date of the sale** …, such property has been owned and used by the taxpayer as the taxpayer's principal residence for periods aggregating **2 years or more."** *Id.* (emphasis added).   The implementing regulations do not modify or alter this definition in the federal tax code. 26 C.F.R. § 1.121-1; *accord Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837 (1984) (limits on judicial review for agency interpretations of statutes and regulations). Moreover, neither Section 121 nor the implementing regulation has been vacated by any court.

3.   Thus, if legally declared a sale, the Internal Revenue Service ("IRS") will treat the parties' post-petition arrangement as the sale of a *principal* residence based on Wilson's ownership and use of the 2nd Street Property for over two (2) years within the requisite five (5) year period of time for making such claims. 26 U.S.C. § 121 (Exclusion of gain from sale of *principal residence*) (emphasis added).

4.   Federal courts review an agency's interpretation of a statute under the principles articulated in *Chevron.*   Under *Chevron's,* two-part analysis, the first step is determining whether

Congress has spoken directly to the "precise question at issue," because if so, "the court . . . must give effect to the unambiguous*y* expressed intent of Congress." 467 U.S. at 842-843.

5. If, on the other hand, the statute is silent or ambiguous on the specific issue, "the [second] question for the court [to resolve] is whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843; *see also Pauley v. BethEnergy Mines, Inc.*, 501 U.S. 680, 702 (1991) (*the [agency's] "interpretation [of a statute] need not be the best or most natural one by grammatical or other standards . . . . Rather the [agency's] view need be only reasonable to warrant deference"*) (emphasis added).

6. Because TILA, Regulation Z and the U.S. Bankruptcy Code are silent on the definition of "principle dwelling", this Court's determination that IRC § 121 provides a reasonable definition of the term ends the inquiry.

### B.    The Timeline

- **12/1996**: Wilson purchases the 2nd Street Property (owner occupied);

- **01/2000**:   Wilson files Chapter 13 Bankruptcy Petition (still owner occupied; 2nd Street Property becomes an asset of the Chapter 13 Bankruptcy Estate subject to ABN AMRO's first lien, *see* 11 U.S.C. § 541);

- **11/2002**: Wilson begins dual residency between the 2nd Street Property and his wife's house (*see* Exhibit No. "19", attached hereto); and,

- **11/2004**:   Defendants dupe Wilson into conducting business with them using a financing vehicle that takes a security interest in the 2nd Street Property.

1. For purposes of determining Plaintiff's *principal* residence under federal law, the five (5) year window runs from calendar year ("CY") 2000 to CY 2004. It is beyond dispute that Wilson owned and used the 2nd Street Property as his principal residence during CY 2000, CY 2001, and the bulk of CY 2002, i.e., *well over the minimum two (2) year durational requirement under federal law*. IRC § 121.

2.  Furthermore, Wilson identifies the 2nd Street Property as his principal dwelling on his federal tax return, and continues to maintain a unit and receive mail at the house (including ABN AMRO's foreclosure notice), which brought Wilson to Defendants' attention in the first place, i.e., active use and no intent to abandon.  *See* Exhibit Nos. "20" (Tax Return excerpts, attached hereto); and Exhibit No. "15" (Bankr. Docket Sheet attached to Pltf's 02/07/06 Reply Brief). This is entirely consistent with *Miller*, the record, and Plaintiff's definition of a *principal* dwelling under federal law.

3.  Defendants, having argued in favor of an alleged post-petition sale and subsequently recording a deed to the property, cannot be heard to assert that the 2nd Street Property is not Wilson's principal residence under federal law.

4.  As such, this Court can continue exercising federal jurisdiction simply by harmonizing Wilson's continued ownership and use of the 2nd Street Property with the federal tax code's definition of *principal residence,* thereby giving full meaning to TILA's laudable goals and objectives. *Fairley v. Turan-Foley Imports*, 65 F.3d 475 (5th Cir. 1995) (TILA is to be enforced strictly against the creditors and liberally in favor of consumers).

## II.    The Home Savers' Advance to Wilson is void under Federal Bankruptcy Law

1.  The parties dispute the legitimacy and characterization of their relationship in this proceeding. *See generally* Verified Complaint [Dkt. No. 1]; Defs. Answer [Dkt. No. 13]; Contested Injunction Proceedings [Dkt. Nos. 6, and 14].

2.  When an actual controversy exists, Section 2201(a) of the Declaratory Judgment Act authorizes this Court to declare the rights and other legal relations of any interested party seeking such declaration as a final judgment or decree, whether or not further relief is or could be sought

by the requesting party. 28 U.S.C. § 2201; *see also* Verified Complaint, ¶¶ 1, 63, 71, 136, and 143-144.

3. It is undisputed that: (a) Wilson was a Chapter 13 Debtor during November 2004; (b) the relationship with Defendants, regardless of ultimate characterization (i.e., "loan" or "sale") was a post-petition relationship; and (c) the 2nd Street Property was an asset of Wilson's Bankruptcy Estate subject to ABN AMRO's first mortgage lien.

4. Thus, absent Bankruptcy Court approval **before** the mortgage reinstatement advance was consummated, this Court can declare the parties' relationship void *ab initio*, and thus, rescission is appropriate under federal law. 11 U.S.C. §§ 363, 364; *see also* 28 U.S.C. §§ 1334(b), (e), and 2201.

## A.    Unauthorized Section 363 Asset Sales are Void under the Bankruptcy Code

1. Post-petition sales of estate assets outside the ordinary course are governed by Section 363 of the U.S. Bankruptcy Code. 11 U.S.C. § 363.

2. Bankruptcy Code § 363(b) prohibits a Chapter 13 Debtor from selling estate assets outside the ordinary course without <u>Notice</u> to creditors and other interested parties (e.g., the Chapter 13 Trustee and the Office of the U.S. Trustee), a <u>Hearing</u> *and* prior Bankruptcy <u>Court Approval</u> of the arrangement. *In re Martin*, 91 F.3d 389, 394-395 & n.2 (3d Cir. 1996) (construing 11 U.S.C. § 363(b) (1)). All three (3) statutory prerequisites are absent here.

