IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CALVERT M. WILSON** : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | Case No.: 1:06-CV-00069(JDB) |
| : | |
| **HOME-SAVERS, LLC**   et al. : | |
| : | |
| **Defendants.** : | |
| : | |

## DEFENDANT'S RESPONSE TO PLAINTIFF'S ASSERTIONS OF SUBJECT MATTER JURISDICTION

Defendants, Home Savers, LLC, 1905 2nd Street, N.E., LLC, Barrett Ware and Luther Hector, by and through counsel, Richard D. Mirsky, Esq. and Offit Kurman Attorneys At Law, submits the following supplemental memorandum in support of dismissal for lack of subject matter jurisdiction in furtherance of this Court's Order dated April 3, 2006, and respectfully states as follows:

### 28 U.S.C. §1332(a)(1) - Diversity of Citizenship

1. The parties are not citizens of different states.

2. Defendants, Barrett Ware and Luther Hector, each reside in the District of Columbia at 125 Webster St., N.W., Washington, D.C. 20011.

3. Both Barrett Ware and Luther Hector resided at the aforementioned address at the time when this instant action was filed. Moreover, Barrett ware has resided at this address for approximately three (3) years and Hector Luther has resided at this address for

1

approximately eighteen (18) months.

4. Because the plaintiff is also a resident of the District of Columbia, there is not complete diversity of citizenship as required by 28 U.S.C. §1332(a)(1).

### 28 U.S.C. §1331 - Underlying Questions of Tax Law and Bankruptcy Law

#### Tax Law Issues

5. Federal jurisdiction has been found in some quiet title actions, however, federal jurisdiction demands not only a contested federal issue, but a substantial one. Moreover, the federal jurisdiction must be consistent with congressional judgement about the sound division of labor between state and federal courts governing §1331's application. Grable & Sons Metal Products, Inc., v. Darue Engineering & Manufacturing, 125 S.Ct. 2363 (2005).

6. The question presented is whether an otherwise typical state-law claim, e.g., quiet title action, necessarily states a federal issue which is actually disputed and substantial, which a federal forum may entertain without disturbing a congressionally approved balance of federal and state judicial responsibilities.   Id. at 2366-2368.

7. In the instant case, no disputed or substantial tax issue is being asserted. To the contrary, plaintiff states as follows:

> ... assuming there was a post-petition home sale between the parties' during November 2004 and because Wilson has never purchased another house ... , there would be tax consequences resulting from the parties' post-petition dealings. (See, Plaintiff's Supplemental Memorandum, page 2).

8. Plaintiff advances tax law discussion and tax law citations merely as an example of how the sale of plaintiff's "principal residence" would be treated under the Internal Revenue

2

Code for taxation purposes. (*See*, Plaintiff's Supplemental Memorandum, pages 2-3). Plaintiff does not raise any issue as to an interpretation of the Internal Revenue Code or Code of Federal Regulations, nor is there a dispute in this regard with these defendants.

9. Plaintiff also endeavors to argue that this Court should exercise subject matter jurisdiction because "... Wilson's contention that the 2nd Street Property is his principal dwelling is entirely consistent with the overall body of federal statuatory law." (*See*, Plaintiff's Supplemental Memorandum, pages 3). This, however, is not a substantial contested federal issue, but merely a self-serving argument whereby plaintiff is suggesting that for the purposes of his alleged TILA (Truth in Lending Act) claims, this Court should use "principal residence" as defined under the Internal Revenue Code for taxation purposes.

## Bankruptcy Law Issues

10. The assertions in plaintiff's supplemental memorandum relative to post petition violations of the Bankruptcy Code are not as easily addressed.

11. Plaintiff argues that his Chapter 13 bankruptcy case had not been completed, i.e., he had not yet been discharged at the time he entered into his agreements with these defendants and his post petition transactions with these defendants was not authorized by the bankruptcy court. Because the Bankruptcy Code requires approval for a post petition sale pursuant to 11 U.S.C. § 363, and in a like manner, a post petition advance of money secured by real property also requires approval pursuant to 11 U.S.C. § 364, plaintiff argues that the transactions are void.

12. The real issue, notwithstanding plaintiff's self-serving arguments, is whether this

3

particular "unauthorized" post petition transaction is void *ab initio*, or merely voidable. Thereafter, if merely voidable, by whom shall it be declared void and under what circumstances shall the transaction be declared void.

13. Plaintiff's counsel in this instant case was also plaintiff's attorney in his Chapter 13 bankruptcy case. Plaintiff's counsel was aware that plaintiff was entering into these transactions with the defendants, had reviewed the documents and met with the defendants, and perhaps advised plaintiff to do so.

14. It is somewhat disingenuous that plaintiff and his counsel failed to seek bankruptcy court approval in November of 2004, got the benefit of the transaction with the defendants, failed to perform as promised and have paid nothing to the defendants to date, and now endeavor to argue that the entire transaction is void when plaintiff finds that the defendants did what the transaction anticipated when payment was not forthcoming.

