IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CALVERT M. WILSON | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No.: 1:06-CV-00069(JDB) |
| | : | |
| HOME-SAVERS, LLC   et al. | : | |
| | : | |
| Defendants. | : | |
| | : | |

### DEFENDANT'S COUNTERCLAIM

Defendants, Home Savers, LLC, 1905 2nd Street, N.E., LLC, Barrett Ware and Luther Hector, by and through counsel, Richard D. Mirsky, Esq. and Offit Kurman, P.C., respectfully states as follows:

### Factual Allegations Applicable to All Counts

1.  Upon information and belief, defendant, Luther Hector of Home Savers, LLC (hereinafter "Home Savers") first contacted plaintiff in September of 2004.  Luther Hector contacted plaintiff upon finding that a foreclosure sale of the 1905 2nd St., N.E. property (hereinafter "subject property") was scheduled.

2.  This initial communication was by telephone.  During the initial telephone communication, plaintiff gave Luther Hector general information about the subject property, e.g., that it was a building consisting of four (4) residential apartments, however, plaintiff indicated that he did not reside at the building.  The subject property

was occupied by three (3) tenants whom were all Section 8 tenants. Plaintiff, as landlord, had Housing Assistance Payment Contracts with the Public Housing Agency, U.S. Department of Urban Development. Plaintiff indicated that the fourth apartment was not occupied. Plaintiff indicated that he had lived at the apartment building in the past, but had not lived there for quite some time.

3. Plaintiff explained that he currently resided with his wife at 1118 47th Pl., N.E., Washington, DC 20019.

4. During this initial communication plaintiff also gave general information about his situation. Plaintiff indicated that his lender believed he was in arrears and had started foreclosure proceedings. Plaintiff indicated that he had previously filed Bankruptcy, but the case had been "completed." Plaintiff indicated that his attorney had filed an emergency motion seeking to stop the foreclosure and a hearing was scheduled on the motion, however, plaintiff did not articulate which Court the emergency motion had been filed with.

5. Plaintiff further indicated that he wanted to have a "back up plan" in case the Court did not grant the relief he and his attorney were requesting.

6. Plaintiff thereafter contacted Luther Hector after the emergency hearing. Luther Hector recalled plaintiff telling him the motion was denied.

7. Plaintiff indicated to Luther Hector that his attorney had filed a law suit against the lenders, and had also appealed the Judge's decision, but nonetheless, he did not want to lose the building at a foreclosure sale. At this point, plaintiff wanted to move forward and meet with representatives of Home Savers.

8. Upon information and belief, the initial face-to-face meeting was scheduled and thereafter took place in late October 2004.[1]

9. This meeting took place at plaintiff's residence located at 1118 47th Pl., N.E., Washington, DC 20019. Present at the meeting were the following individuals: Calvert Wilson (plaintiff), Zeretra Wilson (plaintiff's wife),[2] Rawle Andrews, Esq. (plaintiff's counsel), Luther Hector (Sales Associate with Home Savers) and Dan Felton (Sales Associate with Home Savers).

10. At this meeting, Luther Hector explained what Home Savers could do and was proposing. Luther Hector indicated that he "spelled everything out" to both plaintiff and his attorney.

11. Luther Hector explained that Home Savers was willing to purchase the subject property, and thereafter, Home Savers or it's assignee would not record the deed for at least sixty (60) days. During this time, plaintiff would have an opportunity to seek a refinance loan for his existing mortgage loan which was in default. It was explained that plaintiff could utilize the proceeds of the refinance to repurchase the subject property from Home Savers.

12. At this meeting the terms and conditions were set forth and discussed in detail. As indicated, plaintiff was present with his counsel. It was explained to plaintiff and his counsel, that to effectuate the agreement Home Savers would initially advance the funds necessary to reinstate the mortgage loan that was in default. This amount was estimated

---

[1] Luther Hector indicated that the meeting could have been in early November 2004, but his best recollection is that it was the end of October 2004.

[2] Luther Hector believes that plaintiff's wife was present, but does not recall having much interaction with her.

to be approximately $30,000.00. Thereafter, plaintiff would have two (2) months to attempt to refinance plaintiff's existing mortgage loan. If successful, plaintiff could repurchase the subject property for a predetermined price, to wit, $122,656.07. If not successful, it was anticipated that Home Savers, or its assignee, would thereafter record the deed and take the subject property subject to the existing loan.