## B.    Unauthorized Section 364 Secured Advances are Void under the Bankruptcy Code

1. Similarly, Bankruptcy Code § 364 specifies that a Debtor in Bankruptcy cannot obtain a secured loan absent prior Bankruptcy Court approval. *In re Roth American*, 975 F.2d 949 (3d Cir. 1992) (a contract providing for use or sale of bankruptcy estate property outside the regular course of business is unenforceable absent court approval); 11 U.S.C. § 364(b). Here

-11-

again, this Court can take judicial notice that neither Wilson nor the Home Savers Group ever submitted the "deal" for pre-approval by the Bankruptcy Court.

2.    The precise post-petition issues before this Court recently were decided by another District Court in *Reese v. Hammer Financial Corp.*, No. 99-C-0716, *slip op.* at pp. 1-7 (N.D. Ill. entered Nov. 30, 1999) (*see* Exhibit No. "21", attached hereto).[14]

3.    In *Reese*, a married couple filed Chapter 13 bankruptcy during 1997. Reese, *slip op.* at p.1. During the pendency of the bankruptcy case, the Debtors' furnace failed, thus requiring the purchase of a replacement. *Id.* Hammer Financial arranged for the Reeses' to a $35,000 loan from a third party source, which covered the replacement cost of the furnace and most of their Chapter 13 debts. *Id.* During November 1998, the Reeses attended a closing where the lender provided partial TILA disclosures and a notice of right to cancel with the date left blank. *Id.* During February 1999, the Reeses filed a four count complaint seeking to remedy alleged violations under TILA; the parties' failure of either party to obtain prior bankruptcy approval; and state law. *Id.*

4.    Like the instant case, Hammer Financial argued, in its motion to dismiss, that it had no duty to seek prior Bankruptcy Court approval because, in its view, the U.S. Bankruptcy Code required the borrowers, and not the lenders, to seek such approval, or alternatively, because it was a broker and not a lender it could not be charged with knowledge of any necessity to obtain bankruptcy court approval. *Id.* at pp. 4-5.

5.    In denying the defendant's Rule 12(b)(6) motion, the District Court in *Reese* stated:

> *Regardless of whose responsibility it was to notify the*
> *bankruptcy court here*, it is undisputed that the bankruptcy
> court did not authorize the transaction, and that such
> authorization was necessary. As such, the pertinent issue

---

[14] Plaintiff notes that *Reese* was a civil action, like the instant case, and not an adversary proceeding under the main bankruptcy case.

> here is the effect of a failure of the parties in post-petition financing arrangements to receive the requisite authority pursuant to § 364. Hammer Financial has submitted no authority for the proposition that rescission is inappropriate under the present circumstances. *There is authority, however, which supports the Reeses' contention that rescission is appropriate. See, e.g., Garofalo's Finer Foods, Inc. v. First Nat'l Bank of Harvey,* 186 B.R. 414, 430 (N.D. Ill. 1995); *In re J.L. Graphics, Inc.*, 62 B.R. 750, 756 (D.N.H. Bankr. 1986); *In re Berheim*, 62 B.R. 739, 743 (D.N.J. Bankr. 1986) . . . .

*Reese*, *slip op.* at   p. 5 (emphasis added).

6.  Here, the material facts either are indisputable or judicially noticeable. Wilson was a Chapter 13 Debtor during late 2004 when he was approached by Defendants' concerning a mortgage reinstatement advance to save the 2nd Street Property from foreclosure by ABN AMRO.  None of the litigants filed a Section 363 or 364 motion for Bankruptcy Court approval *before* the Home Savers advance was made to Wilson. Finally, the Bankruptcy Court never entered an order approving the Home Savers advance.

7.  Federal law plainly provides that court approval is required to validate the subject arrangement regardless of whether it was a secured loan or a sale. *See Reese*, slip op at p. 5.

8.  As such, the Home Savers' advance is void *ab initio* and should be rescinded in this forum rather than through a re-opening of the Chapter 13 case under Bankruptcy Code § 350(b) for at least two reasons.  11 U.S.C. § 350(b).

9.  First, while there is little doubt that the bankruptcy case could be re-opened to resolve the Bankruptcy Code §§ 363-364 issues, this could be accomplished only after: (a) Plaintiff pays the filing fees and costs to re-notice the Chapter 13 Trustee and all of Wilson's former creditors, a disbanded constituency which has already received notice of his discharge; (b) a show cause

hearing on the propriety of relief to the debtor under Bankruptcy § 350(b); and (c) a substantive hearing on the underlying question of rescission under Bankruptcy Code §§ 363-364.

10. Second, the granting of any prospective Section 350(b) motion still will not resolve this entire matter dispute because the Bankruptcy Court is not empowered to hear the remainder of Plaintiff's claims for which a jury trial has been requested. *Accord* 28 U.S.C. § 157(b); *and,* DCt.LBR 5011-2. S*ee also CityFed Financial Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995) (preliminary injunction can issue on strong showing on the merits even if there is relatively slight showing of irreparable harm).

## III.    This Court has subject matter jurisdiction even in the absence of federal questions

### A.    Elimination of the defunct Entity Defendants establishes Diversity Jurisdiction

1. To the extent the Court declines to exercise federal question jurisdiction, diversity jurisdiction nonetheless exists because the "real parties in interest" are citizens of different states and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs. 28 U.S.C. § 1332.

2. It is well-settled for purposes of diversity jurisdiction that citizenship is based on the date the Complaint is filed, i.e., **January 13, 2006**. As of the filing date, the business entities defendants identified as "Home Savers, LLC" and "1905 2^nd^ Street, NE, LLC" did not exist under the laws of the District of Columbia. Because Home Savers and the 1905 Company are *non-jural* entities they do not have authority to conduct business in the District of Columbia, including the capacity to sue or be sued in this jurisdiction.[15]

---

[15] Curiously, the named business entity defendants answered and joined in the opposition to injunctive relief despite the fact all Defendants knew the business entity defendants were non-existent or administratively dissolved under the D.C. Limited Liability Company Act of 1994, D.C. Code §§ 29-1301 *et seq.*, before, as of and since the Verified Complaint was filed.

3.  Because this is an equitable proceeding, Plaintiff notes that notwithstanding defense counsel's representations concerning 1905 Company's jural status during the February 9th Hearing, *after seeking the Court's indulgence to confer with Defendants*, 1905 Company's charter is *still* revoked according the DCRA as of this filing. *See* Exhibit No. "17", attached hereto. Of course, this again takes Defendants at their "word" that, if ever truly dispatched, a mere courier could have satisfied all requirements to reinstate a revoked company under D.C. law outside the presence of a duly authorized 1905 Company representative.[16]

4.  Moreover, defense counsel also asserted during the February 9th Hearing that the defunct entities were *acting under the auspices* of defendant Barrett Ware. This is a judicial admission of "alter ego" status under F.R.E. 801(d) (2), which is binding on Defendants for substantive and procedural purposes in this action.