15. Plaintiff suggests that the transaction with the defendants is void *ab initio*, but has not presented proper authority for this assertion. To the contrary, plaintiff cited and attached a slip opinion in Reese v. Hammer Financial Corp., No. 99-C-0716, *slip op.*(N.D. Ill. Entered November 30, 1999). The U.S. District Court in that case was faced with a recission action filed by the debtor, Reese, seeking to avoid a loan transaction by Hammer Financial Corp., the lender. The lender filed a motion to dismiss the action indicating, among other things, that it, as a lender, had no duty to secure court approval. The court denied the motion to dismiss after setting forth the appropriate standard, i.e., the court will examine the sufficiency of the complaint rather than the merits of the law suit. The court went on to indicate that recission was requested in the complaint, and because the

lender submitted no authority for the proposition that rescission is inappropriate, it denied the lender's motion to dismiss.

16. Defendants acknowledge that this Court has subject matter jurisdiction based upon the underlying bankruptcy issues now raised by the plaintiff, but defendants assert that this Court should perhaps defer to the bankruptcy court pursuant to 28 U.S.C. § 157 to resolve the aforementioned issue, to wit, whether the transaction is void or merely voidable, and what effect the failure to secure court approval should have on this subject transaction if merely voidable.

17. Perhaps the bankruptcy court would be in the best position to determine what impact, if any, the subject transaction had on the plaintiff's bankruptcy creditors, and whom may avoid this subject transaction, if avoidance is allowed at all.

18. Upon information and belief, no bankruptcy creditors were impacted by plaintiff's transaction with the defendants in November of 2004. Upon information and belief, every creditor that filed a proof of claim was paid 100%. Additionally, all or substantially all of the administrative tasks for the case had been completed by November of 2004, and there were no substantive impediments to closing the case. (*See*, Defendant's Response Exhibit 1, Plaintiff's counsel's letter to the Chapter 13 Trustee dated February 9, 2005).

19. In fact, plaintiff's counsel suggested in his letter to the trustee dated February 9, 2005 that the only reason the case was not previously "closed" was because the plaintiff noted an appeal of the bankruptcy court decision denying plaintiff's request to block the scheduled foreclosure, and that the trustee was also holding funds, to wit, approximately $7,044.52,

which was the subject of the trustee's previously filed motion to reduce ABN AMRO's claim which was granted by the bankruptcy court on January 5, 2005. Upon information and belief, this also resulted in a refund to the plaintiff.

20. No creditor was prejudiced by the subject transaction with the defendants. The notice provisions of 11 U.S.C. § 363 and 11 U.S.C. § 364, are for the benefit of the creditors.

21. 11 U.S.C. § 549 (a)(2)(B) indicates that the trustee may avoid a transfer of property of the estate if it was not authorized. The purpose of section 549 is to provide a just resolution when the debtor himself initiates an unauthorized post petition transfer. <u>40235 Washington Street Corporation v. W.C. Lusardi</u>, 329 F.3d 1076, 1081 (9th Cir. 2003).

22. 11 U.S.C. § 549 (c), provides circumstances where the trustee would not be able to avoid a transfer of real property if a good faith purchaser took without knowledge of the bankruptcy case.

23. The bankruptcy court would also be in the best position to determine the trustee's position in this matter if relevant and/or appropriate.

WHEREFORE, defendants respectfully request the following relief:

    A. That plaintiff's complaint be dismissed;

    B. That this Court grant such further and other relief as the nature of this case and equity and justice may require.

Respectfully submitted,

Offit Kurman Attorneys At Law

By: /s/ Richard D. Mirsky
_____
Richard D. Mirsky, Esq. (Fed. Bar. No. 24438)
(DC Bar. No. 396939)
8171 Maple Lawn Blvd., Suite 200
Maple Lawn, MD 20759
Direct Dial (301) 575-0342
Facsimile (301) 575-0335

Attorney for Defendants

## CERTIFICATE OF SERVICE UNDER LCvR 65.1

I hereby certify that on the 13th day of April 2006, I caused a copy of the "Defendant's Response to Plaintiff's Assertions of Subject Matter Jurisdiction " that was filed electronically under the ECF guidelines with the Court on this date in the above captioned matter, was also sent via first class mail, postage prepaid, to the following:

Rawle Andrews Jr., Esq.
Andrews & Bowe, PLLP
1717 K street N.W., Suite 600
Washington, DC 20036

/s/ Richard D. Mirsky
_____
Richard D. Mirsky, Esq.