13. Defendant's were aware that the existing secured loan had a balance of approximately $130,000.00. Accordingly, defendants would be purchasing the subject property for $160,000.00. The monies advanced to stop the foreclosure, e.g., $30,000.00 would serve as the down payment.

14. Plaintiff and his counsel were shown and/or given copies of all of the documents that would be necessary for plaintiff to execute to complete this transaction.

15. At this juncture, plaintiff and his counsel indicated that they understood the transaction, but plaintiff still did not want to commit to the transaction until he had an opportunity to meet with prospective lenders about getting a refinance loan.

16. Luther Hector gave plaintiff and his counsel the name of a prospective mortgage lender, Jeff Powell.[3] No promises or inducements had been made. Luther Hector believed, however, that plaintiff would be able to qualify for a refinance loan and indicated that Home Savers had dealt with Jeff Powell before.

17. It should be noted, that at this meeting plaintiff and his counsel indicated to Luther Hector that the Bankruptcy case was "completed." At no time did plaintiff or his counsel suggest

---

[3]Luther Hector believes that Jeff Powell is with an entity called Prosperity Mortgage or Pinnacle Mortgage.

that this transaction needed Bankruptcy Court approval. To the contrary, plaintiff and his counsel caused Home Savers to believe that it was unnecessary.

18. Subsequent to this meeting, plaintiff contacted Jeff Powell the mortgage lender representative that Home Savers had recommended. Upon information and belief, Jeff Powell was willing to give a refinance loan to plaintiff and gave him a good faith estimate.

19. Thereafter, plaintiff contacted Luther Hector by telephone. Plaintiff informed Luther Hector that the interest rate for the loan was going to be high, to wit, approximately 18%. For this reason, plaintiff wanted to shop around to determine whether a different refinance loan could be had at a more favorable interest rate.

20. Luther Hector gave plaintiff the name of another prospective mortgage lender, to wit, Harris Rosenberg.

21. Plaintiff contacted Luther Hector after he had communicated with Harris Rosenberg. Plaintiff indicated to Luther Hector that this particular mortgage lender was unwilling to refinance the loan within the time frame necessary for this particular transaction.[4]

22. As the foreclosure date approached, plaintiff again contacted Luther Hector at Home Savers. During this next telephone communication, plaintiff indicated that he wanted to go forward with the transaction with Home Savers, i.e., the sale with an option to repurchase, which had been previously discussed with him and his attorney, Rawle Andrews Jr., Esq.

---

[4]The foreclosure apparently was scheduled for November 17, 2004 after the Bankruptcy Court denied plaintiff's request for emergency relief.

23. A meeting was scheduled again at plaintiff's residence located at 1118 47th Pl., N.E., Washington, DC 20019. The purpose of the meeting was to finalize the transaction. The meeting was scheduled for November 14, 2004.

24. The meeting did take place on November 14, 2004 at plaintiff's residence located at 1118 47th Pl., N.E., Washington, DC 20019. In attendance at the meeting were the following individuals: Calvert Wilson and Zeretra Wilson; Barrett Ware and Luther Hector of Home Savers; and a Notary Public.

25. Barrett Ware indicates that at this meeting he reviewed with plaintiff all of the documents that plaintiff was going to execute. Moreover, Barrett Ware indicated that he explained the significance of each one to plaintiff and his wife to be sure that plaintiff was aware of his obligations and completely understood the transaction.[5]

26. Barrett Ware also inquired about plaintiff's Bankruptcy case during this meeting. Plaintiff expressly stated that he had been discharged. Barrett Ware asked for a copy of the discharge notice and was told by plaintiff that he did not have it with him, but would fax it to Barrett Ware the following day.

27. At the meeting on November 14, 2004, plaintiff signed, before a notary, the various documents that were necessary for the transaction. Among these documents was a document entitled "Equity-Share Plus" (hereinafter "Agreement") which set forth the

---

[5]Barrett Ware was aware that plaintiff's counsel had been present at the prior meeting when Luther Hector presented the transaction, but nonetheless, he wanted to be sure that plaintiff understood the transaction before executing documents.

6

various terms and conditions of the parties agreements,[6] as well as a deed transferring the subject property to 1905 2nd Street, N.E., LLC. (*See*, Defendant's Memorandum of Points and Authorities in Opposition Exhibits 1 and 2, attached hereto and made apart hereof).