5.  As such, there is complete diversity of citizenship between the "real parties in interest" because Plaintiff is a life-long District of Columbia resident, defendant Barrett Ware is a Hyattsville, Maryland resident, on information and belief, defendant Luther Hector[17] is a Maryland resident as well, and the amount in controversy unquestionably exceeds the sum of $75,000, exclusive of interest and costs.[18]

B.  **Supplemental Jurisdiction should be exercised; this dispute is not peculiarly local**

1.  Alternatively, this Court can exercise supplemental over this matter because the resolution of this matter necessarily involves mixed questions of federal and D.C. law, including declaratory rulings construing certain aspects of the Federal Bankruptcy Code and the Federal

---

[16] Although it remains to be seen, the person now identifying himself as "Barrett Ware" presumably was in Court at the time of the courier's trip to DCRA.
[17]   Unless defendant Luther Hector is going to save this Court and the parties the time and effort of confirming his Maryland residency, Plaintiff hereby renews his request for discovery in aid of subject matter jurisdiction.
[18] Although it is a time honored principle of civil litigation that the pleadings conform to the evidence, Plaintiff is prepared to make any technical amendments to the Verified Complaint to exclude the defunct entity defendants from the pleading to the extent ordered by the Court.

Tax Code as they relate to this Court's jurisdiction and Wilson's rescission rights, which are outside the purview of the D.C. courts.[19]

2.   Federal courts are empowered to hear and decide state law claims when: (a) diversity jurisdiction exists pursuant to 28 U.S.C. § 1332 (*see* discussion at pp. 14-15, *supra.*); or (b) the state law claims are closely related to federal question claims under 28 U.S.C. § 1367.

3.   Under Section 1367, the Court's supplemental jurisdiction arises when the plaintiff's federal and local law claims "derive from a common nucleus of operative fact" that would ordinarily be tried in a single proceeding. *United Mine Workers of Amer. v. Gibbs*, 383 U.S. 715, 725 (1966).  Furthermore, once pendent jurisdiction is established, jurisdiction over the primary claim at all stages is not required to resolve the pendent claim.  *Rosado v. Wyman*, 397 U.S. 397, 405 (1970).

4.   In deciding whether to issue a declaratory judgment, the federal courts generally recognize that the following are major considerations: (a) the speedy, inexpensive resolution of the dispute; (b) principles of federalism, comity, and efficiency; and (c) the avoidance of procedural fencing between federal and state courts.  *See, e.g., Nautilus Insurance Co. v. Winchester Homes, Inc.*, 15 F.3d 371 (4th Cir. 1998).

5.   Here, this Court should declare the rights and interests of the parties because: (a) there is no pending state court in which all the matters can be decided, particularly since the D.C. courts are not authorized to interpret the U.S. Bankruptcy Code or the Internal Revenue Code; (b) the action did not result from a rush to the courthouse in anticipation of a lawsuit that would be filed by Defendants; (c) there was no forum shopping because this action was noticed as a Related Case to Civil Action No. 05-CV-0108, and Defendants did not expressly object to that

---

[19] *See Commissioner v. Tower*, 327 U.S. 280 (1946) (state courts do not have jurisdiction to review the federal tax code); 28 U.S.C. § 1334.

designation in their Answer; (d) there is no inequity in allowing this matter to proceed in federal court; and (e) Defendants have appeared in this Court with counsel of their choosing and filed a responsive pleading and other briefs so they will not be inconvenienced by proceeding in this Court. *Accord Sherwin-Williams Co. v. Holmes County*, 343 F.3d 383, 392-401 (5th Cir. 2003).

6. The claims asserted in the Verified Complaint arise under or are related to the characterization, terms and conditions of the Home Savers advance regardless of whether Defendants acted as a post-petition lender to Wilson or a post-petition buyer from Plaintiff that fraudulently procured a deed and then "jumped to gun" on recordation before satisfying all conditions precedent to any alleged sale, not the least of which was prior notice of any title recordation to Wilson, and third party permission to assume any mortgage, property insurance and related obligations on the property.

## CONCLUSION

For the foregoing reasons, Plaintiff Calvert M. Wilson respectfully requests that this Court grant his motion for preliminary injunction pending final review of this dispute on the merits, together with such other relief favoring Wilson as this Court deems proper under the circumstances.

Respectfully submitted,

By: _/s/ Rawle Andrews Jr._
Rawle Andrews Jr. (DC 436283)
ANDREWS & BOWE, PLLP
1717 K Street N.W., Suite 600
Washington, DC 20036
Office: (202) 349-3975
Fax: (410) 510-1034
Attorney for Plaintiff

Dated: February 16, 2006

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this the 16th day of February, 2006, I caused a copy of the foregoing "**PLAINTIFF'S SUPPLEMENTAL MEMORANDUM RE: SUBJECT MATTER JURISDICTION AND IN FURTHER SUPPORT OF AMENDED MOTION FOR PRELIMINARY INJUNCTION**" that was filed electronically with the U.S. District Court and served on counsel for Defendants, an ECF compliant attorney, on this date in the above captioned matter as follows:

Richard D. Mirsky, Esq.
8171 Maple Lawn Blvd., Suite 200
Maple Lawn, Maryland 20759
Counsel for Defendants
rmirsky@offitkurman.com

/s/ *Rawle Andrews Jr.*_____
Rawle Andrews Jr., Esq.
Counsel for Plaintiff

-18-

EXHIBIT "17"

DCRA: Registered Organization Search                                              Page 1

## Online Organization Registration
**Search Registered Organizations**

Organization Details - Step  1  2  **3**

To view another organization from the search, select the **Return to Search Results** button below. You may also **print** the organization details, or start a **new search**. Use the **Back to Main Page button** to continue the registration process.

| Organization | | Registered Agent |
|---|---|---|
| **Organization Name:** | 1905 2ND ST NE, LLC | Barrett Ware |
| **State:** | DC | 1717 K St., NW, Ste. #600 |
| **Status:** | REVOKED | Washington, DC 20036 |
| **Initial Date of Registration:** | 11/16/2004 | |
| **File No.:** | L21157 | |
| **Organization Type:** | DOMESTIC LIMITED LIABILITY COMPANY | |