# ANDREWS & BOWE, PLLP
### ATTORNEYS AND COUNSELORS AT LAW

CHATTANOOGA, TN           WASHINGTON DC

February 9, 2005

**VIA FACSIMILE (202-362-3487)**
Cynthia A. Niklas, Esq.
Chapter 13 Trustee           **URGENT; REPLY REQUESTED**
45 42nd St. N.W.
Suite 211
Washington, D.C. 20016

RE:     *In re Calvert M. Wilson, Case No. 01-00092 (Bankr. D.D.C.)*

Dear Ms. Niklas:

      As you know, this law firm serves as special counsel to Mr. Calvert Wilson in connection with a dispute involving ABN AMRO Mortgage Group, Inc. (fka Atlantic Mortgage & Investment Corporation). Among other things, the dispute concerns allegations of ABN AMRO's artificial inflation of mortgage payments and receipt of the same over an extended period of time, including a recent "cure" payment on November 18, 2004 of over $30,000. I am writing to follow up on recent communications with your office regarding our client's efforts to have his Chapter 13 case closed, subject to the provisions of Bankruptcy Code § 350 and Bankruptcy Rule 5009, or make arrangements to promptly notify certain third parties that the matter has been fully administered.

      Please note that this matter of is considerable urgency because Mr. Wilson is in the process of refinancing his mortgage with an unrelated lender. The replacement lender has advised that it cannot close on the transaction until it receives written confirmation that the case is closed. Until that time, Mr. Wilson is subject to on-going abuse by ABN AMRO, as well as the added financial burdens of the sub-prime bridge loan he was forced to obtain during November 2004 to stop the foreclosure on his property at 1905 2nd Street, NE (the "2nd Street Property").

      It is my understanding that all or substantially of the administrative tasks for the Wilson Chapter 13 case have been completed, and that there are no substantive impediments to closing the case. Apparently, however, some questions have arisen concerning whether the Chapter 13 case can be closed because of: (i) Mr. Wilson's pending appeal of Bankruptcy Judge Teel's decision October 18, 2004 Order denying our client's request for a Section 105 Injunction to block the scheduled foreclosure of his 2nd Street Property pending a reconciliation of his mortgage account; and (ii) the "suspense" your office has placed on funds deemed to be in excess of ABN AMRO's pre-petition claim against Mr. Wilson's estate in the approximate amount of $7,044.52. I am advised that your office presently is in possession of these funds.

Ms. Cynthia Niklas
February 9, 2005
Page 2

Given the latitude provided to the Bankruptcy Court and interested parties under Bankrutpcy Code § 350(b), we do not believe these technical impediment should stand in the way of closing a fully administered Chapter 13 case for at least three reasons.

First, your December 2, 2004 motion to reduce ABN AMRO's pre-petition claim against the Wilson estate provides or otherwise refers to specific objection deadlines for ABN AMRO to respond. As you know, all these date passed without response or incident by ABN AMRO, and as such, the mortgage company has waived any opposition it may have had to the motion.

Second, the Bankruptcy Court's January 5th Order granting your motion to reduce ABN AMRO's claim has never been subject to appeal or request for reconsideration. ABN AMRO thus waived any right to attack the legitimacy of that Order, and as such, the January 5th Order is now a final order.

Third, the bankruptcy appeal, which deals solely with the propriety of the Bankruptcy Court's refusal to stay a scheduled foreclosure sale on the 2nd Street Property, is now part of a federal lawsuit between the parties and certain other defendants pending in the United States District Court for the District of Columbia. Both matters have been noticed as "related cases" under Docket No. 1:05-CV-00108, and are pending before the Honorable John D. Bates, U.S. District Judge. Because a court's decision to grant or deny an injunction is subject to *de novo* review on appeal, all these matters will be decided on the merits by the District Court. *See, e.g., Air Line Pilots Ass'n Int'l v. Eastern Air Lines, Inc.*, 863 F.2d 891, 895 (D.C. Cir. 1988) (quoting *Natural Resources Defense Council, Inc. v. Morton*, 458 F.2d 827, 832 (D.C. Cir. 1972)).

*De novo* review of Mr. Wilson's bankruptcy appeal is significant here because the District Court's resolution of this issue will determine whether, among other things, ABN AMRO demand and receipt of the $30,000 "cure" amount on November 18th was excessive and improper. If Wilson's position is correct, he is entitled to an additional refund or credit beyond the $7,044.52. If the District Court sides with ABN AMRO, the mortgage company will retain all of the November 2004 "cure" payment (which was derived from increased assessments), but Mr. Wilson still will be entitled to overpayments established by the Bankruptcy Court's January 5th Order. In any event, whether this payment is remitted to Mr. Wilson now or held in trust by your office should not prevent the case from being closed, and, if necessary, re-opened at a later date under Bankruptcy Code § 350(b).

Ms. Cynthia Niklas
February 9, 2005
Page 3

    I am in Michigan on an unrelated matter through the end of next week, but typically can be reached via cell phone (423-255-3982), or our Director of Legislative Affairs, Leroy Jones, Jr. (202-607-7595). I look forward to hearing from you at your earliest convenience.

                Very truly yours,

                */s/ Rawle Andrews Jr.*
                Rawle Andrews Jr.
                For the Firm

CC: Mr. Calvert M. Wilson