28. Under the terms and conditions of the Agreement, plaintiff had the option to refinance his existing mortgage loan and repurchase the property from Home Savers for $122,656.07. Accordingly, for sixty (60) days, the deed was not going to be recorded anticipating that plaintiff would exercise this option and it would be easier for plaintiff to get a refinance loan as opposed to a repurchase loan.

29. On November 17, 2004 Home Savers did advance the funds necessary to reinstate plaintiff's loan and stop the foreclosure in furtherance of the Agreement. The funds advanced totaled approximately $30,500.00.

30. Thereafter, upon information and belief, plaintiff did seek to refinance his loan, but never paid Home Savers any monies.

31. The defendants did not record the deed after the sixty (60) days because they believed, in good faith, that plaintiff was still seeking to refinance his existing mortgage loan and needed additional time to secure the loan.

32. Defendants, in good faith, anticipated that after securing a refinance loan, plaintiff would honor the Agreement and pay $122,656.07 as agreed.

33. From time-to-time defendants were contacted by plaintiff's prospective lenders. At these times, defendants would inform what would be required as a "payoff," i.e., $122,656.07

---

[6] The Agreement sets forth, among other things, that the amount paid by Home Savers to stop the foreclosure shall serve as the deposit for the purchase..

pursuant to the Agreement executed by the parties.

34. At some point, however, defendant's became concerned that plaintiff was no longer returning phone calls, had not paid as agreed, and apparently was negotiating with prospective lenders with no intention of complying with the Agreement. Accordingly, on November 9, 2005, nearly a year after the Agreement had been executed, defendant recorded the deed conveying the subject property to 1905 2nd St NE, LLC.

35. No payments have been forthcoming by plaintiff to defendants.

36. Plaintiff commenced these causes of action requesting, among other things, relief in the nature of declaratory judgment, which appears to be seeking to void the transaction with the defendants which resulted in the defendants recording their deed to the subject property.

37. Defendants bring the following causes of action seeking affirmative relief in response to plaintiff's complaint, and in some instances, contingent upon the Court's determination as related to the subject real property.

**Count 1**
**(Breach of Contract)**

38. Defendant's incorporate herein by reference all of the preceding allegations of fact as if set forth verbatim.

39. Plaintiff entered into binding agreements with the defendants and binding contractual obligations with defendants and all agreements and contractual obligations were supported by adequate consideration.

40. Defendants performed in furtherance of the contractual obligation agreed upon.

41. Plaintiff failed to perform as agreed, and accordingly, breached his agreements and contractual obligations to the defendants.

42. As a result of plaintiff's breach, defendants have sustained damages.

    WHEREFORE, defendants respectfully request to following relief:

    A. That judgment be entered in favor of the defendants, and against the plaintiff, for any and all damages arising from plaintiff's breach of his agreement, plus costs and attorneys fees; and

    B. That this court grant such further and other relief as the nature of this case may require.

## Count 2
### (Negligent Misrepresentation)

43. Defendant's incorporate herein by reference all of the preceding allegations of fact as if set forth verbatim.

44. Plaintiff owed a duty to defendants when representing that he had the capacity to enter into the aforestated transaction with them.

45. Plaintiff breached the duty he owed to defendants by misrepresenting that he had the capacity to enter into the aforestated transaction.

46. Plaintiff negligently asserted false statements and had a duty of care owed to defendants.

47. Plaintiff intended that defendants act and rely upon his false statements.

48. Plaintiff had knowledge that defendants were probably going to rely upon the negligent assertions or statements which, if erroneous, will cause damage.

49. As a direct result of plaintiff's misrepresentation, defendants have been damaged.

WHEREFORE, defendants respectfully request to following relief:

A. That judgment be entered in favor of the defendants, and against the plaintiff, for any and all damages arising from plaintiff's negligent misrepresentation, plus costs and attorneys fees; and

B. That this court grant such further and other relief as the nature of this case may require.

### Count 3
### (Promissory Estoppel)

50. Defendant's incorporate herein by reference all of the preceding allegations of fact as if set forth verbatim.

51. Plaintiff made representations to the defendants with knowledge that defendants were going to rely upon said representations to their detriment.

52. Defendants did rely to their detriment upon the representation made by plaintiff and, as a direct result of thereof, have been damaged.