<<< Back to Main Page    < Return To Search Results    Print Results    New Search

For more information, contact the Corporation Division **(202) 442-4400** or email us.

| | | |
|---|---|---|
| Government of the District of Columbia Citywide Call Center : (202) 727-1000 TTY/TDD Directory | Telephone Directory by Topic &#124; Agencies &#124; DC Council &#124; Search &#124; Elected Officials Feedback &#124; Translation &#124; Accessibility &#124; Privacy & Security &#124; Terms & Conditions | John A. Wilson Building 1350 Pennsylvania Avenue, NW Washington, DC 20004 |

http://mblr.dc.gov/corp/lookup/status.asp?id=217339                      02/16/2006 04:10:51 PM

Page: 1 Document Name: untitled

*** NCIC QW MSG   #72098                    ***    PRESS CLEAR FOR RESPONSE

OPERATOR'S PERMIT RECORD                    PERMIT: 587193660
NAME  : WARE, BARRETT L                     DOB: 04/18/70  MALE   SSN: XXXXXXXXXXX
                                   HYATTSVILL
EXPIRES: 12/24/95  TYPE: REGULAR

Date: 2/16/ 6 Time: 03:01:36 PM

EXHIBIT "18"

# ANDREWS & BOWE, PLLP

*ATTORNEYS AND COUNSELORS AT LAW*

CHATTANOOGA, TN                WASHINGTON DC

February 10, 2006

**VIA E-MAIL ONLY**
Richard D. Mirsky
8171 Maple Lawn Blvd., Suite 200
Maple Lawn, Maryland 20759
rmirsky@offitkurman.com

**RE: Wilson v. Home Savers et al., Case No. 06-CV-0069 (JDB)**

Dear Rich:

## [FRE 408 Material Redacted]

On a related note, after our conversation this morning, I took the liberty of reexamining the documents that the Home Savers Group produced in response to the Court's Order and Federal Subpoena in Civil Action No. 05-CV-0108 (the "AMRO Litigation"), and attempted to reconcile these materials with your numerous representations, verbally and in open court, that the $30,535.14 advance was not a loan.

Based on a review of your clients' document production, it appears that the Defendants' representations to the Court concerning the nature of the advance and the reliance of the deed of trust either were inaccurate or overstated. *See* Bates Nos. HS 00036 – HS 00037. We have cross-referenced these two documents with the third party document production from Allstate Lending, and can now confirm that these documents actually were "signed" on Home Savers Letterhead, and either "faxed" or "mailed" to Allstate Lending Services by your clients. *See* ALS 0030 – ALS 0031. This plainly supports our view that the Home Savers Group intended that Mr. Wilson and others to believe the advance was a loan (Loan #-DC-04-292880004), and that Home Savers considers itself to be a "creditor".

Rich, I am forwarding these documents to you as a professional courtesy to avoid potential difficulties down the line if your clients' insist that you continue to pursue the non-loan argument in the wake of their own documents to the contrary. It may well be that you were unaware of these materials at the retention stage, but certainly request that you take due notice of the obvious now and act in the best interests of all concerned.

## [FRE 408 Material Redacted]

Very truly yours,

/s/ *Rawle Andrews Jr.*
Rawle Andrews Jr.
Counsel for Plaintiff

Enclosures

# HOME SAVERS PLUS, LLC

**1717 K ST NW, SUITE # 600**
**WASHINGTON, DC 20036**
**BWARE@EROLS.COM**
**(301) 254-7786(CELL);(202) 726 7283(o); (202) 726-8870(fax)**

February 14, 2005

Billie Haston
Allstate Lending Services

RE: Calvert Wilson

Dear Ms. Haston:

We are in receipt of your fax dated 2/9/2005. Please review the following information below as answers to your questions.

As you may be aware, Mr. Wilson was in foreclosure and we advanced certain monies to the foreclosure trustee to reinstate his loan and stop his foreclosure. The terms of our agreement with Mr. Wilson calls for a repayment of amounts owed at a refinance settlement to take place within 60 days. No periodic payments are called for; therefore there is no payment history.

Our calculations as to the minimum amount needed for Mr. Wilson's refinance were to serve as a reference only. We needed to make sure that his refinance amount would be sufficient to pay the first deed of trust, to pay us and to pay any settlement costs. Mr. Wilson owes $122,656.07. That amount doesn't change. As long as we are paid off as a creditor, whatever else he chooses to pay is of no concern to us.

Attached is a copy of our payoff statement, maybe this will help.

There is an indemnity Deed of Trust that is recorded in the land records of The District of Columbia. I'll have our abstractor provide me with the instrument number and filing date. I do not have that information back as of yet.

Hope this helps. If you have any further questions, please call me. Regards.

Barrett Ware

Portfolio Manager

HS00036

# 1905 2ND ST NE, LLC
## 1717 K ST NW, SUITE 600
## WASHINGTON, DC 20036

PAYOFF STATEMENT

February 10, 2005                                    Loan #-DC-04-2928800004

This statement is good through 03/10/2005.

Requested By:          Allstate Lending          Debtor: Calvert Wilson
                                                  1118 47th Pl. NE
                                                  Washington, DC 20019

Property:              1905 2nd St. NE
                       Washington, DC 20002

## PAYOFF DETAILS

| | |
|---|---|
| Principal Balance: | $122656.07 |
| Interest: | $0.00 |
| Late Fees: | $0.00 |
| Service Fees: | $0.00 |
| Advances: | $0.00 |
| Escrow: | $0.00 |
| Misc.: | $0.00 |
| At will discount: | $0.00 |

Total Amount:          $122656.07

The above figures are subject to final verification upon receipt of the payoff remittance by 1905 2ND St. NE, LLC (1905). Except where prohibited, 1905 reserves the right to adjust the above figures and refuse any funds that are insufficient to pay the Total Amount secured by the IDOT for any reason including but not limited to error in calculation of the Total Amount secured by the IDOT, previously dishonored checks or money orders, stop payment of checks or ACH payment or additional disbursements made by 1905 between the date of this payoff statement and the receipt of funds. If 1905 determines that the payoff remittance is insufficient to pay the Total Amount secured by the IDOT, 1905, may at 1905's discretion, either (i) withdraw the required funds from the borrower's escrow account, if any, to complete such payoff, or (ii) return the remittance with a new quotation or (iii) post funds and issue a new quotation of the remaining balance.