WHEREFORE, defendants respectfully request to following relief:

A. That judgment be entered in favor of the defendants, and against the plaintiff, for any and all damages arising from plaintiff's promises, plus costs and attorneys fees; and

B. That this court grant such further and other relief as the nature of this case may require.

### Count 4
### (Intentional Misrepresentation)

53. Defendant's incorporate herein by reference all of the preceding allegations of fact as if

set forth verbatim.

54. Plaintiff intentionally misrepresented facts to the defendants with the intention of fraudulently inducing the defendants to enter into the aforestated transaction.

55. Plaintiff asserted a false representation of a material fact to the defendants.

56. The plaintiff knew that the representations were false, or the representation was made with such reckless disregard for the truth that knowledge of the falsity of the statement can be imputed to the plaintiff.

57. The plaintiff made the false representations for the purpose of defrauding the defendant.

58. The defendants relied with justification upon the misrepresentations of the plaintiff.

59. As a direct result of plaintiff's intentional misrepresentations and reliance upon same, defendants have been damaged.

WHEREFORE, defendants respectfully request to following relief:

A. That judgment be entered in favor of the defendants, and against the plaintiff, for any and all damages arising from plaintiff's intentional misrepresentation, plus costs and attorneys fees, and exemplary damages; and

B. That this court grant such further and other relief as the nature of this case may require.

### Count 5
### (Quantum Meruit)

60. Defendant's incorporate herein by reference all of the preceding allegations of fact as if set forth verbatim.

61. Plaintiff has been enriched as a result of the transaction with the defendants.

62. Valuable services were rendered on behalf of the defendants for plaintiff.

63. Valuable services were accepted, used and enjoyed by plaintiff, which were rendered by defendants.

64. The services rendered by defendants were rendered under such circumstances that plaintiff was reasonably notified that defendants expected to be paid or granted the relief anticipated.

WHEREFORE, defendants respectfully request to following relief:

A. That judgment be entered in favor of the defendants, and against the plaintiff, for any and all damages arising from plaintiff's unjust enrichment and/or inequitable result, plus costs and attorneys fees; and

B. That this court grant such further and other relief as the nature of this case may require.

### Count 6
### (Unjust Enrichment)

65. Defendant's incorporate herein by reference all of the preceding allegations of fact as if set forth verbatim.

66. A benefit was conferred upon the plaintiff by the defendants.

67. Plaintiff did appreciate and did have knowledge that defendants were conferring a benefit upon plaintiff.

68. Plaintiff did accept the benefit under such circumstances as to make it inequitable for the plaintiff to retain the benefit without payment of its value or defendants be granted the relief that was anticipated.

WHEREFORE, defendants respectfully request to following relief:

A. That judgment be entered in favor of the defendants, and against the plaintiff, for any and all damages arising from plaintiff's unjust enrichment and/or inequitable result, plus costs and attorneys fees; and

B. That this court grant such further and other relief as the nature of this case may require.

### Count 7
### (Declaratory Judgment/Quiet Title)

69. Defendant's incorporate herein by reference all of the preceding allegations of fact as if set forth verbatim.

70. Defendants assert that there is a justiciable dispute concerning respective rights, interests and obligations, related to real property in the District of Columbia.

71. Defendants seek to remove any cloud from their title to the subject real property.

WHEREFORE, defendants respectfully request to following relief:

A. That judgment be entered in favor of the defendants, and against the plaintiff, for any and all damages arising from plaintiff's actions, including, but not limited to, a declaration of rights, title and interest, to the subject property, plus costs and attorneys fees; and

B. That this court grant such further and other relief as the nature of this case may require.

                    Respectfully submitted,

                    Offit Kurman Attorneys At Law

                        /s/ Richard D. Mirsky

By:   _____
      Richard D. Mirsky, Esq. (Fed. Bar. No. 24438)
            (DC Bar. No. 396939)
      8171 Maple Lawn Blvd., Suite 200
      Maple Lawn, MD 20759
      Direct Dial (301) 575-0342
      Facsimile (301) 575-0335

      Attorney for Defendants

### CERTIFICATE OF SERVICE UNDER LCvR 65.1

      I hereby certify that on the 4th day of May 2006, I caused a copy of the "Defendant's Counterclaim" that was filed electronically under the ECF guidelines with the Court on this date in the above captioned matter, was also sent via first class mail, postage prepaid, to the following:

Rawle Andrews Jr., Esq.
Andrews & Bowe, PLLP
1717 K street N.W., Suite 600
Washington, DC 20036

                      /s/ Richard D. Mirsky
                      _____
                      Richard D. Mirsky, Esq.