HS00037

# EXHIBIT "19"

## Property Detail

**Address:** 1118 47TH PL NE
**SSL:** 5155 0161

| Record Details | | | |
|---|---|---|---|
| Neighborhood: | DEANWOOD | Sub-Neighborhood: | B |
| Use Code: | 13 - | Class 3 Exception: | No |
| Tax Type: | E0 - | Tax Class: | 001 - |
| Homestead Status: | ** Not receiving the Homestead Deduction | | |
| Assessor: | KIM JACOBS MATHIS | | |
| Gross Building Area: | | Ward: | 7 |
| Land Area: | 5,390 | Triennial Group: | 3 |

| Owner and Sales Information | |
|---|---|
| Owner Name: | ZERETIA L WILSON |
| Mailing Address: | 1118 47TH PL NE; WASHINGTON DC20019-3904 |
| Sale Price: | $123,000 |
| Sale Date: | 11/06/2002 |
| Instrument No.: | 129047 |

| Tax Year 2006 Preliminary Assessment Roll | Current Value | Proposed New Value (2006) |
|---|---|---|
| Land: | $43,980 | $54,390 |
| Improvements: | $111,720 | $135,100 |
| Total Value: | $155,700 | $189,490 |
| Taxable Assessment: * | $155,700 | $189,490 |

\* Taxable Assessment after Tax Assessment Credit and after $38,000 Homestead Credit, if applicable. (Click here for more information).

\*\* If you believe you should be receiving tax relief through the Homestead deduction program and if you are domiciled in the District and this property is your principal place of residence, you can access the link below, complete the form, and return it per the instructions. For additional information regarding the Homestead program, call (202)727-4TAX. Click here to download the Homestead Deduction and Senior Citizen Tax Relief application \*

**View Tax Information** | **View Property Features** | **View Payments**

Government of the District of Columbia Citywide Call Center : (202) 727-1000 TTY/TDD Directory

Telephone Directory by Topic | Agencies | DC Council | Search | Elected Officials
Feedback | Translation | Accessibility | Privacy & Security | Terms & Conditions

John A. Wilson Building 1350 Pennsylvania Avenue, NW Washington, DC 20004

https://www.taxpayerservicecenter.com/RP_Detail.jsp?ssl=5155%20%20%200161    02/16/2006 12:16:35 PM

# EXHIBIT "20"

Department of the Treasury -- Internal Revenue Service

Form **1040**  **U.S. Individual Income Tax Return**  **2004**  (99)  IRS Use Only -- Do not write or staple in this space.

For the year Jan. 1–Dec. 31, 2004, or other tax year beginning _____ , 2004, ending _____ , 20 ____    OMB No. 1545-0074

Use the IRS label. Other-wise, please print or type.

**Your social security number**
XXXXXXXXXXXX

CALVERT M WILSON                    CW 1644

**Spouse's social security no.**

1905 2ND STREET NE APT 3
WASHINGTON DC 20002

▲ You **must** enter your SSN(s) above.

**Presidential Election Campaign** ▶ Note. Checking "Yes" will not change your tax or reduce your refund.
Do you, or your spouse if filing a joint return, want $3 to go to this fund? ............ ▶

| | You | | Spouse | |
|---|---|---|---|---|
| | [X] Yes | No | Yes | No |

**Filing Status**

Check only one box.

1 ☐ Single
2 ☐ Married filing jointly (even if only one had income)
3 ☐ Married filing separately. Enter spouse's SSN above and full name here. ▶
4 [X] Head of household (with qualifying person). (See inst.) If qualifying person is a child but not your dependent, enter child's name here. ▶
5 ☐ Qualifying widow(er) with dependent child (see inst.)

**Exemptions**

6a [X] Yourself. If someone can claim you as a dependent, **do not** check box 6a ............
b ☐ Spouse

Boxes checked on 6a and 6b: **1**

c **Dependents:** If more than four dependents, see inst.

| (1) First name     Last name | (2) Dependent's social security number | (3) Dependent's relationship to you | (4) ✓ if qualifying child for child tax credit (see inst.) |
|---|---|---|---|
| XXXXXXXXXXXX XXXXXXXXXXXXX | XXXXXXXXXX | Child | [X] |
| XXXXXXXXXXXX XXXXXXXXXXXXX | XXXXXXXXXX | Child | [X] |

No. of children on 6c who:
• lived with you  **2**
• did not live with you due to divorce or separation (see inst.)
Dependents on 6c not entered above

d Total number of exemptions claimed .............

Add numbers on lines above ▶ **3**

**Income**

Attach Forms W-2 here. Also attach Form(s) W-2G and 1099-R if tax was withheld.

If you did not get a W-2, see instructions.

Enclose, but do not attach, any payment. Also, please use Form 1040-V.

| | | | |
|---|---|---|---|
| 7 | Wages, salaries, tips, etc. Attach Form(s) W-2 | **7** | 44,887 |
| 8a | **Taxable** interest. Attach Schedule B if required ...................... | **8a** | |
| b | **Tax-exempt** interest. **Do not** include on line 8a ........ | 8b | |
| 9a | Ordinary dividends. Attach Schedule B if required ...................... | **9a** | |
| b | Qualified dividends (see inst.) ................ | 9b | |
| 10 | Taxable refunds, credits, or offsets of state and local income taxes (see instructions) ... | **10** | 388 |
| 11 | Alimony received ........................................ | **11** | |
| 12 | Business income or (loss). Attach Schedule C or C-EZ ............... | **12** | |
| 13 | Capital gain or (loss). Attach Schedule D if required. If not required, check here ▶ ☐ | **13** | |
| 14 | Other gains or (losses). Attach Form 4797 ............... | **14** | |
| 15a | IRA distributions | 15a | b Taxable amount .... | **15b** | |
| 16a | Pensions and annuities | 16a | b Taxable amount .... | **16b** | |
| 17 | Rental real estate, royalties, partnerships, S corporations, trusts, etc. Attach Schedule E ... | **17** | 6,240 |
| 18 | Farm income or (loss). Attach Schedule F ...................... | **18** | |
| 19 | Unemployment compensation ................................ | **19** | |
| 20a | Social security benefits | 20a | b Taxable amount (see inst.) | **20b** | |
| 21 | Other income. .......................................... | **21** | |
| 22 | Add the amounts in the far right column for lines 7 through 21. This is your **total income** ▶ | **22** | 51,515 |

**Adjusted Gross Income**

| | | | |
|---|---|---|---|
| 23 | Educator expenses (see instructions) ................. | 23 | |
| 24 | Certain business expenses of reservists, performing artists, and fee-basis government officials. Attach Form 2106/2106-EZ | 24 | |
| 25 | IRA deduction (see instructions) ................. | 25 | 2,002 |
| 26 | Student loan interest deduction (see instructions) ....... | 26 | |
| 27 | Tuition and fees deduction (see instructions) ........... | 27 | |
| 28 | Health savings account deduction. Attach Form 8889 .... | 28 | |
| 29 | Moving expenses. Attach Form 3903 ................. | 29 | |
| 30 | One-half of self-employment tax. Attach Schedule SE ... | 30 | |
| 31 | Self-employed health insurance deduction (see instructions) | 31 | |
| 32 | Self-employed SEP, SIMPLE, and qualified plans ....... | 32 | |
| 33 | Penalty on early withdrawal of savings ................. | 33 | |
| 34a | Alimony paid b Recipient's SSN ▶ | 34a | |

CONFIDENTIAL

| | | | |
|---|---|---|---|
| 35 | Add lines 23 through 34a .............. | **35** | 2,002 |
| 36 | Subtract line 35 from line 22. This is your **adjusted gross income** ............ ▶ | **36** | 49,513 |

**For Disclosure, Privacy Act, and Paperwork Reduction Act Notice, see instructions.**    Preparers Edition    Form **1040** (2004)

JVA   4   104012    TWF 8657    Copyright Forms (Software Only) – 2004 TW

EXHIBIT "21"

United States District Court, N.D. Illinois, Eastern Division.

Isaac REESE and Gennell Reese, Plaintiffs,

v.

HAMMER FINANCIAL CORPORATION; Joseph F. Hammer III; One Stop Mortgage, Inc.;

Aames Funding Corporation, d/b/a Aames Home Loan, Defendants.

**No. 99 C 0716.**

Nov. 30, 1999.

*MEMORANDUM OPINION AND ORDER*

<u>MAROVICH</u>, J.

**\*1** On February 4, 1999, Plaintiffs Isaac and Gennell Reese ("the Reeses") filed a Complaint in this Court against Defendants Hammer Financial Corporation ("Hammer Financial"), Joseph Hammer III ("Joseph Hammer"), One Stop Mortgage, Inc., and Aames Funding Corporation, alleging: (1) violations of the Truth in Lending Act ("TILA"), <u>15 U.S.C. § 1601</u>, *et seq.* (Count I), (2) violation of the United States Bankruptcy Code (Count II), (3) violation of the Illinois Consumer Fraud Act ("ICFA"), <u>815 ILCS 505/2</u> (Count III) and (4) breach of fiduciary duty pursuant to Illinois law (Count IV). Hammer Financial and Joseph Hammer presently move to dismiss the Reeses' Complaint pursuant to <u>Rule 12(b)(6) of the Federal Rules of Civil Procedure</u> and strike the Reeses' claim for attorney's fees contained in Count II pursuant to <u>Rule 12(f)</u>. For the reasons stated below, the Court denies the motion to dismiss and grants the motion to strike the attorney's fees request contained in Count II.

*BACKGROUND*

The Reeses, a married couple, filed for Chapter 13 Bankruptcy in 1997. While the bankruptcy was pending, the Reeses' furnace failed, requiring the purchase of a replacement. The Reeses used Hammer Financial to arrange a loan to pay for the furnace. Hammer Financial arranged a $35,000 loan from One Stop, which not only covered the cost of the furnace, but also payed off most, but not all, of the Chapter 13 debt. The Reeses allege that Hammer Financial and Joseph Hammer "failed to disclose ... that the interest rate on the loan was substantially higher than any interest that would be payable pursuant to the Chapter 13 plan." (Compl.¶ 15.)

1

On November 19, 1998, the Reeses attended a closing, signed a note and mortgage and received, among other documents, a TILA disclosure statement and a notice of right to cancel the loan transaction. The Reeses allege that the notice of right to cancel had the dates left blank and that, as a result, they did not receive effective notice of their right to cancel. Additionally, the Reeses allege that none of the parties sought approval of this loan transaction with the Bankruptcy Court. On December 28, 1998, the Reeses, through their counsel, gave notice of recission of the loan transaction. Defendants have failed and refused to honor the Reeses' recission of the loan.

On February 4, 1999, the Reeses filed their four-count Complaint in this Court, asserting four grounds for recission of the note and mortgage they executed on November 19, 1998. Particularly, the Complaint asserts recission is appropriate because: (1) they received effective notice of the Reeses' right to rescind in violation of TILA (Count I), (2) no party secured approval from the Bankruptcy Court (Count II), (3) Defendants' acts and practices violated the Illinois Consumer Fraud Act (Count III), and (4) Defendants violated their fiduciary duty to the Reeses (Count IV). Hammer Financial and Joseph Hammer presently move to dismiss the Reeses' Complaint and to strike the Reeses' request for attorney's fees under Count II.

### MOTION TO DISMISS STANDARDS

**\*2** In reviewing a motion to dismiss pursuant to 12(b)(6) of the Federal Rules of Civil Procedure, the Court examines the sufficiency of the complaint rather than the merits of the lawsuit. *See Triad Assoc. v. Chicago Hous. Auth., 892 F.2d 583, 586 (7th Cir.1989)*. "[T]he issue is not whether the plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence that supports the claims." *Scheurer v. Rhodes, 416 U.S. 232, 236 (1974)*. A motion to dismiss will be granted only if the Court finds that the plaintiff can put forth no set facts that would entitled her to relief. *See Conley v. Gibson, 355 U.S. 41, 45-46 (1957)*; *Venture Assoc. Corp. v. Zenith Data Sys. Corp., 987 F.2d 429, 432 (7th Cir.1993)*. On a motion to dismiss the Court draws all inferences and resolves all ambiguities in the plaintiff's favor and assumes that all well pleaded facts are true. *See Dimmig v. Wahl, 983 F.2d 86, 87 (7th Cir.1993)*.

### DISCUSSION

As noted above, the Reeses' Complaint raises four grounds for rescission of the note and mortgage they executed on November 19, 1998. The motion to dismiss filed by Joseph Hammer and Hammer Financial attacks each of these grounds which comprise separate counts of the Reeses' Complaint. The Court considers the arguments contained in the motion to dismiss in turn.

I. *Truth in Lending Claim (Count I)*

TILA establishes a right of recission for any loan transaction in which the borrower's principal dwelling is used as security. *See* 15 U.S.C. § 1635(a). The recission period extends until "midnight of the third business day following consummation [of the loan],

delivery of the notice [of the right to rescind], or delivery of all material disclosures, whichever occurs last." 12 C.F.R. § 226.23(a)(3). Under TILA regulations, a creditor is required to "deliver two copies of the notice of the right to rescind to each consumer entitled to rescind." 12 C.F.R. § 226.23(b)(1). The notice "shall be on a separate document that identifies the transaction" and shall "clearly and conspicuously" disclose the consumer's right to rescind the transaction. *Id.* If the required notice or material disclosures are not delivered, the right to rescind shall expire three years after consummation. *See* 12 C.F.R. § 226.23(a)(3).

Count I of the Reeses' Complaint contends that the Reeses are entitled to the recission of the loan transaction and refund of broker's fees paid to Hammer Financial because the notice of the right to rescind they received contained a technical violation of the TILA regulations discussed above. In particular, the Reeses allege that the notice of right to rescind they received "had the dates left blank," [FN1] thereby failing to give effective notice. (Compl.¶ 20.)

>FN1. The Reeses attached a copy of this unsigned and undated notice of right to cancel to their Complaint. (Compl., Ex. F.)

In the motion to dismiss, Hammer Financial asserts that, contrary to the Reeses' allegations, the notice of right to cancel given to and signed by the Reeses disclosed the date of the transaction as well as the date of recission. In support of this contention, a copy of a "Notice of Right to Cancel" signed by the Reeses which contains the transaction date and the cancellation date has been attached to the motion to dismiss. (*See* Defs. Mot., Ex. A.) Hammer Financial contends that this document demonstrates that the unsigned and undated notice of right to rescind which the Reeses attached to their Complaint was not the final notice given to them and that, in fact, they received a properly signed and dated notice.

**\*3** In reviewing a Rule 12(b)(6) motion to dismiss for failure to state a claim, the Court is limited to the allegations contained in the pleadings themselves. Nevertheless, documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his or her claim. *See Levenstein v. Salafsky, 164 F.3d 345, 347 (7th Cir.1998)*. "[T]his is a narrow exception aimed at cases interpreting, for example, a contract." *Id.* Hammer Financial asserts that the recission notice attached to its motion fits into the narrow exception discussed in *Levenstein* in that the document is central to the Reeses' claim and referred to in their Complaint. (*See* Def. Mot. at 2 n. 2.)

This Court disagrees that it is appropriate to consider the document attached to the motion to dismiss. Indeed, the Reeses have attached to their Complaint the document "central" to their improper notice claim--namely, an unsigned Notice of Right to Cancel

which they allege violates TILA's cancellation notice requirements. Although the signed Notice of Right to Cancel attached to the motion to dismiss may be "central" to Hammer Financial's defense of the Reeses' allegations, it does not meet the narrow exception of documents considered part of the pleadings. Instead, it merely raises questions regarding the factual circumstances surrounding the delivery of the Notice of Right to Cancel to the Reeses--questions which would be inappropriate for this Court to pursue in this motion to dismiss.[FN2]

> FN2. Although the Court may, in its discretion, consider materials beyond the pleadings if it converts a Rule 12(b)(6) motion to one for summary judgment, the Court declines to do so in this case and, therefore, has not relied on the recission notice attached to the motion to dismiss.

The Court additionally rejects Hammer Financial's two other arguments attacking the Reeses' TILA claim. First, Hammer Financial contends that the Reeses' TILA claim does not state a cause of action because they have not alleged that they are prepared to or have offered to return the monies given to them by One Stop. Hammer Financial has presented no apposite authority for the proposition that the Reeses must do so, and, indeed, the contention appears to contradict the language of § 1635(b) which provides that "[u]pon the performance of the creditor's obligations [to deliver any property to the obligor upon rescission], the obligor shall tender the property to the creditor [.]" [FN3]

> FN3. It additionally bears noting that the letter requesting recission sent to Defendants by the Reeses' counsel clearly indicates that the Reeses were prepared to return funds upon acknowledgment of the recission request. (*See* Compl., Ex. H.)

Finally, Hammer Financial asserts that the Reeses have failed to state a cause of action for violation of TILA against them because they entered into the loan with One Stop and that Hammer Financial merely engaged in a broker agreement. The Court, however, agrees with the Reeses that their request for recission of the mortgage transaction includes the request to void the broker agreement, *i.e .*, by exercising their right to rescind, they are not liable for any finance charge, including borrower-paid mortgage broker fees. (*See* Pls. Resp. at 8.)

In sum, the Court denies the motion to dismiss the Reeses' TILA claim.

II. *Failure to Procure Court Approval (Count II)*

4

Pursuant to section 364 of the Bankruptcy Code, which governs post-petition financing agreements, a debtor cannot incur post-petition debt without authorization from the bankruptcy court following notice and a hearing. *See* 11 U.S.C. § 364. In Count II of their Complaint, the Reeses allege that rescission is proper because no party to the transaction sought court authorization and, consequently, the transaction is unlawful and ineffective. (Compl.¶¶ 32-33.)

**\*4** In the motion to dismiss, Hammer Financial argues that it did not have the duty, as mortgage broker, to secure court approval prior to the execution of the loan transaction. Hammer Financial asserts that § 364 places the requirement of receiving authorization of post-petition credit on the Reeses, not the lender. Moreover, Hammer Financial asserts that it was not a "lender," but the mortgage broker and, as such, cannot be charged with knowledge of any necessity of bankruptcy court approval.

Regardless of whose responsibility it was to notify the bankruptcy court here, it is undisputed that the bankruptcy court did not authorize the transaction, and that such authorization was necessary. As such, the pertinent issue here is the effect of a failure of the parties in post-petition financing agreements to receive the requisite court authorization pursuant to § 364. Hammer Financial has submitted no authority for the proposition that rescission is inappropriate under the present circumstances. There is authority, however, which supports the Reeses' contention that rescission is appropriate. *See, e.g., Garofalo's Finer Foods, Inc. v. First Nat'l Bank of Harvey, 186 B.R. 414, 430 (N.D.Ill.1995); In re J.L. Graphics, Inc., 62 B.R. 750, 756 (D.N.H.Bankr.1986); In re Bernheim, 62 B.R. 739, 743 (D.N.J.Bankr.1986).* The Court therefore denies the motion to dismiss the Reeses' purported grounds for recission pursuant to 11 U.S.C. § 364.[FN4]

> FN4. Hammer Financial moves this Court to strike the Reeses' request for attorney's fees in Count II. The Reeses contend that they are entitled to recovery of attorney's fees pursuant to 11 U.S.C. § 105. Although bankruptcy courts have the discretion to award attorney's fees pursuant to its equitable authority contained in 11 U.S.C. § 105(a), this Court agrees with Hammer Financial that § 105 does not apply in the context of this matter. The motion to strike attorney's fees is therefore granted.

III. *Breach of Fiduciary Duty (Count IV)*

In Count IV of their Complaint, the Reeses allege that Hammer Financial and Joseph Hammer violated their fiduciary duty as the Reeses' agents and brokers by inducing and advising plaintiffs to enter into the transaction when it was not in their financial interests to do so. (Compl.¶ 43.) Hammer Financial and Joseph Hammer move to dismiss the Reeses' breach of fiduciary duty claim.

In the motion to dismiss, Hammer Financial and Joseph Hammer contend that the Reeses have not plead any facts from which a fiduciary relationship arises. This Court disagrees that the Reeses have failed to allege the existence of a fiduciary duty. Indeed, a similar argument was recently rejected by a court in this district. *See DeLeon v. Beneficial Constr. Co., 55 F.Supp.2d 819 (N.D.Ill.1999).* In *DeLeon,* the court stated:

> In Illinois, when one party undertakes to find financing on behalf of another, a principal and agent relationship is created. An agent owes fiduciary duties to his principal as a matter of law.... It is undisputed that plaintiffs engaged the defendants to conduct mortgage brokerage services and a fiduciary duty was thereby created.

*Id.* at 827-28 (citing *Allabastro v. Cummins, 90 Ill.App.3d 394, 413 N.E.2d 86, 87-88 (1st Dist.1980)*).

The Reeses' fiduciary duty claim meets the Rule 12(b)(6) standards. The Reeses allege that: (1) by undertaking a loan for the Reeses, Hammer Financial and Joseph Hammer became the Reeses' agents and mortgage brokers (*see* Compl. ¶ 12); (2) Hammer Financial and Joseph Hammer violated their fiduciary duty as the Reeses' agents and brokers by inducing and advising the Reeses to enter into the transaction when it was not in their financial interests to do so (*id.* ¶ 43); and (3) they were damaged by such breaches (*id.* ¶ 45). These allegations sufficiently set forth a breach of fiduciary duty claim.

**\*5** Joseph Hammer additionally contends that the claim for breach of fiduciary duty against him, individually, should be dismissed. Illinois grants corporate officers and directors a conditional privilege that protects them from personal liability for their decisions made on behalf of the corporation. *See Stafford v. Puro, 63 F.3d 1436, 1442 (7th Cir.1995).* Still, corporate officers are liable for torts if they "participated in the conduct giving rise to that liability." *Itofca, Inc. v. Hallhake, 8 F.3d 1202, 1204 & n. 6 (7th Cir.1993)* (quoting *Prince v. Zazove, 959 F.2d 1395, 1401 (7th Cir.1992)*).

The Reeses have stated a valid claim against Joseph Hammer individually for breach of fiduciary duty. The Reeses allege that Joseph Hammer is the sole corporate officer of Hammer Financial and that all acts attributed to Hammer Financial were carried out by Joseph Hammer. (*See* Compl. ¶ 5.) The Reeses additionally allege that Joseph Hammer participated in arranging the loan which spawned fiduciary obligations. (*Id.* ¶¶ 12, 43.) In short, because the Reeses allege that Joseph Hammer was a corporate officer who participated in the conduct giving rise to a breach of fiduciary duty, his motion to dismiss is denied.

IV. *Consumer Fraud Claim (Count III)*

In Count III of their Complaint, the Reeses allege that Defendants engaged in unfair or deceptive acts and practices in violation of § 2 of ICFA. In order to state a claim under the ICFA, a plaintiff must allege: (1) a deceptive act or practice, (2) an intent by the defendant that the plaintiff rely on the deception, and (3) that the deception occurred in the course of conduct involving a trade or commerce. *See Thacker v. Menard, Inc., 105*

*F.3d 382, 386 (7th Cir.1997)*. In the motion to dismiss, Hammer Financial and Joseph Hammer assert that they have not engaged in any deceptive act or practice, reiterating the arguments discussed above. This Court has rejected those arguments and finds that the Reeses have adequately plead deceptive acts or practices under ICFA. The motion to dismiss the ICFA count is therefore denied. [FN5]

FN5. As he did with respect to the breach of fiduciary duty claim against him individually, Joseph Hammer argues that the ICFA claim against him personally should be dismissed. ICFA clearly provides that "any person" may be sued under its provisions, including "any agent, employee, salesman, partner, officer, director, member, [or] stockholder" of a corporation that is also being sued. 815 ILCS § 505/1, 10(a). In addition, many cases have permitted officers to be named as individual defendants under ICFA, where they were personally involved in the activities which gave rise to the cause of action. *See Garcia v. Overland Bond & Inv. Co., 282 Ill.App.3d 486, 496, 668 N.E.2d 199, 206 (1st Dist.1996)*; *People ex rel. Hartigan v. All Am. Aluminum & Constr. Co., 171 Ill.App.3d 27, 35, 524 N.E.2d 1067, 1072 (1st Dist.1988)*. As explained *supra* at pp. 12-13, the Reeses have sufficiently plead that Joseph Hammer participated in the alleged deceptive acts or practices giving rise to the ICFA claim. For this reason, Joseph Hammer's motion to dismiss the ICFA claim against him individually is likewise denied.

## CONCLUSION

For the reasons stated above, Hammer Financial and Joseph Hammer's motion to dismiss is denied. Hammer Financial's motion to strike the Reeses' claim for attorney's fees in Count II is granted.